IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In Re Enron Corporation Securities, Derivative & "ERISA" Litigation | § § § § | MDL-1446 |
| MARK NEWBY, ET AL., | § § | |
| Plaintiffs | § § | |
| VS. | § § | CIVIL ACTION NO. H-01-3624 CONSOLIDATED CASES |
| ENRON CORPORATION, ET AL., | § § | |
| Defendants | § | |
| PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF OHIO, et al., | § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. H-02-4788 (COORDINATED) |
| ANDREW S. FASTOW, et al., | § § | |
| Defendants. | § | |

**OPINION AND ORDER**

Pending before the Court in the above referenced cause are two motions *inter alia*: (1) Plaintiffs Public Employees' Retirement System of Ohio ("PERS"), State Teachers' Retirement System of Ohio ("STRS"), School Employees' Retirement System of Ohio ("SERS"), and Ohio State Highway Patrol Retirement System's ("HPRS's")(collectively, the "Ohio Retirement Systems'") motion for leave to file an amended complaint and for the Cincinnati Retirement System ("Cincinnati") and the Ohio Tuition Trust Authority ("OTTA") to join in the Ohio Retirement Systems' Amended Complaint (instrument #54); and (2) the Ohio Retirement Systems, Cincinnati, and OTTA's motion to strike the Sur-Reply Briefs of

Proposed Defendants Goldman Sachs & Co.[1] and the Outside Directors[2] and for order that all parties and proposed Defendants seek leave of Court prior to filing sur-reply briefs (#86).

Since these motions were filed, the *Newby* class in H-01-3624 was certified on July 5, 2006, #4836.  The Ohio Retirement Systems, Cincinnati, and OTTA filed a statement opting out of the class (#94, filed on July 18, 2006), giving notice pursuant to the Court's July 11, 2003 order (#1561 in H-01-3624), as amended on July 11, 2006 (#4848 in H-01-3624), that they were filing an amended complaint, in essence what they were seeking leave to do in the motions listed above, "without waiving any rights arising from (or asserted in) the motion for leave to amend and motion to join."  Both scheduling orders clearly stated that if Plaintiffs were amending their complaints after opting out, unless as a matter of right, Plaintiffs must request leave of court.  Thus the Court finds the motions listed above are still pending and apply to the permissibility of the filing of the new complaint, joinder of Cincinnati and OTTA as Plaintiffs in the instant suit, addition of federal securities claims, and suing additional Defendants in the amended complaint filed on August 17, 2006, #97 in H-02-4778.[3]

---

[1] Instrument #82.

[2] Instrument #85.

[3] Except for those Defendants filing motions to stay based on ongoing criminal proceedings, the parties had entered into agreed briefing schedules (#114, 125, 128, 129, and 131) to respond to the amended complaint.  This Court subsequently stayed the deadline for responsive pleadings until it could address the two motions under review.

The Court addresses the motion to strike first because it affects the scope of review of the motion for leave to amend and to join.

## I.  Motion to Strike

Plaintiffs seek to strike the two sur-reply briefs on the grounds that (1) they were filed without leave of court[4] and (2) Defendants "simply repackage arguments already asserted in their respective opposition briefs" and Defendants are not permitted to make new arguments that could have been raised in Defendants' responses.

Both Defendants respond that they are not aware of any federal, local or Court rule that requires a party to seek leave before filing a sur-reply, but that if the Court requires such, they request leave to file such a motion. Bank of America Corporation and Banc of America Securities LLC also filed a surreply (#89), which reiterates the same point.  In addition, Goldman Sachs states that it "believes its sur-reply will assist the Court in ruling on the merits of the original motion, especially in light of plaintiffs' omnibus reply brief, which fails to address many of the arguments raised in the separate briefs filed in opposition to their motion."

---

[4] Plaintiffs cite *Lacher v. West*, 147 F. Supp.2d 538, 539 (N.D. Tex. 2001)("Surreplies and any other filing that serves the purpose or has the effect of a surreply, are highly disfavored, as they usually are a strategic effort by the nonmovant to have the last word on a matter.  The court has found that surreplies usually are not that helpful in resolving pending matters and only permits pleadings beyond Local Rule 7.1 in exceptional or extraordinary circumstances.").

This Court observes that the *Lacher* court, 147 F. Supp. 2d at 539, relied on the Northern District of Texas' then-in-effect Local Civil Rule 7.1, which, after a motion had been filed, permitted a response by the nonmovant and then a reply by the movant.  The equivalent of that rule does not currently exist in the Southern District of Texas.  Moreover, the Northern District of Texas follows the rule that generally a court should not consider arguments raised for the first time in a reply brief. *Pennsylvania General Ins. Co. v. Story*, No. Civ. A. 3:03CV0330-G, 2003 WL 21435511 (N.D. Tex. June 10, 2003), citing the following cases:  *Lacher*, 147 F. Supp. 2d at 539; *Blanchard and Company, Inc. v. Heritage Capital Corp.*, No. 3:97-CV-690-H, 1997 WL 757909 at *1 (N.D. Tex. Dec. 1, 1997); *Springs Industries, Inc. v. American Motorists Ins. Co.*, 137 F.R.D. 238, 240 (N.D. Tex. 1991). Nevertheless, in *Pennsylvania General*, Chief Judge Fish concluded that "no 'palpable injustice' exists where the nonmovants are given a chance to respond, as would be the situation if the court were to grant the instant motion for leave to file a surreply." 2003 WL 21435511 at *1, *citing Blanchard* at *1 and *Springs Industry* at 240.

Here Plaintiffs filed an omnibus reply; after reviewing it and the surreplies the Court finds that allowing Defendants' surreplies will cause no prejudice as long as the surreplies respond to previous briefs and do not raise new legal arguments. This Court is capable of determining whether a surreply raises new legal arguments and ignoring them if it does.  Here it finds no

such new theories.   Instead the Court finds that the Goldman, Sachs & Co.'s surreply points to three points previously made in its opposition and argues that Plaintiffs have failed to address them in Plaintiffs' reply and have therefore conceded them by silence.   Similarly, the Outside Directors highlight arguments made in their opposition that they claim Plaintiffs have failed to rebut in their reply to insure that Outside Directors' "relatively straightforward entitlement to relief is not obscured by the white noise of Plaintiffs' ambitious, 'Omnibus Reply.'" Bank of America Corporation and Banc of America Securities LLC similarly have not crossed the line by arguing new legal theories. Moreover Plaintiffs' objection to the surreplies is conclusory, and they have not identified any specific points in the surreplies as inappropriate.   Accordingly, because there are no new arguments being made and there is no prejudice, the Court denies the motion to strike the sur-replies.

## II.   Motion for Leave and to Join in Amended Complaint

As has often happened in this Mulitdistrict Litigation, there is a broad spectrum of judicial responses to the issues raised by the motion under review.   The Court first summarizes the motion, responses, and reply, then sets out what it has determined should be the applicable law relating to the issues raised by the parties, and thereafter applies that law to resolve the questions. The Court also points out the law and pleading standards for issues that it finds should be more appropriately addressed by

motions to dismiss in response to the viable portions of Plaintiffs' proposed amended complaint.

**A. Pleadings Relating to Plaintiffs' Motion for Leave to Amend and to Join**

*1. Plaintiffs' Motion*

The Ohio Retirement Systems filed their original complaint[5] against numerous Defendants in Ohio state court on September 4, 2002, asserting claims for common law fraud and deceit, aiding and abetting common law fraud, conspiracy to commit fraud, and negligent misrepresentation under Ohio law, as well as violation of the Texas Securities Act, Tex. Civ. Stat. Art. 581-33. Lehman Brothers Holdings, Inc. removed the action, based on diversity and "related to" bankruptcy jurisdiction, to the United States District Court for the Southern District of Ohio, from which it was transferred to this Court on December 6, 2003 by the Judicial Panel on Multidistrict Litigation for inclusion in MDL 1446. On January 7, 2003, the undersigned judge ordered it coordinated with *Newby* for pretrial proceedings in MDL 1446.

In their motion, the Ohio Retirement Systems seek to amend the complaint to add new federal securities law claims under

---

[5] The original complaint sued Andrew Fastow, Jeffrey Skilling, Kenneth Lay, Richard Causey, Michael Kopper, Ben Glisan, Arthur Andersen LLP, Citigroup, Inc., Credit Suisse First Boston Corp., JP Morgan Chase and Company, Lehman Brothers Holdings, Inc., Merrill Lynch & Co., and Vinson & Elkins LLP on five counts, each against all Defendants: common law fraud and deceit; aiding and abetting common law fraud; conspiracy to commit fraud; negligent misrepresentation; and violations of Article 581-33 of the Texas Securities Act against all Defendants. Complaint attached to Notice of Removal, #1.

the Securities Act of 1933 and the Securities Exchange Act of 1934 and to add certain new defendants to both these new federal claims and to the state law claims in their original complaint.  They further maintain that their fraud allegations are pleaded in significantly more detail in the proposed amended complaint, found at Ex. A to the Declaration of Sidney S. Liebsman, #56 in H-02-4788, and virtually identical to the amended complaint (#97) that was filed without leave on August 17, 2006.

The motion for leave to amend (#56) was filed on September 15, 2005, two and a half months before the cut-off for fact discovery, November 30, 2005.  Plaintiffs expressed concern that if they did not seek leave to amend at that time, but instead complied with the Court's July 11, 2003 order staying the filing of amended complaints in this action until a class had been certified in *Newby* and in *Tittle*, some of the proposed new claims might become time-barred.[6]  As noted, the order certifying the *Newby* class was not entered in H-01-3624 until July 5, 2006, #4836; a class was certified in *Tittle,* H-01-3913, on June 7, 2006, #1191.  Plaintiffs argue that the July 11, 2003 order should be construed as having tolled the applicable statutes of limitations: "[W]here a person is prevented from exercising his legal remedy by the pendency of legal proceedings, the time during

---

[6] If the Court holds that its July 11, 2003 order does not toll all applicable statues of limitation, the Ohio Retirement Systems alternatively argue that the new claims "relate back" to filing of the complaint under Fed. R. of Civ. P. 15 because they arise out of the same conduct and occurrences that were the basis of the state-law claims in their original complaint.

which he is thus prevented should not be counted against him in
determining whether limitations have barred his right." *Piotrowski v. City of Houston*, 237 F.3d 567, 577 n.14 (5th Cir.
2001)(applying Texas law[7]).[8] *See also Versluis v. Town of Haskell,
Okla.*, 154 F.2d 935, 942 (10th Cir. 1946)("it is . . . well
recognized . . . that 'whenever a person is prevented from
exercising his legal remedy by some paramount authority, the time
during which he is thus prevented is not to be counted against him
in determining whether the statute of limitations has barred his
right.'"). Moreover, Plaintiffs emphasize that additional rounds
of depositions after the close of discovery might be necessary
because of the new claims and new Defendants if the amendment were
delayed.

Cincinnati and OTTA ask permission to join the Ohio
Retirement Systems as Plaintiffs with the filing of the new

---

[7] The Fifth Circuit applied Texas law in *Piotrowski*; for the
Ohio Retirement Systems' Ohio state-law claims Texas law would not
apply.

[8] Non-Party Outside Directors and Goldman Sachs insist
*Piotrowski* is not on point. Because the *Piotrowski* case arose in
the undersigned judge's court, the Court is fully familiar with it.
After this Court dismissed the lawsuit with prejudice, that
dismissal was affirmed, but at the same time the Fifth Circuit
equitably tolled limitations and allowed a new suit based on a new
theory to be filed. A new action was filed and was assigned to
another judge. Piotrowski was prevented from filing the new
lawsuit until that appellate ruling. In the instant suit, argue
Defendants, there was no order or appeal preventing Plaintiffs from
filing a new lawsuit or a motion for leave to amend. Bank of
America notes that Piotrowski did not seek to add defendants not
named in her original action. Defendants also distinguish the
situation here from that in *Versluis*, in which the court refused to
toll the statute of limitations during a time that "relevant
decisions rendered doubtful whether the action might be
successfully maintained."

complaint for reasons of economy and efficiency.  Moreover, they
fear that in waiting until the *Newby* class is certified to request
joinder with leave to amend, their state-law claims might become
time-barred.  These two, as putative class members in the *Newby*
action until opting out, claim entitlement to the protections of
the *American Pipe* tolling doctrine for the claims they seek to
assert in the proposed amended complaint and request that the
Court determine that they have a right to such benefits and
protections, even though they seek to file a complaint **before** the
Court ruled on class certification.  *Joseph v. Wiles*, 223 F.3d
1155, 1166-68 & n.9 (10th Cir. 2000)(holding that the *American Pipe*
tolling doctrine (filing of a class action under Federal Rule of
Civil Procedure 23 tolls statute of limitations, from the time the
class action is filed to the time class certification is denied)
applies to claims of a putative class member who opts out before
a class is certified:  "Defendants' potential liability should not
be extinguished simply because the district court left the class
certification issue unresolved.  Consequently we conclude that
*American Pipe* tolling applies to the statute of repose governing
[plaintiff's] action.").  They argue that denial of class
certification should not be a prerequisite to availing themselves
of the benefits of the *American Pipe* tolling doctrine.  *Realmonte
v. Reeves*, 169 F.3d 1280, 1284 (10th Cir. 1999)(citing cases from
the Eight, Ninth, and Third Circuits finding that the "denial of
certification" requirement for *American Pipe* tolling is illogical

and irrelevant).[9] *But see In re WorldCom Inc. Sec. Litig.*, 294 F. Supp.2d 431, 451-52 (S.D.N.Y. 2003)(refusing to allow 147 opt-out plaintiffs to benefit from *American Pipe* tolling in the absence of a decision on class certification); *Rahr v. Grant Thornton LLP*, 142 F. Supp. 2d 793, 800 (N.D. Tex. 2000)("None of the judicial efficiency purposes of the doctrine is served by applying it to plaintiffs who voluntarily pursue their individual claims even before the court determines whether the class is viable."). Cincinnati and OTTA assert that application of the doctrine here would serve judicial efficiency because it would avoid "prosecuting related claims of closely aligned parties on two different tracts."

Even if the Court should find that tolling under *American Pipe* does not apply, Cincinnati and OTTA maintain that the filing of this motion for leave to amend should toll their state-law claims. *Stafford v. Clark Const. Co.*, 901 F. Supp. 232, 233 (E.D. Tex. 1995)("The statute of limitations on a cause of

---

[9] Cincinnati and OTTA misrepresent their authority here.  This Court observes that in *Reeves,* a class was certified for the purpose of approving a settlement agreement **before** the Realmontes elected to opt out. 169 F.3d at 1283.  As for the cases cited for the proposition that denial of certification should not be a prerequisite for *American Pipe* tolling, those appellate courts held that the tolling rule applied for plaintiffs who opted out and filed individual suits after certification was **granted**.  *Id.* at 1284.  These Circuits did not hold that plaintiffs who opted out before a class certification decision was made should be accorded the benefits of the *American Pipe* tolling doctrine.  Thus the *Reeves* court held, "[W]e hold that the fact that the Realmontes' participation in the class action terminated with the decision to opt out of a certified class rather than with the denial of class certification is irrelevant to the applicability of the *American Pipe* tolling rule." *Id.*

action is tolled as soon as a motion for leave to file an amended complaint is filed."); *Bradley v. Armstrong Rubber Co.*, 46 F. Supp. 2d 583, 586 (S.D. Miss. 1999)(holding that the filing of a motion to amend with the proposed amended complaint before the statute of limitations had run "tolled the statute of limitations on the added Plaintiffs' claims for a reasonable time.").[10]

Cincinnati and OTTA insist that the *American Pipe* tolling doctrine should toll the statutes of limitations for their state-law claims as well as the new federal securities law claims because they involve the same facts, evidence and witnesses (stemming from the massive fraud at Enron) as *Newby*. *Sellers v. Bragg*, No. 04 C 3663, 2005 WL 1667406, *6 (N.D. Ill. July 13, 2005); *In re Linerboard Antitrust Litig.*, 223 F.R.D. 335, 351 (E.D. Pa. 2004)(same); *In re Indep. Serv. Org. Antitrust Litig.*, Civ. No. MDL-1021, 1997 WL 161940 (D. Kan. Mar. 12, 1997).

2. *Non-Party Outside Directors' Response (#59)*

The Outside Directors[11] object that amendment would be futile because all applicable statutes of limitations on the purported new claims against them expired well before Plaintiffs filed the motion for leave to amend. *Pan-Islamic Trade Corp. v.*

---

[10] Bank of America points out that these cases stand for the proposition that filing a motion to amend only tolls the statute of limitations on claims that have not yet expired; it insists that the statutes of limitations on Plaintiffs' claims had already run before they filed their motion for leave to amend.

[11] Outside Director Movants are Robert A. Belfer, Norman P. Blake, Jr., Ronnie C. Chan, John H. Duncan, Joe H. Foy, Wendy L. Gramm, Robert K. Jaedicke, Charles A. LeMaistre, John Mendelsohn, Jerome Meyer, Frank Savage, John A. Urquhart, and Charles E. Walker.

*Exxon Corp.*, 632 F.2d 539 (5th Cir. 1980)(the court need not grant leave to amend where it would be futile to do so), *cert. denied*, 454 U.S. 927 (1981); *FDIC v. Conner*, 20 F.3d 1376, 1385 (5th Cir. 1994)(court should deny leave to amend for futility where movant seeks to assert a claim on which limitations has expired).  The Outside Directors insist that Plaintiffs' alternative tolling theories, asserted in a useless effort to revive time-barred claims, lack merit because (1) Plaintiffs are not entitled to class tolling since they filed separate actions before a decision on class certification; (2) even if applicable, *American Pipe* would not apply to Ohio State common-law claims because they were not, and could not have been, asserted in the *Newby* class action; (3) the Court's July 11, 2003 scheduling order did not prevent Plaintiffs from filing suit against the Outside Directors and thus it cannot be a basis for tolling, equitable or otherwise; and (4) the "relation back" doctrine under Fed. R. Civ. P. 15 does not apply to new parties, such as the Outside Directors.

Plaintiffs seek to bring three claims, two of them common law, against the Outside Directors:  (1) aiding and abetting common-law fraud; (2) negligent misrepresentation; and (3) violation of Section 18 of the Securities Exchange Act of 1934, 15 U.S.C. § 78r.[12]

---

[12] Section 18(a), imposing liability for misleading statements in documents filed with the SEC under section 15(d) of the Exchange Act, 15 U.S.C. § 78o(d), provides in relevant part:

> Any person who shall make or cause to be made any statement in any application, report, or document filed pursuant to this chapter or any

The Outside Directors argue that an amendment to add the aiding and abetting common law fraud is futile because "Ohio does not recognize claims for aiding and abetting common-law fraud; one who engages in any way  in fraudulent behavior is liable for fraud itself, not as an aider and abettor to fraud." *Federated Mgt. v. Coopers & Lybrand*, 738 N.E.2d 842, 853 (Ohio Ct. App. 2002).

The Ohio statute of limitations for negligent misrepresentation is four years, and the discovery rule does not apply, insist the Outside Directors. *Dancar Properties, Ltd. v. O'Leary-Kientz, Inc*., No. C-030936, 2004 WL 2974067, *2, 2004-Ohio-6998 (Ohio App. 1 Dist., Dec. 23, 2004), *appeal not allowed*, 105 Ohio St. 3d 1546, 827 N.E. 2d 328, 2005-Ohio-2188 (Ohio May 11, 2005)("negligent misrepresentation is not among the specifically enumerated cause of action for which the discovery rule applies under R.C. 2305.09"[13]); *Chandler v. Schriml*, No. 99AP-

---

rule or regulation thereunder or any undertaking contained in a registration statement as provided in subsection (d) of section 78o of this title, which statement was at the time and in light of the circumstances under which it was made false or misleading with respect to any material fact, shall be liable to any person (not knowing that such statement was false or misleading) who, in reliance upon such statement, shall have purchased or sold a security at a price which was affected by such statement, for damages caused by such reliance, unless the person sued shall prove that he acted in good faith and had no knowledge that such statement was false or misleading.

[13] Section 2305.09 sets out certain tort causes of action to which a four-year statute of limitations and identifies those to which the discovery rule is applicable:

1006, 2000 WL 675123, *2 (Ohio App. 10 Dist. May 25, 2000). Thus
even if the proposed amended complaint were deemed filed on
September 15, 2005, when Plaintiffs filed their motion for leave
to amend, the complaint would have to assert misrepresentations
made after September 15, 2001 or they are time-barred; Plaintiffs'
claims rest on Enron financial statements[14] made by the Outside
Directors before that date.

     As for alleged violation of § 18, Outside Directors
contend that the period of repose in 15 U.S.C. § 78r(c)("No action
shall be maintained to enforce any liability created under this
section unless brought within a year after the discovery of the

_____

     An action for any of the following causes
shall be brought within four years after the
cause of action thereof accrued:

     (A) For trespassing upon real property;

     (B) For recovery of personal property, or for
taking or detaining it;

     (C) For relief on the ground of fraud;

     (D) For an injury to the rights of the
plaintiff not arising on contract nor
enumerated in sections 1304.35, 2305.10 tp
2305.12. and 2305.12 of the Revised Code;

     (E) For relief on the grounds of a physical or
regulatory taking of real property;

     If the action is for trespassing under ground
or injury to mines, or for the wrongful taking
of personal property, the cause thereof shall
not accrue until the wrongdoer is discovered;
nor, if for fraud, until the fraud is
discovered.

[14] Outside Directors also question whether the financial
statements are representations made by them.

- 14 -

facts constituting the cause of action and within three years after such a cause of action accrued.") has expired.

The Outside Directors emphasize that Plaintiffs have moved for leave to amend in an existing individual action filed before the Court ruled on class certification.  They maintain that "[t]he vast weight of recent authority, especially in complex multidistrict litigation such as this, makes clear that *American Pipe* tolling is <u>not</u> afforded to plaintiffs who file separate actions or "opt out" <u>prior</u> to a decision on class certification. Plaintiffs' claims are therefore untimely, and leave to amend should be denied."  #59 at 6.  *See Wyser-Pratte Co., Inc. v. Telxon Corp.*, 413 F.3d 553, 568-69 (6ᵗʰ Cir. 2005)(holding that a private action plaintiff in a large securities fraud action forfeited the right to class tolling by filing suit before a decision on class certification); *In re WorldCom, Inc., Sec. Litig.* 294 F. Supp. 2d 431, 452 (S.D.N.Y. 2003); *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 261 F. Supp. 2d 188, 221 (E.D.N.Y. 2003); *Rahr v. Grant Thorton LLP*, 142 F. Supp. 2d 793, 600 (N.D. Tex. 2000); *Stutz v. Minn. Mining & Mfg. Co.*, 947 F. Supp. 399, 404 (S.D. Ind. 1996); *Wachovia Bank & Trust Co. v. Nat'l Student Mktg. Corp.*, 461 F. Supp. 999, 1013 (D.D.C. 1978).

Moreover argue Outside Directors, even if the tolling doctrine did apply generally, it would not toll the Ohio state common law and statutory claims, which were not asserted in *Newby* and could not have been because they would have been preempted by the Securities Litigation Uniform Standards Act (SLUSA), 15 U.S.C.

§ 77p(b)(1)("no covered class action based upon the statutory or
common law of any State or subdivision thereof may be maintained
in any State or Federal court by any private party alleging an
untrue statement or omission of a material fact in connection with
the purchase or sale of a covered security").   The Outside
Directors conclude that therefore the "Ohio Plaintiffs [who had
filed their own lawsuit to pursue claims under Ohio law before any
class was certified] had no legitimate reason to believe or expect
that the class action tolled their Ohio state law claims."   #59
at 9.

        Outside Directors further argue that the July 11, 2003
scheduling order did not provide a basis for tolling, nor did it
bar Plaintiffs from filing a new lawsuit against new parties;
Plaintiffs elected to wait to file a new suit against new parties
until after limitations expired.  Even if Plaintiffs believed that
the scheduling order prevented them from filing new suits, their
remedy was to seek leave of court before limitations expired, not
to sit on their hands.  Plaintiffs are not entitled to equitable
tolling.

        Nor does the "relation back" doctrine of Fed. R. of Civ.
P. 15(c) apply to the proposed claims against new parties,
including Outside Directors, to revive these time-barred claims,
Outside Directors contend.  That doctrine applies only when the
action would originally have been brought against a new party "but
for mistake concerning the identity of the proper party," as
opposed to a strategic decision not to sue or a lack of knowledge

regarding the identity of a given party.  Outside Directors were sued in a number of actions, and there could be no mistake as to who they were.

Finally, Outside Directors insist they would suffer undue prejudice if the Court were to grant the motion for leave to amend because the depositions of four key Ohio Plaintiffs' representatives (Jana Harris, Richard Curtis, Timothy Steitz, and Timothy Viezer) took place before Plaintiffs filed their motion.

*3.  Response of the Bank Defendants Named in the Original Complaint (#62)*

Citigroup Inc., Credit Suisse First Boston LLC (f/k/a Credit Suisse First Boston Corp.), JPMorgan Chase & Co., Lehman Brothers Holdings Inc., and Merrill Lynch (collectively, "Originally Named Bank Defendants") object to Plaintiffs' request for a court finding that the statute of limitations on all new proposed claims has been tolled.  They maintain that the issue is improperly raised in a motion for leave to amend and that they will address the issue in responsive pleadings to the amended complaint, if the Court allows it to be filed.

*4.  Response of Certain Non-Party Financial Institutions (#64)*

The Royal Bank of Scotland plc, National Westminster Bank Plc, Barclays PLC, Barclays Bank PLC, Barclays Capital Inc., Deutsche Bank AG, Deutsche Bank Securities Inc., Deutsche Bank Trust Company Americas, Royal Bank of Canada, and Toronto Dominion Bank (collectively, "Non-Party Banks"), which Plaintiffs seek to name as Defendants in the proposed amended complaint, are charged

with aiding and abetting common law fraud, negligent misrepresentation, and violations of § 10(b) and 20(a) of the Securities Exchange Act of 1934.  These newly proposed Financial Institution Defendants also disagree with Plaintiffs that Plaintiffs have been barred by the July 11, 2003 scheduling order from filing suit against the proposed new defendants and charge that Plaintiffs are in actuality attempting, "albeit in a back handed fashion, . . . to revive already time-barred claims by pointing to a non-existent impediment and asking that it be removed." #64 at 1.  Plaintiffs are also improperly "asking for advance determinations on the tolling of limitations in various circumstances as to claims they propose to file." *Id.* at 1-2. They ask the Court to deny the motion in all respects as to the Non-Party Banks.

*5.  Response of Goldman Sachs & Co. (#65)*

Plaintiffs' amended complaint asserts claims for aiding and abetting common law fraud, negligent misrepresentation, and violations of § 10(b) and § 20(a) against another proposed new Defendant, Goldman Sachs & Co. ("Goldman Sachs").  Goldman Sachs joins in the arguments of other proposed Defendants that absent tolling, the statutes of limitations have run on the federal and state claims, but in the interests of efficiency, does not repeat them.  #67 at 11 n.3.  It concurs with Defendants that nothing in the July 11, 2003 order prevented Plaintiffs from seeking leave to amend or filing a new lawsuit against Goldman Sachs and the other new Defendants.  Plaintiffs also cannot argue that the July

11, 2003 order extended the statutes of limitations.  Plaintiffs'
effort to invoke the *American Pipe* tolling doctrine fails, as
explained by the other proposed Defendants.  Even if the doctrine
did apply to these Plaintiffs, it would not apply to claims
against Goldman Sachs because Goldman Sachs was not named as a
Defendant in the original *Newby* complaint nor is it today a
Defendant in any Enron class action alleging fraud.  The only
pending Enron class action claim against Goldman Sachs is solely
for a § 11 violation relating to an offering of Exchangeable
Notes, which the Ohio Plaintiffs do not claim to have purchased.

Goldman Sachs further objects that contrary to the
statement in the July 11, 2003 order of this Court that the claims
the Court had dismissed were not be reasserted in new pleadings,[15]
Plaintiffs' proposed amended complaint asserts conclusory fraud
claims identical to the allegations made by another plaintiff
against Goldman Sachs, indeed "obviously . . . copied from the
rejected *Silvercreek* pleading, sometimes verbatim," in *Silvercreek*
*Mgm't, Inc. v. Salomon Smith Barney, et al.* (H-02-3185, #67 (*inter*
*alia* dismissing common law fraud and negligent misrepresentation
claims under New York law against Goldman Sachs) and #74 (stating
*inter alia* that the earlier dismissal of common law claims was
with prejudice and they should not be addressed again)).  Goldman
Sachs charts the parallel allegations in the proposed amended

---

[15] Specifically the order (#1561 at 4 in H-01-3624) stated, "IN
ALL AMENDED PLEADINGS, COUNSEL SHALL NOT REITERATE ALLEGATIONS OR
ARGUMENTS PREVIOUSLY REJECTED BY THIS COURT IN RULINGS ON MOTIONS
TO DISMISS THE CONSOLIDATED COMPLAINTS."

complaint here and the *Silvercreek* pleadings. #65 at 4-6.   It
argues that the fraud claim here should be dismissed for the same
reasons as those claims in *Silvercreek,* failure to comply with
Fed. R. Civ. P. 9(b), and that the negligent misrepresentation
claim under Ohio law, like that under New York law, should be
dismissed because Plaintiffs failed to plead a type of "special
relationship," necessary to give rise to a duty on the part of
Goldman Sachs to Plaintiffs.   Nor have Plaintiffs alleged that
Goldman Sachs owes them any duty.

Aside from parallel allegations in *Silvercreek*, noting
that the proposed new claims are based on allegedly overly-bullish
ratings issued by Goldman Sachs, Goldman Sachs argues that it is
now well established that a plaintiff alleging that an analyst
issued a false statement of opinion must allege particularized
facts showing that the analyst did not believe what he wrote at
the time it was written.   *See, e.g., Virginia Bankshares, Inc. v.
Sandberg*, 501 U.S. 1083, 1094-96 (1991); *Nolte v. Capital One Fin.
Corp.*, 390 F.3d 311, 315 (4th Cir. 2004)("[U]nder *Virginia
Bankshares*, the complaint must allege that the opinion expressed
was different from the opinion actually held by the speaker."); 
*Podany v. Robertson Stephens, Inc.*, 318 F. Supp. 2d 146, 153-54
(S.D.N.Y. 2004)("The sine qua non of a securities fraud claim
based on false opinion is that defendants deliberately
misrepresented a truly held opinion.").   Goldman Sachs contends
that Plaintiffs have failed to plead a single fact suggesting that
the analyst, David Fleischer, who issued the bullish opinions, did

not believe what he wrote at the time despite the fact that he has been deposed.

Nor have Plaintiffs satisfied the requirements under *Dura Pharmaceuticals v. Broudo*, 125 S. Ct. 1627 (2005)(plaintiffs must allege not only that they bought securities in an inflated market but that a corrective disclosure that the rating or report was false caused the stock to decline), for pleading loss causation. *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172-73 (2d Cir. 2005), *cert. denied*, 126 S. Ct. 421 (2005). In the complaint Plaintiffs claim that Enron's stock steeply declined despite Goldman Sachs' continued positive ratings.

*6. Corrected Response of Bank of America Corporation ("BAC") and Banc of America Securities LLC ("BAS")(collectively, "Bank of America")(#66 and 70)*

The proposed complaint asserts claims against BAC and BAS under §§ 10(b) and 20(a) of the 1934 Act and common-law fraud, negligent misrepresentation, aiding and abetting fraud, and conspiracy to commit fraud under Ohio state law.

The claims under sections 10(b) and 20(a) allege that Bank of America participated in the falsification of Enron's financial results through its involvement in (1) the Bammel and Rawhide transactions, (2) structuring and funding of LJM2 Co-Investment, L.P. Partnership ("LJM2"), and (3) the Marlin Water Trust II Notes offering ("Marlin Notes Offering"). The Bammel transaction closed in December 1997, and the Rawhide, in December

1998.  Bank of America argues that § 10(b) and derivative § 20(a)[16] control-person claims arising out of these two transactions are time-barred (and were before the July 30, 2002 effective date of the Sarbanes-Oxley Act)[17] by the three-year statute of repose then governing under *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 364 (1991)(based on §§ 9(e) and 18(a) of the 1934 Act and § 13 of the 1933 Act, the Supreme Court held that a claim under the federal securities statutes must be brought one year from date of discovery or, at the latest, three years from date of violation).  Bank of America also asserts that since LJM2 was funded in December 1999, so Plaintiffs' proposed amended complaint's § 10(b) and § 20(a) claims based on it, which may not have expired at the time of Sarbanes-Oxley's enactment, are time-barred by the extended five-year statute of repose established in Section 804 of the Sarbanes-Oxley Act, 28 U.S.C. § 1658, which expired in December, 2004.  It maintains that any later claims connected to that partnership are also barred by the two-year statute of limitations in Section 804 of the Sarbanes-Oxley Act, because Plaintiffs were on inquiry notice of these claims no later

---

[16] The derivative § 20(a) claim has the same statute of limitations as that for the underlying primary violation of § 10(b).  *Theoharous v. Fong*, 256 F.3d 1219, 1228 n.12 (11th Cir. 2001) ("Because of the derivative nature of Section 20(a) claims, the same limitations period [as that for Section 10(b)] applies to claims under that section."); *Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 350 n.2 (2d Cir. 1993); *Enigma Holdings Inc. v. Gemplus Inter. S.A.*, No. 3:05 CV 1168 B, 2006 WL 2859369, *6 (N.D. Tex. Oct. 6, 2006).

[17] This Court has held that the Sarbanes-Oxley Act does not revive claims that were time-barred before its date of enactment, July 30, 2002.  #1999.

than April 8, 2002 when the *Newby* Consolidated Amended Complaint,
which contained allegations against BAC relating to LJM2, was
filed.[18]

> That two-year statute of limitations would also bar
claims relating to the Marlin Notes Offering, which took place in
July 2001, urges Bank of America, because Plaintiffs were on
inquiry notice no later than October 11, 2002, when virtually
identical complaints (asserting claims under §§ 10(b) and 20(a)
and common law fraud and negligent misrepresentation claims
against BAC and BAS) in connection with the Marlin Notes Offering
were filed in two consolidated actions, one in the Southern
District of New York, the other in the Southern District of Texas:
*Abbey Nat'l Treasury Servs., plc v. Credit Suisse First Boston
Corp.*, No. 02-CV-1241 in the Southern District of New York, and
H-02-3869 in the Southern District of Texas.  Exs. 1 and 2 to
Corrected Appendix, #70.  Furthermore, any § 10(b) claims relating
to Bank of America's analyst reports about Enron from 1997 to 2001
are time-barred by the two-year statute of limitations in
Sarbanes-Oxley because Plaintiffs were on notice of possible
misstatements in those reports at the latest on January 16, 2002,

---

[18] Bank of America cites the following cases for the
proposition that the filing of a complaint in another action
asserting the same theories of liability against the same
defendant(s) places plaintiffs on inquiry notice of their claims
against the same parties:  *In re Adelphia Comm. Corp. Sec. &
Derivative Litig.*, No. 03 MD 1529 (LMM), 2005 WL 1278544, *9
(S.D.N.Y. May 31, 2005); *Shriners Hospitals for Children v. Qwest
Communications Int'l Inc.*, No. 04-CV-0781-REB-CBS, 2005 WL 2350569,
*4 (D. Colo. Sept. 23, 2005); *Benak v. Alliance Mgmt. Corp., 349 F.
Supp. 2d 882, 891-92 (D.N.J. 2004).*

when the original complaint (Appendix Ex. 3, #70) with similar allegations of fraud and negligent misrepresentation was filed against BAS in *Silvercreek Management v. Salomon Smith Barney, Inc.*, No. H-02-3185.  Ex. 3, *id.*

Bank of America further contends Plaintiffs' own pleadings also demonstrate that inquiry notice was given on October 16, 2001 when Enron announced it was taking a non-recurring charge of over $1 billion in the third quarter of 2001, with a resulting sharp decline in the price of Enron stock.  The original *Newby* complaint was filed six days later.  On October 31, 2001 the SEC commenced an investigation of Enron.  In November 2001, Enron announced it was restating its financial results for the period from 1997 through 2000.  Then, on December 2, 2001, Enron filed for bankruptcy.[19]

---

[19] In #1999 at 32 n.34 in *Newby*, this Court rejected the argument that the putative class members had inquiry notice of claims against banks involved with Enron

> as early as December 2002, when Enron filed for bankruptcy and the prices of Enron and Enron-related securities plunged.  They contend that the "operative complaint was the original *Newby* complaint, filed on October 20, 2001.  The Court finds this argument lacks merit, as the first complaint was filed before Enron made most of its public disclosures prior to filing for bankruptcy and the nature of the alleged fraud is so complex and the banks' purported involvement initially less obvious than that of Enron officers and directors, that experts to this day have difficulty unraveling the intricacies.

As for the argument that inquiry notice was triggered by the First Consolidated Complaint filed on April 8, 2002 (#441) and the unknown identities of some Bank Defendants, see #2036 at 53-75 (finding good cause, including reliance on a Court order, for

If these events did not trigger the running of the statute of limitations, Bank of America insists that the filing of the *Silvercreek* complaint (Ex. 3 to Corrected Appendix, #70) on January 16, 2002 certainly did.  Plaintiffs did not file their motion for leave to amend until September 15, 2005.

Bank of America also argues that the Ohio state-law claims, which all arise from the sale of Enron securities, are time-barred by the two-year statute of limitations and/or four-year statute of repose for securities fraud claims contained in the Ohio Securities Act,[20] with the same means and dates indicated

_____

construing Lead Plaintiff's counsel's January 14, 2003 letter as a motion for leave to amend to name the subsidiaries of Bank Defendants, making the First Amended Consolidated Complaint (#1388, filed May 14, 2003) timely).

In an order dated April 6, 2004 (#2064), denying Bank of America's motion to dismiss in *Newby*, referencing earlier orders, the Court emphasized that it had "rejected the argument that Plaintiffs had inquiry notice" of Foreign Debt Securities claims against secondary-actor Bank Defendants as early as October 2001; "[i]nstead it found that the earliest possible storm warnings came in October 2002."  #2064 at 4.

[20] Bank of America contends that under Ohio law, common law claims that "arise out of or are predicated on the sale of securities" are governed by the Ohio Securities Act's statute of limitations, § 1707.43(b), not the general four-year statute of limitations for tort claims, Ohio Rev. Code § 2305.09.  *Wyser-Pratte*, 413 F.3d at 561; *Rogers v. Isler*, No. 2:03-CV-1192, 2005 WL 12075, *17 (S.D. Ohio June 20, 2005).  Courts look at the actual nature of the claim, not the title of the cause of action.  *Lynch v. Dean Witter Reynolds, Inc.*, 731 N.E.2d 1205, 1207 (Ohio Ct. App. 1999).  Section 1707.43 applies to any action "for recovery based upon or arising out of a contract for sale made in violation of sections 1707.01 to 1707.45 . . . ."  Bank of America asserts that the authority to the contrary cited by Plaintiffs' relates to cases that did not involve claims arising out of the sale of securities and that therefore applied the general statute of limitations for common law fraud and negligent misrepresentation.

According to Bank of America, currently the Ohio Securities Act provides that no action may be brought after the

above giving Plaintiffs the requisite inquiry notice.  Plaintiffs

also had notice of the facts underlying the claims relating to

---

earlier of "two years after the plaintiff knew, or had reason to
know, of the facts by reason of which the actions of the person or
director were unlawful, or more than five years from the date of
such sale or contract for sale, which ever is the shorter period."
Ohio Rev. Code § 1707.43.  It was amended, effective September 16,
2003.  Before that date, and at the time the instant suit was
filed, it provided that the statute of limitations was two years
from the date of discovery or four years from the date of
Plaintiffs' purchase of the securities.  Ohio Rev. Code, §
1707.43(B).  *See Wyser-Pratte*, 413 F.3d at 561 n.7.  Bank of
America maintains that the latter governs Plaintiffs' claims since
the case was already pending when the statute was amended and
because under Ohio law there is a presumption against the
retroactive application of a statute, particularly where there is
no legislative history indicating otherwise.  O.R.C. § 1.48 ("A
statute is presumed to be prospective in its operation unless
expressly made retrospective"); O.R.C. § 1.58 ("The reenactment,
amendment, or repeal of a statute does not . . . [a]ffect the prior
operation of the statute or any prior action taken thereunder");
*Wade v. Lynn*, 181 F. Supp. 361, 364 (N.D. Ohio 1960); *In re Brenna
E.*, 705 N.E.2d 728, 730 (Ohio Ct. App. 1997). Bank of America
claims there is no legislative history or statutory language
reflecting retroactive intent on the part of the legislature.
        Plaintiffs object that the two-year statute of
limitations in § 1707.43(b) does not apply to actions in which the
plaintiff does not expressly base his claim upon and assert that it
arises out of the Ohio blue sky law.  *Nickels v. Koehler Mgmt.
Corp.*, 541 F.2d 611, 616 (6th Cir. 1976)(holding that the two-year
statute of limitations in Ohio's blue sky law did not apply to all
cases of securities fraud and the four-year statute of limitations
for common-law fraud was more appropriate for application to
federal securities fraud claims)( "[W]e do not agree that the two
year limitation period in § 1707.43 was intended to apply to all
cases of securities law fraud. . . . It applies to cases where the
plaintiff claims his recovery is 'based upon' or 'aris[es] out of'
a violation of the blue sky provisions, whether the theory of
damages is contract or tort, at law or equity.  But 1707.43 was not
. . . intended to apply to actions in which the plaintiff does not
expressly 'base (his claim) upon' and does not contend that it
'aris(es) out of' the blue sky law."), *cert. denied*, 429 U.S. 1074
(1977).  *Nickels* was subsequently overruled on other grounds,
*Ockerman v. May Zima Co.*, 27 F.3d 1151 (6th Cir. 1994).
        Because the aiding and abetting common law fraud claims
here do not arise out of a contract for sale of securities, the
Court agrees with Plaintiffs' argument that § 1707.43 is not
applicable.

Bammel no later than March 28, 2003 when the proposed amended complaint in *Silvercreek* was filed with claims against BAS similar to those made by the Ohio Plaintiffs.  Claims arising out of the Rawhide transaction were asserted in the proposed amended complaint in *Silvercreek* and in the First Amended Consolidated Complaint in *Newby*, which was filed on May 14, 2003, more than two years before Plaintiffs filed their motion for leave to amend. Finally, insists Bank of America, all of Plaintiffs' state-law claims were barred by the Ohio Securities Act's four-year statute of repose to the extent that they relate to purchases of Enron securities that were made more than four years before Plaintiffs filed their motion for leave to amend.

Thus according to the Bank of America, the state-law claims based on LJM2, the Marlin Notes Offering, and Bank of America's analyst reports, as well as the December 1997 Bammel transaction,[21] are time-barred because Plaintiffs had inquiry notice of them more than two  years before they filed their motion for leave to amend.  State-law claims based on the December 1998 Rawhide transactions are also time-barred because the March 29, 2003 *Silvercreek* Proposed Amended Complaint referenced the transaction, while the May 2003 *Newby* complaint alleged it was a

---

[21] Bank of America contends that Plaintiffs had inquiry notice of their claim based on Bammel in March 2003 but waited more than two years to move to amend to add the claim.  On March 5, 2003, the Second Interim Report of Court-Appointed Enron Bankruptcy Examiner Neal Batson, describing the transaction and Bank of America's involvement in it, was made publicly available.  Moreover on March 28, 2003 the *Silvercreek* Proposed Amended Complaint, asserting that BAS was involved in Bammel and the fraud at Enron, was filed.

disguised loan.   Furthermore the Enron North America Corp. Bankruptcy Examiner concluded that the evidence was "insufficient to support a conclusion that BofA acted improperly respecting Rawhide."   The Goldin Report, Appendix VII, p. 87.   Bank of America further contends that all the state-law claims based on purchases of Enron securities before September 15, 2001[22] are barred by the four-year statute of repose in the Ohio Securities Act.

While pointing out that Ohio has adopted *American Pipe* tolling,[23] Bank of America maintains that *American Pipe* tolling is inapplicable (1) to claims against BAS because BAS was not named as a defendant in the April 2002 *Newby* Consolidated Complaint;[24] (2) to claims based on Bammel and Rawhide because the April 2002 *Newby* complaint against BAC did not reference those transactions nor provide any notice of claims arising from them, contrary to Plaintiffs' assertion, and because the Bammel transaction fell

---

[22] Plaintiffs state that their last purchase of Enron stock was on July 25, 2001, so according to Bank of America, the statute of repose expired on July 25, 2005, before Plaintiffs filed their motion for leave to amend.

[23] *Vaccariello v. Smith & Nephew Richards, Inc.*, 94 Ohio St. 3d 380, 763 N.E.2d 160, 163 (Ohio 2002)(holding that "the filing of a class action whether in Ohio or the federal court system, tolls the statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."); *Wyser-Pratte*, 413 F.3d at 567.

[24] *See Wyser-Platte*, 413 F. 3d at 567 ("The few cases that have considered similar situations have held that class action tolling does not apply to a defendant not named in the class action complaint); *in accord Arneil v. Ramsey*, 550 F.2d 774, 782 n.10 (2d Cir. 1977); *Prieto v. John Hancock Mut. Life Ins. Co.*, 132 F. Supp. 2d 506, 519 (N.D. Tex. 2001).

outside the putative class period of October 19, 1998 to November 27, 2001; and (3) to Plaintiffs' state-law claims because the April 2002 *Newby* complaint did not and could not have asserted state-law claims because of SLUSA preemption.[25]   Plaintiffs' proposed claims against BAC and BAS are based on different legal theories and different facts than those asserted against BAC in the April 2002 *Newby* complaint.  Even if tolling were applicable, it would not save the claims regarding LJM2, the Marlin Notes Offering, and Bank of America's analyst reports because the claims would still be too late:  Plaintiff would only be entitled to tolling during the approximately eight and a half months that the § 10(b) claim against BAC in the April 2002 *Newby* complaint was pending and these claims would still have been untimely asserted.[26]

---

[25] Bank of America cites *Weston v. Ameribank*, 265 F.3d 366, 368 (6th Cir. 2001)(affirming dismissal of plaintiff's federal claim as time-barred because it was not tolled by the pendency of a class action alleging only state-law claims).  This Court concludes that Bank of America is mischaracterizing *Weston*, because in the class action (*Dressel v. Ameribank*), the statute of limitations on plaintiffs' federal Truth In Lending Act ("TILA") claim had run before they filed a motion for leave to add it.  In the subsequent individual action brought by a plaintiff who had been a member of the *Dressel* class, the plaintiff sought a declaration that the statute of limitations on her TILA claim had been tolled by *Dressel*; the district court, affirmed by the Sixth Circuit, determined that the TILA claim had been time-barred in the class action suit and that tolling was available only for substantive claims that were raised or could have been raised in the initial complaint.  *See Cowles v. Bank West*, 476 Mich. 1, 45-50, 719 N.W.2d 94, 118-21 (Mich. 2006); *Wyser-Pratte*, 413 F.3d at 568.

[26] Bank of America summarizes that after the *Newby* complaint was filed on April 8, 2002, this Court dismissed the § 10(b) claim against BAC on December 20, 2002, on behalf of the entire putative class, thereby ending any tolling benefit and the statute of limitations resumed running.  *Southwire Co. v. J.P. Morgan Chase & Co.*, 307 F. Supp. 2d 1046, 1064 (W.D. Wis. 2004), *aff'd in part and rev'd in part and remanded, In re Copper Antitrust Litig.*, 436 F.3d

Bank of America joins the other proposed Defendants in insisting that the Court's July 11, 2003 scheduling order did not toll the applicable statutes of limitations; the order did not refer to tolling the statutes.    Bank of America insists that statutes of repose are not subject to equitable tolling.   Nor did the order prevent Plaintiffs from filing a timely new suit against BAC and BAS or from seeking permission to amend their complaint. A number of parties have filed new actions since it was issued and a number have moved for leave to amend.   Plaintiffs fail to cite any classes in which a scheduling order was found to toll limitations.    Moreover if they can move for leave to amend in 2005, they could have done so earlier.   Nor do the proposed claims "relate back" to claims in the original complaint because Plaintiffs do not argue that their failure to name BAC and BAS as Defendants in that original complaint was the product of a mistake.

Bank of America also contends that Plaintiffs' claims are futile because in *Newby* on December 20, 2002, the Court dismissed the § 10(b) fraud claim against BAC, based in part of the purported investment of BAC or its executives in LJM2.   #1194. It also dismissed the common-law fraud claim for pleading insufficiency on December 11, 2003 in *Silvercreek*, #67 in H-02-3185, which charged BAS with structuring and investing in LJM2 and

782, 785 (7th Cir. 2006)(a state court class action based on state antitrust law cannot toll a federal statute of limitations where a federal claim has never been filed in federal court); *In re Westinghouse Sec. Litig.*, 982 F. Supp. 1031, 1036 (W.D. Pa. 1997).

participating in the Bammel transaction.  The July 11, 2003 scheduling order made clear that in new pleadings the parties should not reiterate allegations and claims that the Court had previously rejected.  Finally, allowing amendment late in the litigation after the close of fact discovery on November 30, 2005 would severely prejudice Bank of America, which would be sued for the first time.  Furthermore the allegations that have been proposed lack the specificity required by the PSLRA and by Rule 9(b) for fraud.

In sum, argues Bank of America, the Court should deny Plaintiffs' motion because all of the proposed claims against BAC and BAS are time-barred and/or have been dismissed by this Court.

7.  *Non-Parties Ian Schottlaender and Mark Wolf's Response (#Ex. 9 to #72)*

Former employees of Canadian Imperial Bank of Commerce ("CIBC"), Schottlaender and Wolf, who allegedly directed CIBC in "actively participat[ing] in the structuring or financing of certain entities that were used to manipulate Enron's financial results" and in "at least 11 FAS 140 Transactions during June 1998 through October 2001,"[27] are charged with negligent misrepresentation, aiding and abetting common law fraud, common law fraud and deceit, and violations of the Securities Exchange Act.  They oppose the motion for leave to amend and add them as Defendants on the grounds that Plaintiffs have been on notice of

_____

[27] Proposed Amended Complaint ¶ 492 at 185 (Ex. A to #56, Decl. of Liebesman).

their claims against Schottlaender and Wolf for over two years but have inexcusably delayed filing suit against them.   Allowing Plaintiffs to do so now would cause enormous and irrevocable harm to them, urge Schottlaender and Wolf, because they have not participated in the massive discovery up to this point. *Truehart v. Blandon*, 684 F. Supp. 1368, 1372 (E.D. La. 1988)(denying plaintiffs' "eleventh hour" request for leave to amend as prejudicial because amendment came fifteen months after the initial complaint was filed and would require re-opening discovery); *Mayeaux v. Louisiana Health Serv. & Indem. Co.*, 376 F.3d 420, 427 (5th Cir. 2004)(affirming denial of motion for leave to amend when case was "nearing the close of extensive discovery.").   Moreover the amendment would be futile because the claims against them are time-barred.

Schottlaender and Wolf argue that Plaintiffs have conceded that they became aware of the key facts giving rise to the claims against them no later than June 2003, when Neil Batson's Third Interim Examiner's Report, which references both men and details their involvement with Enron-related securities while employed at CIBC, was publicized.   Amended Complaint at 1; Ex. 5 to #74.   Schottlaender and Wolf charge that Plaintiffs then sat on the facts for more than two years before filing their motion for leave to amend.

Furthermore, they urge, the Amended Complaint fails to present any significant, material facts about Schottlaender or Wolf that were learned since Baton's Report was issued.

Plaintiffs have also had the benefit of all the discovery in *Newby*. In addition, in a civil suit filed by the SEC in December 2003 naming them as Defendants along with other CIBC employees in connection with the Enron/CIBC transactions, Wolf settled with the SEC on December 22, 2003 and Schottlaender, on June 25, 2004.  The SEC announced those settlements publicly, again providing notice to Plaintiffs here.  Moreover both men responded to third-party subpoenas for depositions in *Newby*, and Wolf gave testimony on July 14-16, 2004; Plaintiffs had the opportunity to participate and to review the deposition transcripts.  The lack of diligence in pursuing their claims should foreclose Plaintiffs from obtaining leave to amend.  *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 865 (5th Cir. 2003)(where plaintiffs concede that new complaint did not raise any facts not previously available, the district court was within its discretion to deny leave to amend); *In re Southmark Corp.*, 88 F.3d 311, 315-16 (5th Cir. 1996)(affirming denial of leave to amend made twenty-four months after the filing of an Examiner's Report, which detailed facts and theories incorporated in proposed Amended Complaint).  Plaintiffs neglected all these sources for more than two years.

Plaintiffs' excuse that they relied on the scheduling order, of which Schottlaender and Wolf had no notice, and in which they had no input, "cannot possibly be construed to negate the right of Messrs. Schottlaender and Wolf to be named promptly in an ongoing litigation, since they were not parties to that Order." Ex. 9 at 8 to #72.   Furthermore, even though the parties to the

order understood it precluded amended pleadings, it did not, on its face, preclude filing claims against new Defendants, as was done in several of the consolidated/coordinated cases.

As for futility because the statute of limitations has expired on the federal and common-law claims that Plaintiffs seek to assert against Wolf and Schottlaender, the two join in the brief filed by Daniel Ferguson, discussed next by the Court.  They insist the scheduling order did not toll limitations.  Even if it did, it could not apply to non-parties that were not existing parties to the litigation.

8.  *Daniel Ferguson's Corrected Opposition (Ex. 10 to #72)*

Daniel Ferguson is a Canadian citizen and resident who never worked in the United States and objects to the attempt by Plaintiffs, through their motion, to drag him into a four-year-old litigation in Texas on the eve of the discovery cutoff when the scheduling order did not toll limitations and did not bar new actions from being filed against new parties, and because limitations on their claims have expired, making amendment futile.  Specifically he argues that the claims under the Securities Exchange Act are subject to a one-year statute of limitations[28] and are time barred because Plaintiffs had constructive notice as early as April 2002, when Plaintiffs were put on inquiry notice

---

[28]  Ferguson argues that this "proceeding" began with the commencement of the *Newby* action in 2001, and thus Sarbanes-Oxley does not apply.  Even if Sarbanes-Oxley did apply, Ferguson argues that the two  year limitations expired either in April 2004, or the summer of 2005 (given the notice discussed in the text), well before Plaintiffs filed their motion for leave to amend.

because CIBC was named in the *Newby* complaint at that time. Plaintiffs were given actual notice as early as the summer of 2003 when the Third Interim Report of Neal Batson was filed and addressed the role of CIBC and affiliates in the Enron special purpose entity transactions.  Plaintiffs again received actual notice on December 22, 2003 when the SEC settlement with Ferguson was publicly disclosed.

Ferguson also contends that the Court lacks subject matter jurisdiction over the Ohio common-law claims since there is no viable federal claim.[29]

He also argues that this Court lacks personal jurisdiction,[30] both general and specific, over him, another basis

---

[29] The Court observes that this case was originally removed from state court to Ohio federal district court by Lehman Brothers Holdings on diversity and "related to" bankruptcy jurisdiction, which might negate any argument about pendent jurisdiction, now known as supplemental jurisdiction.  Regardless, under 28 U.S.C. § 1367(c), a federal district court has some limited discretion to decline to exercise subject matter jurisdiction over state-law claims if the court has dismissed all claims over which it had federal jurisdiction, although the general rule in the Fifth Circuit is "to dismiss state claims when the federal claims to which they are pendent are dismissed." *Parker & Parsley Petroleum Co. v. Dresser Industries*, 972 F.2d 580, 585 (5th Cir. 1992); *Certain Underwriters at Lloyd's, London and Other Insurers Subscribing to Reinsurance v. Warrantech Corp.*, 461 F.3d 568, 578-79 &nn.58 & 59 (5th Cir. 2006).

[30] Where a federal statute authorizes nationwide and worldwide service of process and allows for personal jurisdiction over foreigners not present in the United States, here the 1934 Exchange Act, 15 U.S.C. § 78aa, the appropriate analysis is (1) whether the defendant has had constitutionally sufficient minimum contacts with the United States as a whole (in accordance with the due process clause of Fifth Amendment) and (2) whether the exercise of personal jurisdiction is reasonable, i.e., consistent with "traditional notions of fair play and substantial justice." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 369-71 & n.2 (3d Cir. 2002); *Busch v. Buchman, Buchman & O'Brien*, 11 F.3d 1255, 1258 (5th Cir.

for finding the amendment futile.   Ferguson maintains that
Plaintiffs have failed to allege any contacts by him with the
United States.   Moreover, Ferguson insists that to exercise

---

1994)(*called into question, but followed in Bellaire General
Hospital v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 825-26
(5th Cir. 1996)); *In re Alstom SA Securities Litig.*, 406 F. Supp.
2d 346, 398 (S.D.N.Y. 2005); *SEC v. Softpoint, Inc.*, No. 95 Civ.
2951 GEL, 2001 WL 436111, *2-5 (S.D.N.Y. Jan. 18, 2001)("The
federal securities laws authorize worldwide service of process, *see*
15 U.S.C. §§ 77v(a) & 78aa, and permit the exercise of personal
jurisdiction to the limit of the Fifth Amendment's Due Process
Clause.")(extended discussion).
     "Pendent personal jurisdiction exists [over a defendant
regarding Plaintiffs' state-law claims] 'where a federal statute
authorizes nationwide service of process, and the federal and state
claims 'derive from a common nucleus of operative facts.''"   *High
River Ltd. Partnership v. Mylan Laboratories, Inc.*, 353 F. Supp. 2d
487, 495 (M.D. Pa. 2005), *quoting IUE AFL-CIO Pension Fund v.
Herrmann*, 9 F.3d 1049. 1056 (2d Cir. 1993)(*quoting in turn United
Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).   "Under these
circumstances, a district court may exercise personal jurisdiction
over the defendant with respect to related state law claims even
though personal jurisdiction would not otherwise exist."   *Id.,
citing Int'l Controls Corp. v. Vesco*, 593 F.2d 166, 175 (2d Cir.
1979).   Here Plaintiffs state-law claims involve the same nucleus
of facts as their federal law claims under the Exchange Act.
     In *Calder v. Jones*, 465 U.S. 783 (1984), the Supreme
Court concluded that a California court had personal jurisdiction
over two Florida journalists, who wrote in Florida a libelous
article that was published in California about a California
resident, based on the **effects** in California of their Florida-based
conduct.   That "effects test" for establishing personal
jurisdiction has been applied to the situation where there is a
federal statute with nationwide service of process.   "Personal
jurisdiction may be exercised over an out-of-state defendant who
'must know, or have good reason to know, that his conduct will have
effects in the state seeking to assert jurisdiction over him.'"
*Teachers' Retirement System of Louisiana v. A.C.L.N. Ltd.*, No. 01
Civ. 11814(MP), 2003 WL 21058090, *8 (S.D.N.Y. May 12,
2003)(concluding that the court could assert jurisdiction over BDO
International under a nationwide contacts analysis if BDO
International knew or had good reason to know that its actions
would have an effect in the United States), *quoting Leasco Data
Processing Equipment Corp. v. Maxwell*, 468 F.2d 1326, 1341 (2d Cir.
1972).   *See also In re Daimler Chrysler AG Securities Litig.*, 197
F. Supp. 2d 86, 94 (D. Del. 2002)("A defendant may be subject to
the Court's jurisdiction if he caused an effect in the forum by an
act done elsewhere.").

jurisdiction over him would be unreasonable because, as a foreign national the burden would be on him to defend in this country in a complex litigation without opportunity to participate in discovery, the forum state's interests are satisfied by the claims against CIBC and others, any relief that Plaintiffs can obtain would not depend on the addition of Ferguson to this litigation, the judicial system's interests are satisfied, and Ferguson's settlement with the SEC[31] on Enron-related involvement satisfies the shared policy interests of the states.

Ferguson contends that Plaintiffs had constructive knowledge of the claims against him as early as April 2002, when a CIBC affiliate was first named in the *Newby* complaint, triggering an obligation to investigate the nature of CIBC's and its employees' involvement, and actual notice as early as the summer of 2003, when Neal Batson's Third Interim Report (Ex. D to #72), with approximately eighty pages devoted to the role of CIBC and Ferguson mentioned dozens of times, was filed. Plaintiffs' proposed amended complaint states that Plaintiffs included the 2003 Batson Report in their investigation before drafting their pleadings. Furthermore, Ferguson charges, Plaintiffs received additional actual notice of their claims against him on December 22, 2003 when the SEC settlement with him was publicly disclosed

---

[31] Ferguson states that he "consented to the entry of a judgment enjoining him from violating federal securities laws; agreed to pay $563,000; and agreed to entry of an order barring him from serving as an officer or director of a publicly traded company for a period of five years." Ex. 10 at 22 n.14, citing Ex. A to Zweifach Decl. (#74).

in a press release, and various articles were published discussing it.

Ferguson argues that Section 804 of Sarbanes-Oxley with its extended statute of limitations does not apply to this case because this proceeding began before the statute was enacted, according to Ferguson with the commencement of the *Newby* action in 2001, which named CIBC as a party, since Plaintiffs concede that they were originally members of the *Newby* action. Thus the proposed federal claims are time-barred. Without a federal claim, there would be no federal jurisdiction over the proposed state-law claims and thus allowing amendment to assert them would be futile. Moreover even if there were federal jurisdiction over these proposed state law claims against Ferguson, they are barred by the two-year constructive notice limitations in Ohio Rev. Code § 1707.43, which applies because the claims arise out of the sale of securities.

Nor do the claims relate back to the filing of the original complaint in this action because Ferguson was not named as a Defendant in that pleading and Plaintiffs have not claimed mistake as to his identity when they filed the initial complaint

Nor are Plaintiffs entitled to tolling under *American Pipe* because Ferguson was not named as a Defendant in *Newby* and because Plaintiffs filed their motion for leave to amend before a ruling on class certification in *Newby*. Moreover, the doctrine does not apply to the new proposed state-law claims because they

were not asserted and could not have been asserted in *Newby* because of SLUSA preemption.

Ferguson declares that amendment would be unduly prejudicial to him without opportunity to participate in fact discovery in this massive and complex litigation. He states that he retired from CIBC in 2003, settled the SEC's charges without admitting liability that same year, and thus had every reason to believe he would no longer be forced to defend Enron-related claims.

### 9. *Plaintiffs' Omnibus Reply (#79)*

Plaintiffs' omnibus reply does not respond to Schottlaender and Wolf.

The Court summarizes arguments not made previously in Plaintiffs' motion.

Plaintiffs insist that *American Pipe* tolling is to be applied broadly. *Crown*, 462 U.S. at 353-54 (tolling rule "is a generous one . . . preserv[ing] for class members a range of options pending a decision on class certification."). Moreover, applying it here would serve the policy of judicial efficiency underlying the doctrine.

They further argue that recent cases have held that tolling is applicable if the claims in the individual action are factually similar to those in the class action; they need not be identical. *See, e.g., In re Linerboard Antitrust Litig.*, 223 F.R.D. 335, 351 (E.D. Pa. 204). Plaintiffs maintain that the state-law claims to be asserted by Cincinnati and OTTA are

premised on nearly identical allegations as the § 10(b) claims in
*Newby*. Plaintiffs' state-law claims require the same evidence,
memories and witnesses as the claims in *Newby*. The facts and
legal theories of their federal law claims are also virtually
identical to those asserted in *Newby*.

In addition, insist Plaintiffs, SLUSA does not prevent
tolling of Cincinnati and OTTA's state-law claims because the
factual predicate underlying these claims is substantially the
same as that for the class action claims. *Newby* put the newly
proposed Defendants on notice of the substantially similar claims
that Plaintiffs now seek to assert against them.

Objecting to Bank of America's argument that tolling
does not apply to Plaintiffs' claims against BAS because BAS was
not a named defendant in the April 2002 *Newby* complaint,
Plaintiffs point out that this Court previously ruled that Bank
of America could not challenge the single-entity approach naming
BOA rather than BAS at the motion-to-dismiss stage. *In re Enron
Corp. Sec., Derivative & ERISA Litig.*, 235 F. Supp. 2d 549, 564
n.5 (S.D. Tex. 2002), or #1999 at 4 n.5 in *Newby*. Because the
Rule 12(b)(6) standard applies to the motion for leave to amend,
the issue cannot be resolved on this motion. *Stripling v. Jordan
Production Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000)(and cases
cited therein)("While this court has not specifically defined
'futility' in [the context of a motion to amend], we join our
sister circuits that have interpreted it to mean that the amended
complaint would fail to state a claim upon which relief could be

granted. . . . As these courts have done, to determine futility, we will apply the same standard of legal sufficiency as applies under Rule 12(b)(6). . . . 'The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief.' . . . The court may not dismiss a complaint under [R]ule 12(b)(6) 'unless it appear beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"). Defendants contend that Plaintiffs' claims are futile because either they are time-barred or they fail to state claims cognizable under applicable state law; Plaintiffs insist Defendants have not met their "substantial burden" of showing the futility of the proposed claims. *See, e.g., Holloway v. Triola*, No. 97-2216, 1997 WL 791472, *2 (E.D. La. Dec. 22, 1997)("Courts have held that there is a substantial burden on the objecting party to show the futility of a proposed amendment, a burden not met by defendants in this case.").

Moreover, Plaintiffs contend that having to reopen discovery does not constitute undue prejudice to Defendants. *Compression Labs, Inc. v. Oklahoma State Univ. Educ. & Research Found., Inc.*, No. 93-20622 RPA, 1995 WL 241438, *3 (N.D. Cal. Apr. 19, 1995)("The prospect of additional discovery, even if it involves deposing previously questioned witnesses across the country, does not constitute undue prejudice to the Defendant. Such additional work does not constitute grounds for denying leave to amend.").

Insisting that claims may be dismissed as time-barred only if Defendants conclusively demonstrate that on the face of the complaint alone the statute of limitations has expired, Plaintiffs argue that Defendants' varying and at times contradictory arguments that Plaintiffs had inquiry notice of their claims, but failed to act timely, are fact-intensive issues inappropriate for resolution on a motion for leave to amend. *Aetna Life Ins. Co. v. Kaufman Indep. School Dist.*, No. Civ. A. 3:99-CV-1085-G, 1999 WL 1134871, *2 (N.D. Tex. Dec. 8, 1999)("The question of futility . . . depends on disputed factual matters that cannot be resolved on this motion [to amend].").

Plaintiffs also point out that they filed their original complaint on September 4, 2002, after the effective date of the Sarbanes-Oxley Act (July 30, 2002), and therefore its extended two-year/five-year statute of limitations applies to Plaintiffs' federal securities act claims against Bank of America.

Bank of America also argued that claims relating to the Bammel and Rawhide transactions are time-barred.  Plaintiffs respond that the proposed amended complaint does not limit its allegations against Bank of America to these two transactions, but asserts that Bank of America engaged in fraudulent activity through 1999, 2000, and 2001.  Proposed Am. Complaint at ¶¶ 335, 353, 381, 392, 397-98, 468.

Challenging Goldman Sachs' argument that amendment would be futile because Plaintiffs fail to plead loss causation adequately, Plaintiffs assert that state-law claims do not require

the pleading or proof of loss causation.  As for the federal law claims, a corrective disclosure is not the only way to plead loss causation; the truth can "leak out" into the market and investors can lose money over time.  *Dura Pharmaceuticals, Inc. v. Broudo*, 124 S. Ct. 1627 (2005); *Stumpf v. Garvey*, MDL 02-1335, Civ. 03-CV-1352, 2005 WL 2127674, *12 (D.N.H. Sept. 2, 2005).  Their proposed complaint asserts that Plaintiffs purchased Enron securities at artificially high prices, inflated in part due to Goldman Sachs' role in the fraudulent scheme at Enron, and that the news of Enron's fraud leaked out slowly, causing a sharp decline in the price of Enron securities.  Proposed Amended Complaint at ¶¶ 147, 149, 154, 157-58, 471-73, 512.

Moreover, Plaintiffs' common-law claims for conspiracy to commit fraud do not require pleading any misstatements, but only the following elements:  "(1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy."  *Terry v. Carney*, No. OT-94-054, 1995 WL 763971, *1 (Ohio App. Dec. 29, 1995).  Plaintiffs further contend that the amended complaint addresses not just statements, but actions performed by Goldman Sachs as part of the fraudulent scheme.

Plaintiffs also disagree about the discovery rule and the statute of limitations in Ohio Rev. Code § 2305.09 for Ohio common-law negligent misrepresentation and cite *Clemente v. Gardner*, No. 02-CA-00120, 2004 WL 953700, *2-3 (Ohio App. Apr. 26, 2004) to argue that the statute, which establishes a four-year

statute of limitations for fraud or negligent misrepresentation, does not begin to run until the victim has discovered or should have discovered the fraud. *Id.* (relying on "[t]he Ohio Supreme Court interpreting R.C. 2305.09 . . . that the four-year limitation period does not commence to run on claims presented in fraud until after the victim of fraud has discovered, or should have discovered the fraud."[32]). *See also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros,* 70 F.3d 418, 422 (6th Cir. 1995)("Jaros also asserted state common law claims including: fraud, breach of fiduciary duty, and negligent misrepresentation. . . . Pursuant to Ohio Rev. Code § 2305.09, a four-year statute of limitations governs these Ohio common law claims.  The time period begins to run when there was a reasonable opportunity to discover the actions complained of.").  Plaintiffs argue that in the absence of a decision from the Ohio Supreme Court and conflict among the intermediate appellate courts of the state, *Jaros* should control.  *See, e.g., Chevron USA,Inc. v. Vermilion Parish School Board*, 377 F.3d 459, 462 (5th Cir. 2004)("although we may be guided by decisions rendered by the Louisiana appellate courts, we are not strictly bound by them, particularly when the jurisprudence has not developed to the status of *jurisprudence constante* (a series of decisions in accord on a given issue)"); *Dawn Equip. Co. v. Micro-Trak Sys., Inc.*, 186 F.3d 981, 989 n.3 (7th Cir. 1999)("we

---

[32] *Clemente at *3* cites *Investors REIT One v. Jacob*, 46 Ohio Std. 3d 176, 546 N.E.2d 206 (Ohio 1989), and *Venham v. Astrolite Alloys*, 73 Ohio App. 3d 90, 596 N.E. 2d 585 (Ohio Ct. App. 4 Dist. 1991).

normally defer to a sister circuit's interpretation of the law of a state within its jurisdiction"); *Kaiser Alum. & Chem Sales, Inc. v. PPG Indus., Inc.*, No. 91-367C, 1992 WL 695317, *3 (S.D. Ind. Dec. 4, 1992)("Federal courts generally defer to state law determinations made by the United States Court of Appeals for the circuit in which the particular state is located.").

In response to Outside Directors' contention that Plaintiffs cannot plead and establish the elements for negligent misrepresentation under Ohio law and to Goldman Sachs' objection that Plaintiffs have not alleged the requisite duty to disclose nor shown a special relationship for a negligent misrepresentation claim (required under New York law), Plaintiffs point out that (1) under Ohio law a duty is imposed in favor of third parties who a defendant in a business role knows will rely on the information in question, *DeCapua v. Lambacher*, 633 N.E. 2d 972, 974 (Ohio App. 1995)(Ohio imposes liability on professionals who "negligently suppl[y] information for the guidance of others in their business transaction, where the recipient of the information, a foreseeable person, justifiably relies upon it"); (2) where a party chooses to speak, he has a duty to use reasonable care to disclose all facts known to it that may induce reliance or forbearance on the part of another, *General Acquisition, Inc. v. Gencorp, Inc.*, 766 F. Supp. 1460, 1481 (S.D. Ohio 1979); and (3) Ohio courts have not restricted negligent misrepresentation claims to cases in which a fiduciary or other special relationship exists, but instead recognize such a claim in a wide variety of business contexts,

e.e., *Bowling Transp. Inc. v. Gregg*, 660 N.E.2d 497, 500 (Ohio App. 1995)(applies to conduct of auction in conducing an auction), and *Sindel v. Toledo Edison Co.*, 622 N.E. 2d 706, 710 (Ohio App. 1993)(applies to purchaser's claim against electric company). Plaintiffs have stated a claim under Ohio law because they have alleged that they relied on these Defendants' financial statements, press releases, analyst reports, etc.

## A.  Applicable Law

The Court had determined that the following law applies.

*1.  Amendment of Complaint*

Federal Rule of Civil Procedure 15(a) provides in relevant part,

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served.  Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

A court has discretion in deciding whether to grant leave to amend.  *Foman v. Davis*, 371 U.S. 178, 181 (1962). Since the language of the rule "'evinces a bias in favor of granting leave to amend," the court must find a "substantial reason" to deny such a request. *Ambulatory Infusion Therapy Specialists, Inc. v. Aetna Life Ins. Co.*, Civ. A. No. H-05-4389, 2006 WL 2521411, *3 (S.C. Tex. Aug. 29, 2006), *quoting Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004), and *Mayeaux v. La. Health Serv. & Indem. Co.*, 376

F.3d 420, 425 (5th Cir. 2004). Factors for the court to consider in determining whether a substantial reason to deny a motion for leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993).

While Rule 15(a) does not establish a time limit for filing a motion for leave to amend, "'at some point, time delay on the part of a plaintiff can be procedurally fatal.'" *Smith v. EMC Corp.*, 393 F.3d at 595, *quoting Whitaker v. City of Houston*, 963 F.2d 831, 836 (5th Cir. 1992), *in turn quoting Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981).   If there is substantial delay, the plaintiff bears the burden of demonstrating that it was due to oversight, inadvertence or excusable neglect, *Id., citing Gregory*, 634 F.2d 203.

Where the proposed new claims are time-barred, allowing amendment is futile.  *Williams v. Simmons*, 185 F. Supp. 2d 665, 674 (N.D. Tex. 2001); *Columbraria Ltd. v. Pimenta*, 110 F. Supp. 2d 542, 549 (S.D. Tex. 2000).

*2. Inquiry Notice and the Statute of Limitations in Federal Securities Acts*

Until the effective date, July 30, 2002, of the Sarbanes-Oxley Act ("Sarbanes-Oxley"), 28 U.S.C. § 1658(b), a claim grounded in the federal securities acts had to be filed "within one year after the discovery of the facts constituting the

violation and within three years after such violation." *Lampf*, 501 U.S. at 364.  Section 804 of Sarbanes-Oxley extended the length of limitations for "a private right of action that involves a claim of fraud, deceit, manipulation or contrivance in contravention of a regulatory requirement concerning the securities laws,"[33] such as claims under § 10(b) and Rule 10b-5, to the shorter of "(1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation." Pub. L. No. 107-204, 116 Stat. 745, 801 (2002).  Sarbanes-Oxley's statute of limitations/repose, however, applies only "to all proceedings addressed by this section that are commenced on or after the date of enactment of this Act," i.e., July 30, 2002. 28 U.S.C. § 1658(b).  For the Court's earlier orders on the statutes of limitations, *see* #1999 at 38-43, 45-59 in *Newby* and #146 in H-02-3401, *Washington State Investment Board, et al. v. Lay, et al.*  The Fifth Circuit has recently joined several other Circuit Courts of Appeals in concluding that the Sarbanes-Oxley limitations period does not apply retroactively to revive previously stale causes of action, already barred by the *Lampf* statute of limitations before its enactment.  *Margolies v. Deason*, 464 F.3d 547, 551-53 (5th Cir. 2006)(and cases cited therein).

Courts are divided over whether the Sarbanes-Oxley limitations period applies at all to claims under § 18(a). Section 18(c) of the Exchange Act contains an express limitations

---

[33] Thus the new Sarbanes-Oxley statute of limitations does not apply to non-fraud-based actions under § 11 and 12(a)(2) of the 1933 Act.

period of "within one year after the discovery of facts constituting the cause of action and within three years after such cause of action occurred." 15 U.S.C. § 78r(c). Most of the courts that have addressed the issue have reasoned that because the plain language of § 18 does not require Plaintiffs to plead and prove scienter, and thus, unlike § 804, covers negligence and strict liability claims, Sarbanes-Oxley's enlarged limitations does not apply to § 18 claims. *See, e.g. In re Hollinger International, Inc.*, No. 04C 0834, 2006 WL 1806382, *15 (N.D. Ill. June 28, 2006); *In re Alstom SA Securities Litig.*, 406 F. Supp. 2d 402, 419-20 (S.D.N.Y. 2005); *WM High Yield Fund v. O'Hanlon*, No. Civ. A. 04-3423, 2005 WL 1017811, *11 (E.D. Pa. Apr. 29, 2005)("the limitations period of the Sarbanes-Oxley act does not apply to . . . Section 18 claims" because "Section 18 does not require proof of fraud")(*citing In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 197 (S.D.N.Y. 2003)(holding that Sarbanes-Oxley extends limitations only for actions under the securities laws that require proof of fraudulent intent)).

In contrast, the court in *Shriners Hospitals for Children v. Qwest Communications Int'l, Inc.*, No. 04-CV-0781, 2005 WL 2350569, *3 (D. Colo. Sept. 23, 2005), quoted the United States Supreme Court in *Musick, Peeler & Garrett v. Employers Ins. of Wausau*, 508 U.S. 286, 296 (1993) that § 18 "targets 'the precise dangers that are the focus of § 10(b), and the intent motivating (both) sections is the same--to deter fraud and manipulative practices in the securities markets and to ensure full disclosure

of information material to investment decisions.'"  The *Shriners Hospital* court, noting that Sarbanes-Oxley expressly "applies to private rights of action involving claims of fraud, deceit, manipulation, or contrivance," found that § 18 "easily falls within these parameters." *Id.,* 2005 WL 2350569, *3.  In *In re Adelphia Communications Corp. Sec. & Deriv. Litig.*, No. 03 MD 1529, 2005 WL 1679540, *4 (S.D.N.Y. July 18, 2005)(because, unlike in claims grounded in negligence or strict liability, the defendant to a § 18 claim is provided with a defense that he acted in "good faith and had no knowledge that such statement was false or misleading," and because the Supreme Court in *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 211 n.31 (1976), has stated that "something more than negligence on the part of the defendant is required for recovery," the court held the extended limitations of Sarbanes-Oxley applies to § 18 claims filed timely after the Act's enactment.).   In *dicta*, another district court has conclusorily stated that Sarbanes-Oxley changed the statutes of limitations for claims under § 10(b) and § 18 for actions filed after July 30, 2002.  *In re Stone & Webster, Inc. Sec. Litig.*, Civ. A. No. 00-10874-RWZ, Sl. Op., 2006 WL 1738348, *3 n.1 (D. Mas. June 23, 2006).

Examining the rationale in this last group of cases, the *Alstom* court rejected their conclusions, arguing that this language of the Sarbanes-Oxley statute of limitations in § 804, "a private right of action that involves a claim of fraud, deceit, manipulation or  contrivance," "refer[s] only to causes of action

under the securities laws in which fraudulent intent is an element that plaintiffs are required to plead as a part of the underlying claim.  Section 18 does not require the pleading of scienter, or fraudulent intent."  406 F. Supp. 2d at 420.  Regarding the line quoted from *Ernst & Ernst*, "something more than negligence on the part of the defendant is required for recovery," the *Alstom* court opined that

> this remark refers to the quantum of proof required to succeed on a claim, not what must be pled by a plaintiff to state a claim.  The Section 18 defendant has an affirmative defense if he acted in good faith, *see* 15 U.S.C. § 78r(a), but it is not the plaintiff's burden to anticipate and plead in his complaint a rebuttal to the defendant's potential defense. . . . The pleading standards, and thus the elements of a claim under Section 18, do not require allegations of "something more than negligence."

*Id.* Moreover, the court found evidence in the limited legislative history supporting its conclusion that § 804 applies only to securities claims that require proof of fraud as an element of the cause of action, and therefore not to ¶ 18.  *Id.* at 415-16.

This Court is persuaded by the *Alstom* court's reasoning and by the cases that are in accord with its line of thinking and concludes that regardless of time filed, the extended statute of limitations in Sarbanes-Oxley does not apply to claims under § 18(a).

In federal securities claims, the statute of limitations begins to run when the plaintiff has actual knowledge of the facts giving rise to his claims or has notice of facts that in the

exercise of reasonable due diligence should have known of the alleged wrongdoing. *In re Dynegy, Inc. Sec. Litig.*, 339 F. Supp. 2d 804, 845 (S.D. Tex. 2004), *citing inter alia Jensen v. Snellings*, 841 F.2d 600, 607 (5th Cir. 1988). "Storm warnings" is a term used to denote circumstances which trigger a plaintiff's duty to inquire because they suggest to an investor of ordinary intelligence that he has been injured. *Id.* at 846; *see also Margolies v. Deason*, 464 FF.3d at 553-54 (""whether the plaintiff 'by exercise of reasonable diligence,' should have learned of facts placing him on notice of his claim . . . is commonly referred to as inquiry notice."), *citing Jensen v. Snellings*, 841 F.2d 600, 607 (5th Cir. 1988)(plaintiffs cannot ignore "storm warnings" that would alert a reasonable investor to the possibility of fraudulent statements or omissions in his securities transaction"). Although there is disagreement among courts as to exactly what constitutes a storm warning or inquiry notice, "'the facts relied upon to support inquiry notice must rise to a level of more than mere suspicion; they must instead be 'sufficiently confirmed or substantiated' to a point at which the victims are incited to investigate.'" *Id.*, *quoting Ritchey v. Horner*, 244 F.3d 635, 640-41 (8th Cir. 2001), *in turn quoting Fujisawa Pharmaceutical Co., Ltd. v. Kapoor*, 115 F.3d 1332, 1335 (7th Cir. 1997). In addition, the information involved must "'be such that it relates directly to the misrepresentations and omissions the [p]laintiffs later allege in their action against

the defendants." *Id., citing Newman v. Warnaco Group, Inc.*, 335 F.3d 187, 193 (2d Cir. 2003).

Because a determination of when a plaintiff is on inquiry notice depends upon the facts and because courts may weigh such matters differently, such a decision is often inappropriate under Rule 12(b)6) review. *Dynegy*, 339 F. Supp. 2d at 846, *citing Marks v. CDW Computer Centers, Inc.*, 122 F.3d 363, 367 (7th Cir. 1997); *see also Margolies v. Deason*, 464 F.3d at 553-54 ("The fact-intensive inquiry is typically appropriate for consideration by a jury.")(applying same analysis to Texas blue sky law claims as federal securities law claims), *citing Ruebeck v. Hunt,* 142 Tex. 167, 176 S.W. 2d 738, 740 (1944)("Unless the evidence is such that reasonable minds may not differ as to its effect, the question as to whether a party has exercised diligence in discovering fraud is for the jury.").

There are, nevertheless, circumstances where a plaintiff is on inquiry notice as a matter of law:

> Where . . . the facts needed for determination of when a reasonable investor of ordinary intelligence would have been aware of the existence of [wrongdoing] can be gleaned from the complaint and papers such as the prospectuses and disclosure forms that are integral to the complaint, resolution of the issue on a motion to dismiss is appropriate.

*Dynegy*, 339 F. Supp. 2d at 847, *quoting Dodds v. Cigna Securities, Inc.*, 12 F.3d 346, 352 n.3 (2d Cir. 1993), *cert. denied*, 511 U.S. 1019 (1994).  The *Dynegy* court pointed out that the Second Circuit has determined the issue of notice in a large number of cases on

a motion to dismiss.  *Id., citing In re WorldCom Inc. Sec. Litig.*, 294 F. Supp. 2d 431, 445 (S.D.N.Y. 2003).  It is however a heavy burden for the plaintiff:  "Inquiry notice exists only when uncontroverted evidence irrefutably demonstrates when plaintiff discovered or should have discovered the fraudulent conduct." *Id., quoting Nivram Corp. v. Harcourt Brace Jovanovich, Inc.*, 840 F. Supp. 243, 249 (S.D.N.Y. 1993).

*3.  Ohio State-Law Claims and Statute of Limitations*

Section 2305.09 does not list negligence as one of the causes of action to which the discovery rule is applicable.  The Ohio Supreme Court has held that because the legislature did not expressly provide an exception for claims of "mere concealment as distinguished from direct and specific allegations of fact showing fraud," the discovery role does not toll the statute of limitations for negligence causes of action.  *Investors REIT One v. Jacobs*, 46 Ohio Std. 3d 176, 182, 546 N.E. 2d 206, 211-12 (Ohio 1989), *citing Squire v. Guardian Trust Co.*, 70 Ohio App. 371, 384-85,35 O.O. 144, 150, 72 N.E. 2d 137, 146 (19747)).  The Supreme Court reasoned, "The General Assembly has not adopted a discovery rule applicable to general negligence claims under R.C. 2305.09." *Id.*  In *Grant Thornton v. Windsor House, Inc.*, 57 Ohio St. 3d 158, 566 N.E.2d 1220 (1991), the Supreme Court again considered and reaffirmed its holding in *Investors REIT* that the discovery rule does not delay the running of the statute of limitations in negligence actions, there specifically in an accountant negligence case, where it concluded that limitations begins to run when the

negligent act is committed.  *See also, e.g., Rihm v. Wade*, No. 17802, 1999 WL 1127403, *4 (Ohio App. 2 Dist. Dec. 10, 1999)("In *Investors REIT One*, the Ohio Supreme Court explicitly stated that the four-year statute of limitations in RC 2305.09(D) which governs accountant negligence claims begins to run when the alleged negligent act is committed."); *Jim Brown Chevrolet, Inc. v. S.R. Snodgrass, A.C.*, 141 Ohio App. 3d 583, 586, 752 N.E. 2d 335, 337 (Ohio App. 11 Dist. 2001), *appeal not allowed*, 92 Ohio St. 3d 1450, 751 N.E. 2d 4896 (Ohio 2001).  Thus this Court concludes that the discovery rule does not apply to claims for negligent misrepresentation under Ohio law.

4.  *American Pipe Tolling Doctrine*

In *American Pipe & Construction Co. V. Utah*, 414 U.S. 538 (1974)("the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action"), the Supreme Court held that the filing of a class action under Federal Rule of Civil Procedure 23 tolls statute of limitations, from the time the class action is filed to the time class certification is denied, as to all purported class members who waited to file suit, not just those who earlier filed motions to intervene.[34]  It explained,

> A contrary rule allowing participation only
> to those potential members of the class who
> had earlier filed motions to intervene in the

---

[34]  In *American Pipe*, the court tolled the statute of limitations specifically for persons who moved to intervene after class certification had been denied.

> suit would deprive Rule 23 class actions of
> the efficiency and economy of litigation
> which is the principal purpose of the
> procedure. Potential class members would be
> induced to file protective motions to
> intervene or to join in the event that a
> class was later found unsuitable.

*Id.* at 553.

The *American Pipe* tolling doctrine was extended by *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 350-52 (1983), beyond all members of the putative class and intervenors to include those timely seeking to bring individual actions after class certification is denied and to those who choose to opt out of the class, once certified, to file individual claims.[35] *In accord Salazar-Calderon v. Presidio Valley Farmers Ass'n*, 863 F.2d 384, 390 (5th Cir. 1989), *cert. denied*, 493 U.S. 821 (1989).[36]

The rationale was that "[o]therwise, class members would be led to file individual actions prior to denial of class certification, in order to preserve their rights. The result would be a needless multiplicity of actions–precisely the situation that Federal Rule of Civil Procedure 23 and the tolling

---

[35] If the class is certified, the plaintiffs are members; if class certification is denied, the putative class members may choose to file their own suits or to intervene as named plaintiffs in the pending action. *Crown*, 462 U.S. at 354 (the *American Pipe* doctrine applies to all potential class members, not just intervenors or named plaintiffs).

[36] The *Newby* class was certified on July 5, 2006. H-01-3624, #4836

rule of *American Pipe* were designed to avoid." *Crown*, 462 U.S. at 345.[37]

Courts addressing the issue are divided over whether plaintiffs who bring an independent action while a related class action is pending are entitled to the benefits of a class action, including tolling under the *American Pipe* doctrine. Among the majority of courts concluding that a plaintiff who files an independent action before a decision regarding class certification in the related class action forfeits tolling under *American Pipe* are the following: *Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 568, 569 (6th Cir. 2005)(concluding that "a plaintiff who chooses to file an independent action without waiting for a determination on the class certification issue may not rely on the *American Pipe* tolling doctrine"; "The purposes of *American Pipe* tolling are not furthered when plaintiffs file independent actions before the decision on the issue of class certification, but are when plaintiffs delay until the certification issue has been decided."); *Glater v. Eli Lilly & Co.*, 712 F.2d 735, 739 (1st Cir.

_____

[37] In *American Pipe*, the Supreme Court pointed out that a contrary rule would

> frustrate the principal function of a class suit because then the sole means by which members of the class could assure their participation in the judgment if notice of the class did not reach them until after the running of the limitation period would be to file earlier individual motions to join or intervene as parties-precisely the multiplicity of activity which Rule 23 was designed to avoid . . . .

414 U.S. at 551.

1983)("The policies behind Rule 23 and *American Pipe* would not be served, in fact would be disserved, by guaranteeing a separate suit at the same time that a class action is ongoing."); *In re Heritage Bond Litigation*, 289 F. Supp. 2d 1132, 1150 (C.D. Cal. 2003)(holding that the *American Pipe* tolling doctrine does not apply because plaintiffs "voluntarily filed their own action prior to a class certification decision" in the related class action, "clearly indicating a lack of intent to be a party" to that class action, and thus plaintiffs "should not be permitted to benefit from tolling while at the same time pursuing their own action."); *In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 431, 451 (S.D.N.Y. 2003)(Although Second Circuit has not addressed the question whether the *American Pipe* tolling doctrine applies to plaintiffs who file individual actions before district court determines class certification, a number of district courts in the Second Circuit as well as district courts in other Circuits have concluded they are not entitled to the benefits of the tolling rule because it "would create the very inefficiency that *American Pipe* sought to prevent.")(and cases cited therein),[38]

---

[38] Judge Cote in *WorldCom*, 294 F. Supp. 2d at 453, reasoned,

> Limiting the *American Pipe* tolling doctrine to plaintiffs who wait until after a decision on class certification to commence their actions is consistent with the purpose and holdings of both *American Pipe* and *Crown, Cork*. Those decisions were driven by concerns regarding the fate of class members in cases that were not allowed to proceed as class actions. The tolling rule provides that when the class certification decision is made, those who relied knowingly or not on the class action to

*reconsideration denied*, 308 F. Supp. 2d 214 (S.D.N.Y. 2004), and 2004 WL 473307 (S.D.N.Y. Mar. 12, 2004); *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 261 F. Supp. 2d 188, 221 (E.D.N.Y. 2003); *Rahr v. Grant Thornton, LLP*, 142 F. Supp. 2d 793, 799-800 (N.D. Tex. 2000)("The class action tolling doctrine, however, was never intended to apply to plaintiffs like Rahr who file separate suits *prior to* a decision being reached on the class certification issue" because such a rule would not serve "the judicial efficiency purposes of the doctrine"; "[T]he class action tolling doctrine is intended to avoid the injustice and judicial inefficiency of requiring putative class member to file individual suits or to lose their claims.  It is not intended to be a tool to manipulate limitations periods for parties who, intending all along to pursue individual claims, assert reliance on the proposed class action just long enough to validate their otherwise time barred claims."); *Stutz v. Minnesota Mining Manufacturing Co.*, 947 F. Supp. 399, 403-04 (S.D. Ind. 1996); *In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94-C 897, MDL 997, 1998 WL 474146, *8 (N.D. Ill. Aug. 6, 1998)("[I]t would be inequitable

---

pursue their claims will not be penalized for their forbearance.  The same logic does not warrant extending the tolling period to individual actions filed *before* a determination on class certification. Plaintiffs who choose, as is their right, to pursue separate litigation may not enjoy the benefits of that separate litigation without bearing its burdens.  One of the burdens plaintiffs bear is an obligation to commence their actions within the applicable statute of limitations.

to now allow the Individual Plaintiffs to reap the benefits of a doctrine which is designed for a group--the Class and its putative members--which they have disavowed being a part of from the beginning."). *But see Lehman v. United Parcel Service, Inc.*, 443 F. Supp. 2d 1146, 1151 (W.D. Mo. 2006)(Nothing in the language of *Crown* suggests the statute of limitations is only tolled for those plaintiffs who waited to file suit until there is a ruling on class certification."; "[T]here can be no surprise if an individual plaintiff files her own claim before certification is decided."  The defendant would be on notice and would have had every incentive to preserve evidence.  The defendant might now be required to defend itself in multiple cases in different fora but there is no guarantee against such contingencies even if the individual plaintiffs waited until after certification were decided."); *Schimmer v. State Farm Mutual Automobile Ins. Co.*, Civ. A. No. 05-cv-02523-MSK, 2006 WL 2361810, *6 (D. Colo. Aug. 15, 2006)(class action tolling doctrine is inapplicable because either it would penalize the plaintiff for knowing about the class litigation and electing to proceed separately or for not being aware of the class action and commencing suit to protect his rights; the Supreme Court in *American Pipe* stated that "a putative class member's knowledge or reliance upon the class action's existence does not impact whether class action tolling applies."). Because this Court agrees with the reasoning of the majority of courts addressing the issue,  it, too, concludes that the *American Pipe* tolling doctrine applies only to opt-out plaintiffs **after** the

district court makes the class certification determination, regardless of whether it denies or grants certification.

While the filing of a federal class action "suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continues as a class action," there is a difference of opinion as to whether a statute of repose can be tolled. *American Pipe*, 414 U.S. at 554. Regarding the three-year statute of repose for federal securities law, the Supreme Court held in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991), "Because the purpose of the 3-year limitation is clearly to serve as a cutoff . . . tolling principles do not apply to that period."

Nevertheless, the majority of the lower courts addressing the issue interpret this *Lampf* rule to refer to equitable tolling, which they distinguish from legal tolling.[39] *See, e.g., Joseph v. Wiles*, 223 F.3d 1155, 1166-67 (10th Cir.

---

[39] For example, the district court in *Official Committee of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 277 B.R. 20, 31-32 (S.D.N.Y. 2002), explained that *American Pipe* tolling is "legal rather than equitable in nature":

> Equitable tolling is appropriate where, for example, the claimant has filed a defective pleading during the statutory period, *Burnett v. New York Cent. R.R. Co.*, 380 U.S. 424, 434-36 . . . (1965), or where the plaintiff has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. *Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231 . . . (1959). By contrast the tolling of any putative class action member is the tolling that occurs any time an action is commenced and class certification is pending.

2000)[40]; *In re Discovery Zone Sec. Litig.*, 181 F.R.D. 582, 600 m.11 (N.D. Ill. 1998); *Ballard v. Tyco International, Ltd.*, No. MDL 02-MD-1335-PB, Civ. 04-CV-1336-PB, 2005 WL 1683598,7 (D.N.H. July 11, 2005); *Official Committee of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 277 B.R. 20, 31-32 (S.D.N.Y. 2002); *Salkind v. Wang*, Civ. A. No. 93-10912-WGY, 1995 WL 170122, *2, *3 (D. Mass. Mar. 30, 1995); *Mott v. R.G. Dickinson & co.*, No. 92-1450-PFK, 1993 SL 63445, *5 (D. Kan. Feb. 24, 1993). *But see Cacha v. Montaco, Inc.*, 554 S.E.2d 388, 392-93 (N.C. Ct. App. 2001)(following prior opinion of court holding that *American Pipe* does not apply to North Carolina's statute of repose, but not distinguishing between equitable and legal tolling). Legal tolling does not interfere with the purposes of statutes of limitation and repose (protecting defendants from unfair surprise and preventing plaintiffs from sleeping on their rights) because the filing of the class action satisfies these objectives. *Official Committee*, 277 B.R. at 32. This Court find the logic of *Joseph v. Wiles* and progeny recognizing the legal tolling of statutes of limitation and repose persuasive by the filing of a federal class action and adopts that distinction.

A common issue is what relationship between the claims in the class action and the claims in an individual law suit is

---

[40] The court in *Joseph v. Wiles* noted that "in a sense, application of the *American Pipe* tolling doctrine . . . does not involve 'tolling' at all" since the party seeking application of the doctrine should effectively have been a member of the class and a party to the class action suit against the named defendants all along." 223 F.3d at 1168.

necessary to trigger application of the *American Pipe* tolling doctrine.   In a concurring opinion in *Crown*, Justice Powell, joined by Justices O'Connor and Rehnquist, wrote, "[W]hen a plaintiff invokes *American Pipe* in support of a separate lawsuit, the district court should take care to ensure that the suit raises claims that 'concern the same evidence, memories, and witnesses as the subject matter of the original class suit,' so that 'the defendant will not be prejudiced.'"   *Crown*, 462 U.S. at 355 (Powell, J., concurring), *quoting American Pipe*, 414 U.S. at 562 (Blackmun, J., concurring).   He explained that there is no prejudice or surprise as to the defendants if the filing of the class action

> "notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who participate in the judgment.   Within the period set by the statute of limitations, the defendants have the essential information necessary to determine both the subject matter and the size of the prospective litigation."

*Id.* at 354-55, *quoting American Pipe*, 414 U.S. at 555.   Thus the tolling doctrine does not undermine the policies behind the statutes of limitations, i.e., putting defendants on timely notice of the claims against them and preventing plaintiffs from sleeping on their rights, because the filing of the class action with substantially similar claims has accomplished both.   *Id.* at 352-53.   Justice Powell admonished,

> [T]he tolling rule of *American Pipe* is a generous one, inviting abuse.   It preserves for class members a range of options pending

> a decision on class certification.  The rule
> should not be read, however, as leaving a
> plaintiff free to raise different or
> peripheral claims following denial of class
> status."

*Id.* at 355.

The majority of courts have followed Justice Powell's reasoning and concluded that subsequent individual claims, filed after denial of class certification or after granting class certification and opting out, need not be identical to the original class action's for tolling to apply as long as they share a common factual basis and legal nexus so that the defendant would rely on the same evidence and witnesses in his defense.  *See e.g., Tosti v. City of Los Angeles*, 754 F.2d 1484, 1489 (9th Cir. 1985)("We found no persuasive authority for the rule which would require that the individual suit must be identical in every respect to the class suit for the statute to be tolled."); *Cullen v. Margiotta*, 811 F.2d 698, 720-21 (2d Cir. 1987)(Even though state law action was based on different legal theory than that in the federal, RICO class action, court applied *American Pipe* tolling doctrine because the factual basis of the two suits was the same (alleged coercion of contributions from the plaintiffs and reprisals against those who refused to contribute), witnesses and evidence were the same, the defendant was sued in the original action, and thus defendant was on notice to preserve evidence), *cert. denied*, 483 U.S. 1021 (1987); *Cowles*, 476 Mich. at 21, 29, 719 N.E. 2d at 106, 109 ("crucial to whether the period of limitations is tolled under the class action tolling doctrine .

- 64 -

. . is notice to the defendant of both the claims being brought and the number and identities of potential plaintiffs"); *In re Linerboard*, 223 F.R.D. at 351 ("For tolling to apply, the claims do not have to be identical, but only substantially similar to those brought in the original class action."); *Sellers v. Bragg*, No. 04 C 3663, 2005 WL 1667406, *6 (N.D. Ill. July 13, 2005)(same); *Spann v. Community Bank of Northern Virginia*, No. 03 C 7022, 2004 WL 691785 (N.D. Ill. Mar. 30, 2004). Nevertheless, where the claims in the proposed class action did not relate to the same transactions or the same alleged misleading statements challenged in the subsequent suit, courts have refused to apply the doctrine. *In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 431, 450 n.25 (S.D.N.Y. 2004); *Salkind*, 1995 WL 170122, at *3. Thus this Court concludes that unless the state has decided otherwise, as discussed below, state-law claims based on the same operative facts as the federal securities claims in *Newby* that require a showing of the same or very similar elements, thus providing Defendants with notice and allowing them to rely on the same evidence and witnesses in their defenses, may also be tolled by the pendency of the federal court class action.

In *American Pipe* and in *Crown* the tolling doctrine was applied where federal court class actions were brought under federal statutes to toll federal statutes of limitations on individual federal claims (based on the same facts alleged in the class action) of individuals who were putative members of the class. Thus the doctrine is persuasive, but not binding, on

issues of state-law claims with state-law tolling provisions in individual federal or state court actions or on state-court class actions.   (In cases raising state-law claims in federal court, state statutes of limitations law governs. *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749 (1981); *Legal Aid Soc. v. City of New York*, 114 F. Supp. 2d 204 ("'a federal court acts essentially as a state court in addressing pendent state law claims'")(*citing Baker v. Coughlin*, 77 F.3d 12, 14 (2d Cir. 1996)).

Among the factors to be considered by a court in addressing the issue of tolling by the filing of a federal class action on individual state-law claims or a state class action are whether a class action rule modeled on the Federal Rule of Civil Procedure 21 has been adopted by the state, whether the state allows class action tolling in its jurisdiction, whether the state permits cross-jurisdictional tolling for individual cases, whether the state applies common-law tolling, and the state's policies. *See generally* Gerald D. Jowers, Jr., *The Class Stops the Clock*, 41-NOV Trial 18 (Nov. 2005).[41]   *See, e.g., Wade v. Danek Medical, Inc.,* 182 F. 3d 281, 287 (4ᵗʰ Cir. 1999)(concluding that because Virginia had not adopted class action tolling, did not have a

---

[41] *See, e.g., In re Linerboard Antitrust Litigation*, 223 F.R.D. 335, 345 (E.D. Pa. 2004)(antitrust action)(faced with issue of cross-jurisdictional class action tolling, court examined "(1) the federal interest in tolling the state statutes of limitations; (2) whether the highest court of the state has or would adopt cross-jurisdictional class action tolling for antitrust class actions filed in federal courts; (3) whether plaintiffs' state law claims are sufficiently similar to plaintiffs federal claims to toll the state statutes of limitations; and (4) the prejudice suffered by defendants if the Court tolls the statutes of limitations."

state class action rule analogous to Fed. R. Civ. P 23, and did not favor common law equitable tolling, Virginia would not apply cross-jurisdictional tolling and the plaintiff's claims were time-barred); *In re: Vitamins Antitrust Litigation*, 183 Fed. Appx. 1, 2 (D.C. Cir. 2006)(Affirming district court ruling denying *American Pipe* tolling of limitations in a price-fixing action where a related class action was pending because Florida law specifies exclusive list of conditions that can toll running of statute of limitations and makes clear that "*[n]o disability or other reason* shall toll the running of any statute of limitations").

In the instant action, there is a claim under Article 581-33 of the Texas Securities Act.  Section 581-33(H) provides a statute of limitations *inter alia* for claims under Article 581-33(A)(2), -33(C), -33(F) of no more than three years or after discovery of the untruth or omission or after discovery should have been made by the exercise of reasonable diligence, and a statute of repose of five years after the sale of the security.  The doctrine of *American Pipe* and progeny has been adopted by Texas courts.  In the wake of *American Pipe* and *Crown, Cork and Seal,* in Texas, in *Grant v. Austin Bridge Construction Co.*, 725 S.W.2d 366 (Tex. Ct. App.–Houston [14th Dist.] 1987, no writ), a Houston court of appeals decided that Texas Rule of Civil Procedure 42 was patterned on Federal Rule of Civil Procedure 23 and by analogy held that a state class action seeking property damages tolled limitations for all potential class members'

individual claims, pending a decision on class certification. *Id.* at 370 ("We hold that even though the statute of limitations on a class member's individual cause of action would expire during the pendency of a class action, the filing of the class action suspends the applicable statute of limitations for all purported members of the class.").

In *Bell v. Showa Denko K.K.*, 899 S.W.2d 749, 757-58 (Tex. App.–Amarillo 1995, writ denied), relying on *Grant* but refusing to extend it in the context of a mass personal injury suit filed in federal court in another state, a panel of the Amarillo court of appeals recognized an *American Pipe*-type tolling rule for state statutes of limitations for a state class action lawsuit addressing property damage claims. It opined, "The basic premise of the *American Pipe* ruling is that a statute of limitations can be tolled while class allegations are pending, provided the defendant has notice of the type and potential number of claims against it." *Id.* at 758.

Emphasizing that defendants must have received fair notice of the existence of a claim by the filing of the class suit, the *Bell* appellate court distinguished *Grant,* which involved "plaintiffs who were readily discernible group of people claiming injury to certain property rather than personal injury," from the case before it, a "mass personal injury suit, in federal court, in another state, with the variety of claims necessarily involved in such a case," which it found "would be an extension of *American Pipe* not warranted by the *Grant* decisions . . . ." *Id.* at 758.

Furthermore, the panel proclaimed, "We do not agree that *American Pipe* operates to toll our state statute of limitations. That case involved an interpretation of Rule 23 of the Federal Rules of Civil Procedure and concerned the question of whether a federal statute of limitations was tolled for the purpose of filing a federal claim. Under the doctrine of the hoary case of *Erie Railroad v. Tomkins*, 304 U.S. 64 . . . (1938) and its progeny, where a claim is derived from state law, as is appellant's suit, state law governs the tolling of the statute of limitations." 899 S.W.2d at 757.[42]

In *Vaught v. Showa Denko K.K.*, 107 F.3d 1137 (5th Cir. 1997), *cert. denied*, 522 U.S. 817 (1997), the Fifth Circuit affirmed the district court's summary judgment in a products liability action where the district court concluded that the plaintiff's state-court cause of action under Texas law for her individual personal injury against a pharmaceutical manufacturer accrued under the Texas discovery rule when the plaintiff read an article linking a nutritional supplement, which she had taken, to her own symptoms of eosinophilia myalgia syndrome (EMS).[43]  More

---

[42] In *Boone v. Citigroup, Inc.*, 416 F.3d 382, 393 (5th Cir. 2005), the Fifth Circuit did not impose the federal rule of *American Pipe*, but refused to apply class action tolling, noting that "Mississippi does not have class actions."

[43] The Texas Supreme Court later disagreed with this part of *Vaught*'s holding and found that where a plaintiff consulted several doctors about his symptoms but the doctors rejected his suspicions about the cause of his symptoms, a fact question, on which reasonable minds could differ, was for the jury relating to the discovery rule's application to the statute of limitations. *Childs v. Haussecker*, 974 S.W.3d 31, 45 n.11 (Tex. 1998).

relevant here, the panel also held that the fact that the
plaintiff was potentially a member of the putative classes in two,
nation-wide, federal, mass tort personal injury class actions did
not toll the operation of the Texas two-year statute of
limitations (Tex. Civ. Prac. & Rem. Code § 16.002(a)).
Highlighting that *American Pipe* "involved the tolling effect of
putative federal class actions on *federal* statutes of
limitations," the Fifth Circuit panel rejected the argument of a
plaintiff that a federal class action filed in New Mexico tolled
her limitations on her claims in her Texas state-law products
liability action and wrote,

> [T]he *Bell* court concluded first that the
> *American Pipe* line of cases did not directly
> control, because they involved the tolling
> effect of putative *federal* class actions on
> *federal* statutes of limitations. . . .
> Whether a *state* statute of limitations would
> be tolled by a *federal* class action, the
> court explained, was a question of state law.
> The *Bell* court construed *Grant* to apply only
> to the tolling effect of a *state* class action
> on *state* claims. . . . In addition, the *Bell*
> court concluded, the *American Pipe* tolling
> rule was meant to apply only where a class
> action gives a defendant notice of the "type
> and potential number of the claims against
> it--for example where "a discernible group of
> people claim[] injury to certain property."

107 F.3d at 1144. It summarized,

> In light of *Bell*, we understand Texas'
> tolling rule to operate as follows: A state
> (Texas) class action that raises property
> damage-type claims tolls a Texas statute of
> limitations pending a certification ruling.
> And, consistent with our understanding of
> this Texas tolling rule, it is unclear,
> whether under this rule a federal class
> action filed in Texas or in any other State

> would ever toll a Texas statute of
> limitations, regardless of the type of claims
> raised."

107 F.3d at 1147.  In a footnote, the panel observed, "Pre-*Bell*,

our court noted that Texas' tolling rule was the same as the

federal rule under *American Pipe* and *Crown* . . . . *See National*

*Ass'n of Gov't Employees v. City Pub. Serv. Bd. Of San Antonio,*

*Tex.*, 40 F.3d 698, 715 n. 25 (5th Cir. 1994)(citing *Grant*).  Post-

*Bell*, that observation retains little vitality."  *Id.* at 1147 n.2.

The panel concluded on policy considerations, "In any event the

Texas rule clearly conflicts with the well-established federal

practice on class action tolling. . . . [A] tolling rule is an

'integral part' of a statute of limitations. . . . Therefore

Texas' interest in its tolling rule has quite considerable depth.

This is because its rule is a means of enforcing its statute of

limitations, a matter of considerable importance to Texas, one

reflecting a deliberate policy choice by its legislature."  *Id.*

at 1147.[44]

---

[44] This Court is aware that a couple of federal district courts
in Texas have modified the Texas class action tolling rule and
varied from the Fifth's Circuit's interpretation of it, but this
Court is not persuaded that the Fifth Circuit would agree with
these decisions.  *See Prieto v. John Hancock Mutual Life Ins. Co.*,
132 F. Supp. 2d 506, 518-19 (N.D. Tex. 2001)(reading *Bell* as
stating that *American Pipe* held that a statute of limitations may
be tolled while class allegations are pending if the defendant has
notice of the type and potential number of claims against it, but
not if the federal class action was a mass personal injury suit
filed in another state; "The court . . . believes that . . . Texas
courts would interpret the class action tolling rule of *Grant* and
*Bell* as extending to all property damage claims (where, as here,
the type and potential number of claims can easily be determined or
estimated [and where the defendants were parties to the class
action]) regardless of the forum in which the class action was
filed"), *aff'd on other grounds*, 35 Fed. Appx. 390 (5th Cir. 2002);

Thus under the Fifth Circuit's holding in *Vaught*, this Court concludes that the filing of the complex federal *Newby* class action, grounded in federal securities law and involving a not easily discernible class of plaintiffs, does not toll the Texas state-law claims asserted Plaintiffs' proposed amended complaint on behalf of Cincinnati and OTTA.[45]

The other state-law claims are under Ohio law.   In contrast to Texas, Ohio has recognized cross-jurisdictional tolling by a federal class action of state statute of limitations

---

*In re Norplant Contraceptive Products Liability Litig.*, 173 F.R.D. 185, 189-90 (E.D. Tex. 1997)(relying on *Bell's* emphasis on the class complaint's providing defendants with notice of the type and potential number of claims against them, Chief Judge Schell concluded that a federal class action did toll state-law limitations because all plaintiffs' claims shared two elements (inadequate warnings and the alleged deficiency as the legal cause of Plaintiffs' injuries) and because the potential Norplant claimants "are readily quantifiable through Defendants' own sales data.").

[45] The Court concludes that this result is further enforced by the fact that in the absence of a circumstances relating to *American Pipe* tolling, the general rule is that "[q]uestions of substantive law are controlled by the laws of the state where the cause of action arose, but matters of remedy and procedure are generally governed by laws of the state where the action is sought to be maintained."   *Rush v. Barrios*, 56 S.W. 3d 88, 97 (Texas. App.-Houston [14th Dist.] 2001, pet. denied) *citing California v. Copus*, 158 Tex. 196, 309 S.W. 2d 227, 230 (Tex. 1958), *cert. denied,* 356 U.S. 967 (1058). Because limitations statutes are an expression of the public policy of the state which enacts them, they are generally viewed as procedural rather than substantive. 12 Tex. Jur. 3d Conflict of Laws § 44 (Thomson/West 2006).   A recognized exception is where a statute creates a right and incorporates a limitation on the time within which suit may be brought, as is the case in Article 581-33; then the limitations qualifies the right and becomes part of the substantive rule, rather than simply procedural, and must be complied with regardless of whether the forum state provides a longer statute of limitations. *Rush,* 56 S.W. 3d at 97, *citing Copus*, 309 S.W. 2d at 21.

for Ohio state-law claims. *Vaccariello v. Smith & Nephew Richards, Inc.*, 94 Ohio St. 3d 380, 381-82, 763 N.E. 2d 160, 162-63 (Ohio 2002)(finding that the similarity of Ohio's class action rule and Fed. R. of Civ. P. 23(a)-(e) "convinces us that a class action filed in federal court serves the same purpose as a class action filed in Ohio" and as long as "the defendant is put on notice of the substance and nature of the claims against it[,] . . . allowing the filing of a class action in the federal court system to toll the statute of limitations in Ohio does not defeat the purpose of the statute.").

*5. Relation Back of Amendments*

Fed. R. Civ. P. 15(c) allows the amendment of a complaint to add or change a party defendant after limitations has expired under certain conditions. Rule 15(c) provides in relevant part,

> An amendment of a pleading relates back to the date of the original pleading when
>
> (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
>
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
>
> (3) the amendment changes the party or the naming of the party against whom the claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and

> complaint,[46] the party to be brought in by
> amendment (A) has received such notice of the
> institution of the action that the party will
> not be prejudiced in maintaining a defense on
> the merits, and (B) knew or should have known
> that, but for a mistake concerning the
> identity of the proper party, the action
> would have been brought against the party.

The relation back doctrine "'does not extend the limitations period, but merely recognizes that the purposes of the statute are accomplished by the filing of the initial pleading.'" *Kansa Reinsurance Co. v. Cong. Mortgage Co.*, 20 F.3d 1362, 1367 (5th Cir. 1994), *quoting Am. Tel & Tel. Co. v. Delta Communications Corp.*, 114 F.R.D. 606, 612 (S.D. Miss. 1986).

Although the Rule references only the addition of defendants, but courts have applied it to the adding of plaintiffs. *In re Dynegy, Inc. Sec. Litig.*, 339 F. Supp. 2d 804, 839, 842 (5th Cir. 2004), *citing Young v. Lepone*, 305 F.3d 1, 14 (1st Cir. 2002)("Although the text of Rule 15(c)(3) seems to contemplate changes in the identity of *defendants*, we have recognized that the rule can be applied to amendments that change the identity of plaintiffs"), and Advisory Note (1966)(Rule 15(c)(3) "extends by analogy to amendments changing plaintiffs").

---

[46] The 1991 amendment changed the requirement that the defendant receive notice of the suit within the limitations period to receiving notice with the time for service of process under Rule 4(m), i.e., within 120 days from the filing of the complaint. "The only significant difference . . . is that, instead of requiring notice within the limitations period, relation back is allowed as long as the added party had notice within 120 days following the filing of the complaint, or longer if good cause is shown." *Skoczlas v. Fed. Bureau of Prisons*, 961 F.2d 543, 544 (5th Cir. 1992).

Relation back is not available "merely because a new plaintiff's claims arise from the same transaction or occurrence as the original plaintiff's claims." *Dynegy*, 339 F. Supp. 2d at 842, *citing In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 925 (9th Cir. 1996). Instead, the court must ensure that there is "substantial identity of interests" between the original plaintiff and the new plaintiff "to ensure that the defendant is not called upon to defend against new facts and interests." *Dynegy*, 339 F. Supp. 2d at 842.  The Ninth Circuit has concluded that an amendment adding a new party plaintiff relates back to the date of the original pleading  only if (1) adequate notice of the claims of the newly proposed plaintiff was given in the original complaint, (2) the relation back does not unfairly prejudice the defendant, and (3) the original and new plaintiffs have an identity of interests. *Id.*, *citing Syntex*, 95 F.3d at 935.

Where a plaintiff could have obtained the proper identities of intended defendants by greater diligence, failing to identify a party defendant until discovery untimely reveals it is not a "mistake" or "misidentification" for purposes of the relation back doctrine under Rule 15(c). *Jacobsen v. Osborne,* 133 F.3d 315, 320-21 (5th Cir. 1998)(where change in naming parties was not the result of mistake, i.e., misidentification or misnomer, but because the plaintiff did not originally know the identity of the defendant, the relation back doctrine does not apply).

6. *Analysts' Statements and § 10(b)/Rule 10b-5 Liability*

In *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1095-96 (1991), the Supreme Court held that just because a statement is characterized as an opinion does not automatically shield it from liability under the federal securities laws.  The Supreme Court concluded that a statement of opinion by a top corporate official may be actionable if made without a reasonable basis because it can be "materially significant to investors because investors know that these top officials have knowledge and expertise far exceeding that of the ordinary investor." *Id.* at 1990-91, 1099.  Although *Virginia Bankshares* dealt with a claim under § 14(a) of the Securities Exchange Act, other courts have applied its rationale to claims under § 10(b) for false or misleading statements. *See, e.g., Greenberg v. Crossroads Sys., Inc.*, 364 F.3d 657, 670 (5ᵗʰ Cir. 2004) ("A statement of belief is only open to objection where the evidence shows that the speaker did not in fact hold that belief and the statement made asserted something false or misleading about the subject matter.").  The view that a statement of opinion that is contrary to the speaker's actual belief is a false statement of fact that has been applied by courts to analysts' statements for § 10(b) liability. *See, e.g., In re Credit Suisse First Boston Corp.*, 431 F.3d 36, 47 (1ˢᵗ Cir. 2005)(concluding that analysts' "ratings--and the bullish or bearish statements that accompany them--may in some circumstances qualify as false or misleading statements of fact."); *DeMarco v. Lehman Bros., Inc.*, 309 F. Supp. 2d 631, 634 (S.D.N.Y. 2004); *In re Salomon Analyst Level 3 Litig.*, 350 F. Supp. 477, 489 (S.D.N.Y.

2004); *In re Tyco Ltd. Securities Litig.*, No. 03-CV-1352-PB, 02-MDL-1335-PB, 2005 WL 2127674, *15 (D.N.H. Sept. 2, 2005). All the cases make clear that the allegations must be pled with specificity under the PSLRA. *See, e.g., Podany v. Robertson Stephens, Inc.*, 318 F. Supp. 2d 146, 153-54 (S.D.N.Y. 2004); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 273 F. Supp. 2d 351, 370-71 (S.D.N.Y. 2003); *DeMarco v. Lehman Bros., Inc.*, 309 F. Supp. 2d at 634.

The Fifth Circuit has held that to hold a corporate defendant liable for its analysts' statements under § 10(b)/Rule 10b-5, a plaintiff must show that the analyst at issue had scienter (intent to deceive, manipulate, or defraud or severe recklessness). *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 364, 366 (5th Cir. 2004)("For purposes of determining whether a statement made by a corporation was made by it with the requisite Rule 10(b) [*sic*] scienter, we believe it appropriate to look to the state of mind of the individual corporate official or officials who make or issue the statement or order or approve it or its making or issuance, or who furnish information of language for inclusion therein, or the like) rather than generally to the collective knowledge of all the corporation's officers and employees acquired in the course of their employment.").

The Fifth Circuit makes clear that to hold an issuer liable for a third-party analyst's statements, the plaintiff must show that the statement was adopted by the defendant or

attributable to the defendant in some way or used the analyst as a conduit by make false and misleading statements to the analyst with the intent that the analyst publish it to the market.  *Id.* at 373.  The plaintiff must plead with particularity "who supplied the information to the analyst, how the analyst received the information, and how the defendant was entangled with or manipulated the information and the analyst."  *Id.*  "[A]nalysts' statements that reflect their own opinions or forecasts may not be charged to the defendants because the plaintiffs have not sufficiently alleged entanglement and the adoption of such statements by the defendants."  *Id.* at 374.

        With respect to loss causation and *Dura Pharmaceuticals*, under the holding in *Greenberg v. Crossroads Sys., Inc.*, 364 F.3d 657, 662-63 (5th Cir. 2004)(at summary judgment stage or trial, plaintiff has the burden of demonstrating that the stock's price was actually affected by the alleged misrepresentation or omission), the Fifth Circuit requires that a plaintiff show that a decline in stock price was more likely than not caused by the alleged misrepresentations to trigger the fraud-on-the-market presumption of reliance for a § 10(b) claim.  A key distinction here is that this action is only at the initial pleading stage.  Moreover, in *Dura Pharmaceuticals,* 124 S. Ct. 1627 the Supreme Court did not require an exclusive method nor heightened pleading

of loss causation, as this Court has indicated in numerous
orders.[47]

--------

[47]     The high court did not clearly indicate what must be pled
to establish loss causation other than requiring more than a simple
allegation of inflated stock price:   "We need not, and do not,
consider other proximate cause or loss related questions." *Id.* at
1633-34.     The Supreme Court did not affirmatively adopt Dura
Pharmaceuticals' argument that a plaintiff must allege and
ultimately prove that the defendant made a corrective disclosure of
the fraud that was followed by a related price drop, nor did it
specify what must be pled to establish that "the truth became
known"; instead, the Supreme Court stated vaguely that a complaint
must "provide defendants with notice of what the relevant economic
loss might be or what the cause connections might be between that
loss and the misrepresentation" (i.e., "some indication of the loss
and the causal connection that the plaintiff has in mind," a
subjective standard), the pleading of which "should not prove
burdensome" for a plaintiff. *Id.* at 1634.   Thus besides a formal
corrective disclosure by a defendant followed by a steep drop in
the price of stock, the market may learn of possible fraud a number
of sources:   e.g., from whistleblowers, analysts' questioning
financial results, resignations of CFOs or auditors, announcements
by the company of changes in accounting treatment going forward,
newpapers and journals, etc. *See* Alan Schulman and Nicki Mendoza,
*Dura Pharm., Inc. v. Broudo--The least of All Evils*, 1505 PLI/Corp.
272, 274 (Sept. 2005).   Plaintiff's economic loss may occur as
"relevant truth begins to leak out" or "after the truth makes its
way into the market place," and the plaintiff need only give "some
indication" of the causal link between that leaked truth and his
economic loss.   125 S. Ct. at 1631, 1632, 1634.   The pleading of a
single formal corrective measure is not necessary.   Moreover, the
plaintiff's loss need not be caused exclusively by the defendant's
fraud. *Id.* at 276, *citing Sosa v. Alvarez-Machain*, 124 S. Ct. 2739,
2750 (2004)("Proximate case is causation substantial enough and
close enough to the harm to be recognized by the law, but a given
proximate cause need not be, and frequently is not, the exclusive
proximate cause of harm."); *Caremark Inc. v. Coram Healthcare
Corp.*, 113 F.3d 645, 649 (7th Cir. 1997)(Loss causation "does not
require . . . that the plaintiff plead that all of its loss can be
attributed to the false statement of the defendant.").
         The Court, "assum[ing], at least for argument's sake,
that neither the Rules nor the securities statutes impose any
special further requirement in respect to the pleading of proximate
causation or economic loss," appeared to suggest that Federal Rule
of Civil Procedure 8(a)(2)'s standard ("a short plain statement of
the claim showing that the pleader is entitled to relief") applies
to the pleading of economic loss and proximate causation and that
plaintiff must merely give fair notice of his claim and the grounds
on which it is based, a "simple test." *Id.* at 1634 ("We concede

**III.  Court's Decision on Motion for Leave to Amend and to Join**

*A.  Scheduling Orders and Tolling Effect*

As a central, threshold matter, this Court's intention in issuing the July 11, 2003 order (#1561 in H-01-3624), as amended on July 11, 2006 (#4848 in H-01-3624), staying the filing of amended pleadings in the member cases until after the class certification determinations in *Newby* and *Tittle,* was also to toll the statutes of limitations on claims that could still be timely and properly asserted.  Otherwise, especially in light of what became a substantial period  in certifying both classes, parties would have been unfairly deprived of their rights.   Thus the Court concludes that the tolling for unexpired federal and  state-law claims arising out of the same nucleus of facts lasted from the beginning of the Court's stay on July 11, 2003 until two weeks after the *Newby* class certification order, by which time the opting-out plaintiffs were required to have filed motions for leave to amend if they chose to supersede their earlier pleadings. Because Plaintiffs have complied with that order, their motion for

---

that ordinary pleading rules are not meant to impose a great burden upon a plaintiff.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 508, 513-15 . . . (2002).  But it should not prove burdensome for a plaintiff who has suffered an economic loss to provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind.").   Thus, as noted *supra*, under *Dura Pharmaceuticals*, one acceptable, but not the only, way to plead proximate cause and economic loss (the difference between the price the purchaser paid and the subsequent price to which the stock dropped) in fraud on the market cases is to allege that the price a plaintiff paid for a security "fell significantly after the truth [of the material misrepresentation or omission] becomes known" and that the disclosure of the misrepresentation or omission had a significant effect on the market price.

leave to amend and proposed amended complaint are deemed filed as
constructively filed as of July 11, 2003.

B. *The Reach of the order #1561 at 4 in H-01-3624*

          Several Defendants have argued that the Court's July 15,
2003 order (#1561 at 4 in *Newby*) that "IN ALL AMENDED PLEADINGS,
COUNSEL SHALL NOT REITERATE ALLEGATIONS OR ARGUMENTS PREVIOUSLY
REJECTED BY THIS COURT IN RULINGS ON MOTIONS TO DISMISS THE
CONSOLIDATED COMPLAINTS," means that similar arguments could not
be raised in the other consolidated and coordinated MDL 1446
actions.  The Court would prefer to examine the pleadings in each
amended complaint in the opt-out actions in response to motions
to dismiss than to make an across-the-board ruling.  What one
plaintiff may not have adequately pleaded or timely filed under
the same or different law, another may have.  Defendants may
summarily incorporate into their responsive pleadings to amended
complaints any arguments they have made in response to the motion
for leave to amend, such as Goldman Sachs' chart of parallel
allegations.

C. *Ohio State Common Law Claims Generally*

1. *Aiding and Abetting Common-Law Fraud Under Ohio Law*

          Defendants are correct that in *Federated Management Co.
v. Coopers & Lybrand*, 738 N.E. 2d 842, 853 (Ohio 10 Dist. App.
2000), an appellate court concluded that "Ohio law does not
recognize a claim for aiding and abetting common-law fraud." *See
also Collins v. National City Bank*, No. 19883, 2003 WL 2291874,
*5 (Ohio Ct. App. Dec. 19, 2003)("one who engages in any way in

fraudulent behavior is liable for fraud itself, not as an aider and abetter to fraud."); *Childs v. Charske*, 129 Ohio Misc. 2d 50, 822 N.E. 2d 853, 860, 2004-Ohio-7331, (Ohio Com. Pl. 2004).

Nevertheless, in an opinion issued a few months later, the Sixth Circuit, in *Aetna Cas. & Sur. Co. v. Leahey Const. Co.*, 219 F.3d 519, 533 (6th Cir. 2000), observed that although the Ohio Supreme Court had never expressly adopted Restatement (Second) of Torts § 876(b),[48] but opined, "[W]e conclude that the Supreme Court of Ohio would recognize aiding and abetting liability if squarely faced with the issue . . . ." *Id.* at 533, *citing Andonian v. A.C. & S., Inc.*, 97 Ohio App. 3d 572, 647 N.E. 2d 190, 191 (1994). Specifically the Sixth Circuit examined the Ohio Supreme Court's one-time application of Section 876(b) of the Restatement (Second) of Torts (1979) in *Great Central Ins. Co. v. Tobias*, 37 Ohio St. 3d 127, 524 N.E. 2d 168 (1988), thereby "implicitly indicat[ing] that it considered civil aiding and abetting a viable cause of action," to determine whether liability should be imposed on one who purchases liquor in a tavern for another customer. The Sixth Circuit opined that the Ohio Supreme Court had found that the plaintiff did not and could not show the requisite elements of the cause of action, but suggested that aiding and abetting fraud might be actionable under Ohio law. *Id.* at 533, *citing Tobias*,

---

[48] Section 876(b) states, "From harm resulting to a third person from the tortious conduct of another, one is subject to liability if he . . . knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself . . . " *Aetna Casualty*, 219 F.3d at 532, quoting § 876(b).

524 N.E.2d at 172.   The elements of a claim under § 876(b) are "(1) knowledge that the primary party's conduct is a breach of duty and (2) substantial assistance or encouragement to the primary party in carrying out the tortious act."   *Id.*, 219 F.3d at 533, *quoting Andonian*, 647 N.E.2d at 191-92.   The Sixth Circuit, guided by decisions regarding aiding and abetting in securities cases under § 876 and under the criminal law, 18 U.S.C. § 2 (1969), quoted one of its earlier opinions that was cited by one of the parties,

> Without meaning to set forth an inflexible definition of aiding and abetting, we find that a person may be held as an aider and abettor only if some other party has committed a securities law violation, *if the accused party had general awareness that his party was a part of an overall activity that is improper*, and if the accused aider-abettor knowingly and substantially assisted the violation.

219 F.3d at 533 (emphasis added), *quoting SEC v. Coffey*, 493 F.2d 1304 (6th Cir, 1974).   The appellate court concluded that it saw "no conflict between the position that an aider and abettor must have actual knowledge of the primary party's wrongdoing and the statement that it is enough for the aider and abettor to have a general awareness of its role in the other's tortious conduct for liability to attach."   219  F.3d at 534.[49]   *In accord Javitch v. First Montauk Fin. Corp.*, 279 F. Supp. 2d 931, 946 (N.D. Ohio

---

[49]   The Sixth Circuit emphasized, "We stress that the requirement is *actual* knowledge (which, again may be proven by circumstantial evidence), and therefore evidence establishing negligence, i.e., that [the defendant] 'should have known,' will not suffice."   *Id.* at 536.

2003); *Harris v. Ambrozic*, Nos. 2003-CA-00204, 2003-CA-00230, 2004 WL 251840, *4 (Ohio App. Feb. 9, 2004); *Kimble Mixer Co. v. Hall*, No. 2003AD-01-0003, 2005 WL 435148, *4 (Ohio App. Feb. 22, 2005).

Subsequently, however, the Sixth Circuit appears to have stepped back from its earlier position and opined, "It is unclear whether Ohio recognizes a common law cause of action for aiding and abetting tortious conduct." *Pavlovich v. National City Bank*, 435 F.3d 560, 570 (6th Cir. 2006)(determining, "Even if the Supreme Court of Ohio would recognize this claim, [the plaintiff] would not prevail because she could not establish either actual knowledge that the primary party's conduct was a breach of duty nor general awareness of the primary party's wrongdoing).

Furthermore, in the wake of the cases discussed above, noting that the issue remains unresolved, a couple of federal district courts in Ohio have denied motions to dismiss because it "cannot be said conclusively that Ohio law does not recognize such a claim." *In re National Century Fin. Enterprises, Inc. Investment Litig,*, No. 2:03-mdl-1565, 2006 WL 2849784, *9 (S.D. Ohio Oct. 3, 2006)("Given the uncertainty in the case law, the Court declines to dismiss the aiding and abetting claims on a motion to dismiss.  It cannot be said conclusively that Ohio law does not recognize such a claim."); *Wuliger v. Liberty Bank, N.A.*, No. 3:02 CV 1378, 2004 WL 3377416, *11 (N.D. Ohio March 4, 2004)(Given allegations that the Defendant knew or should have known that the primary party was engaged in wrongdoing and assisted him, and accepting the factual allegations as true, the

court concluded, "[A]t this juncture of the proceedings, it cannot be demonstrated beyond a doubt that the plaintiff can prove no set of facts which would entitle it to relief" and denied the motion to dismiss).  Thus the Court permits the claim for aiding and abetting fraud to go forward at this time.

In Ohio cases that have allowed such a cause of action, depending on the stage of the litigation the courts have focused on whether the plaintiffs has pled and/or proved the elements of aiding and abetting fraud.  The Sixth Circuit in *Pavlovich,* reviewing a summary judgment in favor of a bank defendant, looked past the question of Ohio's recognition of aiding and abetting fraud to determine if the plaintiff had prevailed on a claim under § 876(b) by establishing the first prong of that cause of action, actual knowledge or general awareness of the primary party's wrongdoing.  435 F.3d at 570.  It determined that she had not and thus affirmed the summary judgment.  In *Wuliger,* addressing a motion to dismiss, the district court in essence found that the plaintiff had adequately pled that the defendant "knew or should have known that [the primary violator was engaged in wrongdoing and assisted him" in a claim for aiding and abetting common law fraud and denied the motion.  2004 WL 3377416 at *11.  In *In re National Century Financial Enterprises*, 2006 WL 2849784 at *9, also reviewing a motion to dismiss, the district court found that the plaintiff had stated a claim for aiding and abetting common law fraud against JPMorgan.

The proposed amended complaint at 236, ¶ 618, asserts,

> As previously set forth herein, each of the
> defendants aided and abetted the fraud by
> Enron and the other defendants, by knowingly
> and substantially assisting in the fraud,
> with knowledge or reckless disregard that
> their actions were part of an overall
> fraudulent scheme. The defendants'
> assistance included, among other things,
> preparation and/or review and approval of
> documents containing false and misleading
> statements, or omitting material information,
> for the purpose of manipulating Enron's
> reported financial results, or orchestrating,
> funding and entering or facilitating
> transactions with Enron and its affiliated
> partnerships and special purpose entities to
> disguise Enron's debt and enable the Company
> to inflate its operating results and
> earnings.

The phrase "actual knowledge or reckless disregard" appears to

relate to both the knowledge requirement of their state-law aiding

and abetting fraud claim and the scienter requirement for § 10(b)

claims. Each Defendant's activities are mentioned in the

complaint, although whether in the detail necessary for pleading

the required elements for a fraud-based common-law claim in Ohio

will be more appropriately determined on a motion to dismiss after

the parties have been given an opportunity to brief the matter.

Because of the tolling based on the Court's scheduling order, the

four-year statute of limitations would allow claims that accrued

at least as far back as July 11, 1999; moreover, since grounded

in fraud, under Ohio law the discovery rule would apply, which

might extend that period farther back and raise questions not

appropriately resolved on a motion for leave to amend, nor

adequately briefed by the parties at this point. At this stage

of the litigation the Court concludes that the claim for aiding and abetting common law fraud may go forward.

*2.  Negligent Misrepresentation*

The Court agrees with Defendants that in accordance with the express list in Ohio Rev. Code Ann. § 2305.09 and the Ohio Supreme Court's holding in *Investors REIT One*, 546 N.E. 2d at 211-12, as well as cited decisions in other cases, the discovery rule does not apply to Ohio's four-year statute of limitations for claims of negligent misrepresentation.[50]  Because this suit was tolled by the June 11, 2003 scheduling order, the motion for leave to amend and the proposed amended complaint are deemed filed as of that date.  Therefore Plaintiffs can assert such a cause of action based on misrepresentations made back to July 11, 1999.

---

[50]  Indeed, plaintiffs' authority for the application of the discovery rule to negligent misrepresentation claims is unpersuasive.  *Clemente,* an unpublished opinion, while citing *Investors REIT One,* conclusorily asserts a rule contrary to it, without any analysis. *v. Gardner*, No. 02-CA-00120, 2004 WL 953700, *2-3 (Ohio App. Apr. 26, 2004) to argue that the statute, which establishes a four-year statute of limitations for fraud or negligent misrepresentation, does not begin to run until the victim has discovered or should have discover the fraud. *Id.* (relying on "[t]he Ohio Supreme Court interpreting R.C. 2305.09 . . . that the four-year limitation period does not commence to run on claims presented in fraud until after the victim of fraud has discovered, or should have discovered the fraud.").  In Plaintiffs' other cited second authority, *Merrill Lynch Pierce Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, Jaros asserted common-law claims including fraud, breach of fiduciary duty, and negligence, the Sixth Circuit stated generally (and erroneously in this Court's view) that the statute of limitations under § 2305.09 "begins to run when there was a reasonable opportunity to discover the actions complained of," citing *Au Rustproofing Ctr. v. Gulf Oil Corp.*, 755 F.2d 1231, 1237 (6th Cir. 1995).  *Au Rustproofing*, however, addressed only a fraud claim, and § 2305.09 expressly provides that fraud claims do not accrue "until the fraud is discovered."

Nevertheless from the vague statements in the complaint this Court is unable to determine what statements by which Defendants have been timely asserted, a matter which may be addressed by a motion to dismiss.

Moreover, this Court concludes that if tolling under *American Pipe* did apply and if these claims for negligent misrepresentation arose out of the same nucleus of facts as the claims in *Newby*, negligent misrepresentation could not have been asserted in *Newby* not only because of SLUSA, but because negligence is not actionable under § 10(b). Therefore the *Newby* action did not give fair notice to Defendants of such claims, and the evidence for a negligence-based claim could, in significant part, be different from that for a fraud-based claim.

*3.   Conspiracy to Commit Fraud*

Under Ohio Rev. Code § 2305.09 the four-year statute of limitations and the discovery rule apply to claims of conspiracy to commit fraud. *Tri State Computer Exchange, Inc. v. Burt*, No. C-020345, 2003 WL 21414688, *5 (Ohio App. 1 Dist. June 20, 2003); *Thut v. Thurt*, No. 2000-G-2281, 2001 WL 369674, *3 (Ohio App. 11 Dist. Apr. 13, 2001), *appeal not allowed*, 93 Ohio St. 3d 1410, 754 N.E. 2d 259 (Ohio Sept. 5, 2001). Thus as with aiding and abetting fraud, with the proposed amended complaint constructively filed on July 11, 2003, Plaintiffs can assert such claims based on alleged violations back to July 11, 1999 and farther back if they can show that the discovery rule applies.

*D.   Limitations and the Proposed Amended Complaint*

Sarbanes-Oxley was enacted on July 20, 2002, and the original complaint in H-02-4788 was not actually filed until September 4, 2002, so it is a "new proceeding" in which the extended two-year/five-year statute of limitations under Sarbanes Oxley would govern the proposed unexpired § 10(b), § 20(a) and § 20A federal statutory claims if amendment is allowed, but not to the § 18(a) claims.  Given the original complaint's solely Ohio state-law claims, contrary to the urging of some Defendants, this Court does not construe what is now H-02-4788 as having been constructively filed at the commencement of the *Newby* action even though Plaintiffs were putative members of the proposed *Newby* class, because their state-law claims were not and could not have been asserted in *Newby* because of SLUSA.

As indicated above, Sarbanes-Oxley's extended statute of limitations does not apply to § 18 claims.  Thus deeming the motion for leave to amend and the proposed amended complaint as filed on the date of the scheduling order that tolled limitations in this action, July 11, 2003, given the applicable three-year statute of repose the ¶ 18 claims may be based on SEC filings possibly as far back as July 11, 2000.

This Court agrees with Defendants that Plaintiffs are not entitled to tolling under *American Pipe* because they not only filed their state-law independent action on September 4, 2002, after the filing of the *Newby* First Consolidated Complaint on April 8, 2002, but they moved for leave to amend to add federal securities law claims overlapping with those asserted in *Newby*

against some of the same Defendants before a decision on class certification in *Newby* was made.  Their actions constitute the inefficiency of multiple suits prior to class certification that the *American Pipe* tolling doctrine was developed to avoid. Plaintiffs in effect opted out prior to the decision on class certification and thereby forfeited their right to the benefits of *American Pipe* tolling.  *See, e.g., Wyser-Pratte*, 413 F.3d at 568-69; *In re WorldCom*, 294 F. Supp. 2d at 452.

Furthermore, even if Plaintiffs had not in essence opted out, *American Pipe* tolling based on the *Newby* class action cannot apply to claims against Defendants not named in *Newby*, including Goldman Sachs, Wolf, Schottlaender, and Ferguson, because these parties were not named as Defendants in *Newby* and were thus not on notice of the claims against them by Plaintiffs here.

Plaintiffs maintain that if the Court concludes that *American Pipe* does not apply, the claims are saved by the "relation back" doctrine under Fed. R. Civ. P. 15.  This Court disagrees.   Where a plaintiff could have obtained the proper identities of intended defendants by greater diligence, failing to identify a party defendant until discovery untimely reveals it is not a "mistake" or "misidentification" for purposes of the relation back doctrine under Rule 15(c).  *Jacobsen v. Osborne,* 133 F.3d 315, 320-21 (5th Cir. 1998)(where change in naming parties was not the result of mistake, i.e., misidentification or misnomer, but because the plaintiff did not originally know the identity of the defendant, the relation back doctrine does not apply).

*E.   Proposed Defendant-Specific Issues*

*1.   Outside Directors*

As indicated above, Ohio may recognize a cause of action for aiding and abetting fraud, with a four-year statute of limitations, to which the discovery rule would apply, and thus the Court allows this claim against the Outside Directors to proceed. Nevertheless Plaintiffs must meet the pleading requirements for such a claim against the Outside Directors, an issue likely to be raised by a motion to dismiss.[51]

Given the tolling by the Court's July 11, 2003 order, the motion for leave to amend and proposed complaint are deemed filed on that date and reach claims based on negligent misrepresentations made by Outside Defendants as far back as July 11, 1999.   The discovery rule does not apply.   The proposed complaint is too vague for this Court to determine what alleged misrepresentations were made and when by Outside Directors, or any other proposed Defendants, but such matters can be resolved on a motion to dismiss.

As for the ¶ 18 claims, again the complaint lacks the specificity for this Court to determine when any of the alleged misrepresentations by the Outside Directors were filed with the SEC, but because the one-year/three-year statute of limitations

---

[51] Rule of Civil Procedure 9(b) of the Ohio Revised Code Annotated mirrors Federal Rule of Civil Procedure 9(b):  "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.   Malice, intent, knowledge, and other conditions of the mind of a person may be averred generally."

and statute of repose apply, these claims against the Outside
Directors may be based on SEC filings possibly as far back as July
11, 2000.

2.  *Non-Party (proposed) Financial Institutions and Goldman Sachs*

Because this Court intended the July 11, 2003 scheduling
order to toll the statute of limitations on consolidated and
coordinated cases, the common-law claims for aiding and abetting
and negligent misrepresentation under Ohio law and claims under
the Securities Exchange Act and the Sarbanes-Oxley statute of
limitations are not on their face time-barred.  The Court will
entertain challenges in motions to dismiss based on inquiry notice
and limitations in response to the new complaint.

Goldman Sachs' argument that Plaintiffs' failure to
plead a "special relationship" dooms the negligent
misrepresentation claim may be true under New York law, but it is
not an element of such a claim under Ohio law, which requires a
showing of the following:  "One, who, in the course of his
business, profession or employment, or any other transaction in
which he has a pecuniary interest, supplies false information for
the guidance of others in their business transactions, is subject
to liability for pecuniary loss caused to them by their
justifiable reliance upon the information, if he fails to exercise
reasonable care or competence in obtaining or communicating the
information." *Manno v. St. Felicitas Elementary School*, 161 Ohio
App. 3d 715, 2001-Ohio-3132, 831 N.E. 2d 1071 (Ohio App. 8 Dist.
2005)(quoting 3 Restatement of the Law (Second) Torts § 552(1) at

126-27 (1965), *applied by the Supreme Court of Ohio in Gutter v. Dow Jones, Inc.*, 22 Ohio Std. 3d 286, 22 OBR 457, 490 N.E. 2d 898 (1986), and *Haddon View Invest. Co. v. Coopers & Lybrand*, 70 Ohio St. 2d 154, 24 O.O. 3d. 268, 436 N.E. 2d 212 (1982).  It appears to this Court that Plaintiffs' proposed claim against Goldman Sachs can easily meet these requirements.

The Court has indicated pleading requirements for imposing liability based on analysts' opinions/statements and will entertain motions to dismiss challenging the amended complaint's pleading sufficiency with regard to such claims.

3.  *BAC and BAS*

Because the initial complaint was filed on September 4, 2002, the statute of limitations on the federal claims under § 10(b) and § 20(a) arising out of the Bammel and Rawhide transactions, closing in December 1997 and December 1998, respectively, were already time-barred by the *Lampf* one year/three year limitations (December 2000 and December 2001) and cannot be revived by Sarbanes-Oxley's extended period of limitations. *Margolies v. Deason*, 464 F.3d at 551-53.  The same is true of claims arising out of the funding of LJM2 in December 1999.  As noted, this action is not saved by *American Pipe* tolling nor the claims against Bank of America by the relation back doctrine.

The federal claims arising out of the Marlin Notes Offering in July 2001 are governed by the Sarbanes-Oxley two year/five year limitations period and are tolled by the Court's July 11, 2003 scheduling order.  Thus it is not necessary to

determine whether the *Abbey National Treasury* lawsuits, filed on October 11, 2002, constituted inquiry notice to Plaintiffs about these claims.

Regarding the § 10(b) and § 20(a) claims arising out of Bank of America's analyst statements from 1997 until 2001, some of these will be time-barred by the *Lampf* three-year statute of repose.  Defendants argue that Plaintiffs were on notice of the remaining claims at the latest by January 16, 2002 when the original *Silvercreek* complaint with the similar claims against BAS was filed.  Those claims not time-barred by the *Lampf* and Sarbanes-Oxley's statutes of repose are tolled by the scheduling order.

The Court has previously rejected the contention that the events during the fall of 2001 (Enron's announcement of a non-recurring charge of over $1 billion, the initial *Newby* complaint, the restatement of previous years' financial reports, the SEC investigation, and the bankrupt) gave inquiry notice of the claims against the bank Defendants.  See footnote 19.

As for the Ohio common law negligent misrepresentation claim based on the Bammel and Rawhide transactions, the four-year statute of limitations bars allegations based on both.

The Ohio aiding and abetting common law fraud claim is subject to the discovery rule.  Defendants have argued that Plaintiffs had inquiry notice no later than March 28, 2003, when the proposed amended complaint in *Silvercreek* was filed.  They also argue that the First Amended Consolidated Complaint filed in

*Newby* on May 14, 2003, but deemed timely filed on January 14, 2003 based on a letter from Lead Plaintiff's counsel (see footnote 19) also gave inquiry notice. Either way, the aiding and abetting common law fraud claim would be tolled by the scheduling order. Moreover, it is irrelevant whether Ohio's two-year § 1707.43 or four-year § 2305.09 provides the appropriate statute of limitations as the aiding and abetting claim is not barred under either.

4.  *Schottlaender, Wolf, and Ferguson*

The discussions of the statutes of limitations above apply to the claims against Schottlaender, Wolf and Ferguson. The scheduling order has tolled all claims asserted against them that were still viable.

Ferguson can challenge personal jurisdiction over him by an appropriate motion to dismiss.

Accordingly, for the reasons indicated above, the Court ORDERS that the Ohio Retirement Systems, Cincinnati, and OTTA's motion to strike (#86) is DENIED. The Court further

ORDERS Plaintiffs' motion for leave to amend is GRANTED in part but denied as to the time-barred identified in this opinion and order. Because cases establishing pleading standards for Plaintiffs' various causes of action were issued long before they filed their motion for leave to amend and proposed amended complaint, and because this Court has issued numerous orders in *Newby* and the coordinated and consolidated cases addressing pleading requirements, the Court sees no reason to permit

Plaintiffs to amend again.  In Defendants' responsive pleadings, Defendants may challenge issues such as pleading adequacy and inquiry notice for triggering statutes of limitations to the extent that they comply with the rulings made in this opinion. Because OTTA and Cincinnati have an identity of interests with the Ohio Retirement Systems and bring the same state-law claims that they asserted in the original complaint against the original Defendants, allowing them to join as Plaintiffs does not unfairly prejudice the original Defendants, and any new claims against the original or newly added Defendants that are timely filed are permissible.  Therefore the Court

ORDERS that OTTA and  Cincinnati's motion to join (#54) is GRANTED.

Some Defendants have rather conclusorily argued that they are severely prejudiced by the close of discovery without the opportunity to depose key witnesses on the new claims.  Any party may file a motion to reopen discovery for specific goals, but that party must show good cause with particularity.

Finally, the Court

ORDERS that responsive pleadings to the amended complaint shall be filed within thirty days of entry of this opinion and order.  Plaintiffs' responses to any motions to dismiss filed by Defendants shall be filed within thirty days of Defendants' filings.  Defendants may file replies within thirty days of Plaintiffs' filings.  Should any of these deadlines fall

on a weekend, the pleadings shall be filed on the following Monday.

SIGNED at Houston, Texas, this 8th day of December, 2006.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE