IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In Re Enron Corporation Securities, Derivative & "ERISA" Litigation | § § § § | MDL-1446 |
| MARK NEWBY, ET AL., | § § | |
| Plaintiffs | § § | |
| VS. | § § | CIVIL ACTION NO. H-01-3624 CONSOLIDATED CASES |
| ENRON CORPORATION, ET AL., | § § | |
| Defendants | § | |
| PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF OHIO, et al., | § § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. H-02-4788 (COORDINATED) |
| ANDREW S. FASTOW, et al., | § § | |
| Defendants. | § | |

## OPINION AND ORDER

Pending before the Court in the above referenced cause, transferred to this Court from the Southern District of Ohio by the Judicial Panel on Multidistrict Litigation for coordinated or consolidated pretrial proceedings in MDL 1446, is the Outside Directors'[1] motion to dismiss with prejudice the Amended Complaint and conditional motion to reopen discovery (#186).

Counsel for the Outside Directors, Kathy Patrick, informed the Court by a letter dated April 23, 2007, that the

---

[1] Movant Outside Directors are Robert A. Belfer, Norman P. Blake, Jr., Ronnie C. Chan, John H. Duncan, Wendy L. Gramm, Robert K. Jaedicke, Joe H. Foy, Charles A. LeMaistre, John Mendelsohn, Jerome J. Meyer, Frank Savage, John A. Urquhart, Charles, E. Walker, and Herbert S. Winokur, Jr.

motion is fully briefed and ready for a decision.  The motion was also included in the Notice of Master List of Motions Not Affected By Fifth Circuit Ruling Regarding Section 10 Liability (#5656), which was submitted by Gibbs & Bruns after conference with all parties, to indicate that the Court could address it at this time.[2]

As a threshold matter, there is some uncertainty whether the amended complaint attached as an exhibit to Plaintiffs' September 11, 2005 motion for leave to amend (Ex. A to #56) or the Amended Complaint filed on August 17, 2006 (#97), after the Court certified a class in *Newby* and established a schedule for all other actions, is the governing pleading.  Because the claims in both complaints are the same against the Outside Director Defendants, and because the Outside Directors have referenced the key allegations in both complaints simultaneously, there is no prejudice to them either way.  Moreover, in view of efficiency and fairness, the Court concludes that the second, #97, shall be deemed the controlling complaint; thus it will summarize the relevant facts and cite the relevant paragraphs for resolving the motion to dismiss.

_____

[2] In the Notice of Master List of Motions Not Affected By Fifth Circuit Ruling Regarding Section 10 Liability (#5656), Ms. Patrick had indicated that the Outside Directors wished to file a surreply; her follow-up letter was to inform the Court that they had done so and that the motion was ripe for ruling.  The schedule subsequently agreed to by the parties and approved by the Court did not indicate otherwise for this motion, even though the Court generally deferred briefing on and resolution of motions addressing federal claims in the member cases.  Thus the Court reviews the instant motion to dismiss.

Plaintiffs Public Employees' Retirement System of Ohio ("PERS"), State Teachers' Retirement System of Ohio ("STRS"), School Employees Retirement System of Ohio ("SERS"), Ohio State Highway Patrol Retirement System ("OHPRS"), Ohio Tuition Trust Authority ("OTTA"), and Cincinnati Retirement System ("Cincinnati"), collectively the "Ohio Retirement Systems," have alleged three causes of action against the Outside Directors arising out of the collapse of Enron Corporation ("Enron"): (1) Count V for negligent misrepresentation; (2) Count VI for aiding and abetting common law fraud; and (3) Count IX for violations of Section 18 of the Securities Exchange Act of 1934, 15 U.S.C. § 78r.

## I.  Standards of Review

As stated in 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure Civ.3d* § 1204 at 104-05 (West 2004),

> The manner and details of pleading in the federal courts are governed by the Federal Rules of Civil Procedure regardless of the source of substantive law to be applied in the particular action. . . . It no longer can be doubted that the rules regarding the standard of specificity to be applied to federal pleadings, the pleadings allowed in the federal courts, the form of the pleadings, the special requirements for pleading certain matters, the allocation of the burden of pleading among the parties, and the signing of pleadings by an attorney of record or an unrepresented party, all are governed by the federal rules and not by the practice of the courts in the state in which the federal court happens to be sitting.

*See also In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 388 F. Supp.2d 780, 783-84 (S.D. Tex. 2005)(and cases cited therein).

## A.  Rule 9(b)

Federal Rule of Civil Procedure 9(b) provides,

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person must be averred generally.

"In every case based upon fraud, Rule 9(b) requires the plaintiff to allege as to each individual defendant 'the nature of the fraud, some details, a brief sketch of how the fraudulent scheme operated, when and where it occurred, and the participants." *Hernandez v. Ciba-Geigy Corp. USA*, 200 F.R.D. 285, 291 (S.D. Tex. 2001).  In a securities fraud suit, the plaintiff must plead with particularity the circumstances constituting the alleged fraud:  Rule 9(b) requires the plaintiff to "'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Southland Securities Corp. v. INspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004), *quoting Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177-78 (5th Cir. 1997), *cert. denied*, 522 U.S. 966 (1997).  "'In cases concerning fraudulent misrepresentation and omission of facts, Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading.'" *Carroll v. Fort James Corp.*, 470

F.3d 1171, 1174 (5th Cir. 2006), *quoting United States ex. rel. Riley v. St. Luke's Hosp.*, 355 F.3d 370, 381 (5th Cir. 2004).

Although Rule 9(b) allows a plaintiff to plead intent to deceive or defraud generally, a mere conclusory statement that the defendant had the required intent is insufficient; the plaintiff must set forth specific facts that raise an inference of fraudulent intent, for example, facts that show the defendant's motive. *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)("Although scienter may be averred generally, case law amply demonstrates that pleading scienter requires more than a simple allegation that a defendant had fraudulent intent.   To plead scienter adequately, a plaintiff must set forth specific facts that support an inference of fraud."); *Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994).   Intent to deceive or defraud usually must be proved by circumstantial evidence, but to establish a material fact, that evidence "'must transcend mere suspicion.'"   *IKON Office Solutions, Inc. v. Eifert*, 125 S.W.3d 113, 124 (Tex. App.--Houston [14th Dist.] 2003, pet. denied). Although a party's intent to defraud is determined at the time the party made the misrepresentation, "it may be inferred from the party's subsequent acts after the representation is made." *Id.*; *see also Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 431, 434 (Tex. 1986)*.*   The court should not view each piece of circumstantial evidence separately, but should weigh the evidence as a whole.   *IKON*, 125 S.W.3d at 124.   "Intent is a fact question uniquely within the realm of the trier of fact because it so

depends upon the credibility of the witnesses and the weight to be given to their testimony." *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d at 434.

"[Wh]en agency is an element of a fraud claim, agency must be pleaded with particularity required under Rule 9(b)." *Whitney National Bank v. Medical Plaza Surgical Center, L.L.P.*, No. H-06-1492, 2007 WL 400094, *3 (S.D. Tex. 2007), *citing Kolbeck v. LIT America, Inc.*, 923 F. Supp. 557, 570 (S.D.N.Y. 1996), *aff'd*, 152 F.3d 918 (2d Cir. 1998); *American Credit Union v. HCG Financial Servs., Inc.*, No. 89 C 9583, 1990 WL 77992, *4 (N.D. Ill. June 1, 1990); *Chou v. University of Chicago*, 254 F.3d 1347, 1362 (Fed. Cir. 2001); *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 916 (8th Cir. 2001); and *Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 783 (7th Cir. 1999).[3]

The particularity requirement of Rule 9(b) also governs a conspiracy to commit fraud. *Southwest Louisiana Healthcare System v. MBIA Ins. Corp.*, No. 05-1299, 2006 WL 1228903, *5 & n.47 (W.D. La. May 6, 2006); *Hernandez v. Ciba-Geigy Corp. USA*, No. Civ. A. B-00-82, 2000 WL 33187524, *4 (S.D. Tex. Oct. 17, 2000)("The weight of Fifth Circuit precedent holds that a civil conspiracy to commit a tort that sounds in fraud must be pleaded with particularity."); *In re Ford Motor Co. Vehicle Paint*

---

[3] In *Lachmund* the Seventh Circuit held that "when the plaintiff relies upon the same circumstances to establish both the alleged fraud and the agency relationship of a defendant, the reasons for more particularized pleading that animate Rule 9(b) apply with equal force to the issue of agency and to the underlying fraud claim."  191 F.3d at 783.

*Litigation*, No. MDL 1063, 1994 WL 426548, *34 (E.D. La. July 30, 1996); and *Castillo v. First City Bancorporation of Texas, Inc.*, 43 F.3d 953, 961 (5th Cir. 1994).

The Fifth Circuit, although construing Rule 9(b) strictly, has recognized an exception and permits the requirements to be "relaxed" where facts relating to the fraud are "peculiarly within the perpetrator's knowledge"; then the alleged fraud "may be pled on information and belief, provided the plaintiff sets forth the factual basis for his belief." *United States ex rel. Russell v. EPIC Healthcare Management Group*, 193 F.3d 304, 308 (5th Cir. 1999), *citing United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)(warning that the exception "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations."). The relaxed standard is not applicable where the information is available from another source or where the plaintiff fails to allege a factual basis for his beliefs. *Sealed Appellant I v. Sealed Appellee I*, 156 Fed. Appx. 630, 634 (5th Cir. 2005)(plaintiff must allege sufficient factual basis for his belief defendant committed fraud, e.g., particular documents containing false statements, identified by number, date or otherwise, or explain how he tried, but failed to obtain the information, whom he contacted, etc.).

In *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723, *modified on denial of rehearing on other grounds*, 355 F.3d 356 (5th Cir. 2003), the Fifth Circuit commented, "Although Rule 9(b) by its terms does not apply to negligent

misrepresentation claims, this court has applied the heightened pleading requirements when the parties have not urged a separate focus on the negligent misrepresentation claims. *Williams v. WMX Techs., Inc.,* 112 F.3d 175, 177 (5th Cir. 1977)."[4]  The panel continued, where a plaintiff's fraud and negligent misrepresentation claims in its complaint "are based on the same set of alleged facts," the heightened pleading requirements of Rule 9(b) should apply to the negligent misrepresentation allegations. *Id.*

Subsequently, in an unpublished opinion, the Fifth Circuit clarified its ruling in *Benchmark Electronics.*  Judge Dennis, writing for a unanimous panel, recognized that "Rule 9(b) is an exception to the liberal federal court pleading requirements embodied in Rule 8(a)" and that its "stringent pleading requirements should not be extended to causes of actions not enumerated therein"; thus where plaintiffs clearly set out and distinguish separate claims for fraud and for negligent misrepresentation, the "negligent misrepresentation claims are only subject to the liberal pleading requirements of Rule 8." *American Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.*, 115

---

[4] In *Williams v. WMX*, the Fifth Circuit stated that it was applying the particularized pleading standard of Rule 9(b) because plaintiffs did not try to distinguish their negligent misrepresentation claim from their fraud claim and relied on the same misrepresentations for both.  112 F.3d at 177, *citing Shushany v. Allwaste, Inc.*, 992 F.2d 517, 520 n.5 (5th Cir. 1993).  *See also American Realty*, 115 Fed. Appx. at 668-69 n.30 (distinguishing the situation in these two cases from that before it on the grounds that in its case "plaintiffs properly distinguished between their fraud and negligent misrepresentation  claims").

Fed. Appx. 662, 668 (5th Cir. 2004).[5]  *See also General Electric Capital Corp.*, 415 F.3d 391, 396-97 (5th Cir. 2005)("Other than in the situations expressly enumerated in rule 9(b), e.g., allegations of actual fraud, plaintiffs must satisfy only the minimal requirements of rule 8(a)."). *See also SMI-Owen Steel Co., Inc. v. St. Paul Fire & Marine Ins. Co.,* Nos. Civ.A.G 00 149, G 01 CV 627, 2006 WL 581266, *1 (S.D. Tex. Mar. 7, 2006)(Froeschner, Magistrate J.)("In the opinion of this Court there has been no intervening change in controlling law.")(discussing *Benchmark* and *American Realty*).

Subsequently Judge Godbey of the Northern District of Texas issued an opinion construing *Benchmark, Williams, Shushany*, and other key Fifth Circuit cases. *American Realty Trust, Inc. v. Travelers Cas. and Sur. Co. of America*, 362 F. Supp. 2d 744, 749-52 (N.D. Tex. 2005). Rejecting the argument that under Fifth Circuit law in *Benchmark*, Rule 9(b) automatically applies when the

---

[5] Outside Directors object to Plaintiffs' suggestion that *American Realty* overturned *Benchmark* because Fifth Circuit Rule 47.5 provides that an unpublished opinion is not precedent unless it satisfies limited circumstances set out in Rule 47.5.4, which does not apply here. They also contend that *American Realty* "misinterprets *Benchmark* as merely involving an appellant's failure 'to distinguish between its fraud claims and negligent misrepresentation claims on appeal' (i.e., a 'waiver' theory). . . . In reality, *Benchmark*'s holding focused on the plaintiff's failure to urge a separate focus between the fraud claims and negligent claims in its complaint—a fact made obvious by the court's conclusion that the two claims 'are based on the same set of alleged facts' . . . . [citations omitted]." They complain that Plaintiffs are citing *American Realty* to "evade a long line of Fifth Circuit authority extending Rule 9(b) pleading requirements to 'non-fraud' causes of action that are nevertheless grounded in fraud." #291 at 2.

claim for negligent misrepresentation is based on the same set of operative facts as fraud claims, Judge Godbey held that "Rule 9(b) operates to require dismissal of a negligent misrepresentation claim only when (1) a plaintiff waives arguments to the contrary[6] or (2) the inadequate fraud claim is so intertwined with the negligent misrepresentation claims that it is not possible to describe a simple redaction that removes the fraud claim while leaving behind a viable negligent misrepresentation claim." *Id.* at 749, 752. He pointed to *Melder v. Morris*, 27 F.3d 1097, 1100 n.6 (5th Cir. 1994), holding that Rule 9(b) applies to claims under the Securities Act of 1933 when they are "'grounded in fraud rather than negligence'" and "sometimes operates to require dismissal of a claim for which fraud is not an element, but that a plaintiff has chosen to base upon averments of fraud." *Id.* at 750. Judge Godbey also cites *Lone Star Ladies Investment Club v.*

---

[6] Judge Godbey concluded that *Benchmark Electronics, Williams,* and *Shashany* "rest on a theory of waiver." 362 F. Supp. 2d at 749. Although the fraud and negligent misrepresentation claims in *Shushany* rested on the same allegations, the *Shushany* court concluded that the argument was waived under Fed. R. App. Proc. 28(a): "'because Shushany does not contest in his appellate brief the district court's dismissal of his negligent misrepresentation claim, we do not address it.'"). *Id.* at 750, *citing Shushany*, 992 F.2d at 521 n.5. The *Williams* court sustained the district court's Rule 9(b) dismissal of a negligent misrepresentation claim because not only did it rely on the same misrepresentations as the federal fraud claims, but also because "'the parties ha[d] not urged a separate focus.'" *Id.*, *citing Williams*, 112 F.3d at 177. The court in *Benchmark Electronics* relied on *Williams*. In the unpublished *American Realty Trust v. Hamilton Lane Advisors*, 115 Fed. Appx. at *4 n.30, the panel found the complaint was adequately specific for Rule 9(b). *Id.* In sum, Judge Godbey concluded that under the Fifth Circuit cases that "negligent misrepresentation claims do not become subject to Rule 9(b) simply because they are based on the same operative facts as fraud claims." Id.

*Schlotzky's Inc.*, 238 F.3d 362 (5th Cir. 2001), which reversed a district court's dismissal of claims under both the Securities Exchange Act of 1934 and the Securities Act of 1933 because they were based on the same facts and inadequately pled under Rule 9(b).  The Fifth Circuit determined that the complaint adequately stated a claim under the Securities Act of 1933 after the allegations of fraud were disregarded.  362 F. Supp. 2d at 750-51, *citing Lone Star*, 238 F.3d at 368.  According to Judge Godbey, *Lone Star* clarified that Rule 9(b) by its express terms

> applies not to claims per se, but to "averments" of fraud.  If such an averment is inadequate, then the court disregards it when determining whether a claim is stated.  *Id.* In other words, the inadequate averment is "stripped from the claim."  When fraud is an element of the claim, inadequate averments necessarily result in dismissal.  When fraud is not an element, as in the case of negligent misrepresentation, the inquiry is more complicated.  One must first disregard inadequate averments of fraud.  At that point, Rule 9(b) is no longer relevant.  The remaining question is whether a negligent misrepresentation claim is stated under the standard notice pleading principals applicable to such claims.[7]

---

[7] The *Lone Star* panel summarized,

> When averments of fraud are made in a claim in which fraud is not an element, an inadequate averment of fraud does not mean that no claim has been stated.  The proper route is to disregard averments of fraud not meeting Rule 9(b)'s standard and then ask whether a claim has been stated.  There is a qualification.  The district court need not rewrite such a deficient complaint.  It may dismiss, without prejudice, placing the responsibility upon counsel.

*Id.* at 751.  *See also Nazareth International, Inc.*, No. Civ. A. 304CV1265M, 2005 WL 1704793, *3+ (N.D. Tex. July 19, 2005)"[T]he rule has emerged that Plaintiff's claim must be dismissed if 'the inadequate fraud averment is so intertwined with the negligent misrepresentation claim that it is not possible to describe a simple redaction that removes the inadequate fraud averment while leaving behind a viable negligent misrepresentation claim.'", *quoting Kougl v. Xspedius Management Co. of Dallas/Fort Worth. LLC*, No. Civ. A. 3:04:2518-D, 2005 WL 1421446, **5-6 (N.D. Tex. June 1, 2005); *Afshar v. Norwood*, No. 3:05-CV-1625-G, ECF, 2005 U.S. Dist. LEXIS 33113, **9-13 (N.D. Tex. Dec. 14, 2005).

A dismissal for failure to plead with particularity in accordance with Rule 9(b) is treated as a Rule 12(b)(6) dismissal for failure to state a claim.  *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996).  If it appears that given an opportunity to amend the pleading, the plaintiff would be able to state a claim upon which relief could be granted, the court should grant leave to amend.  *People's Choice Home Loan, Inc. v. Mora*, No. 3:06-CV-1709-G, 2007 WL 708872, *4 (N.D. Tex. Mar. 7, 2007), *citing Kennard v. Indianapolis Life Ins. Co.*, 420 F. Supp.2d 601, 608-09 (N.D. Tex. 2006).

**B.  Rule 12(b)(6)**

Dismissal under Rule 12(b)(6) is disfavored and a motion to dismiss under the rule is rarely granted.  *Lowrey v. Texas A&M*

---

*American Realty*, 362 F. Supp. 2d at 751, *quoting Lone Star*, 238 F.3d at 368.

*University System*, 117 F.3d 242, 247 (5th Cir. 1997).  The court must construe the complaint liberally in favor of the plaintiff and all well pleaded facts must be taken as true and any doubts regarding the sufficiency of the claim must be resolved in favor of the plaintiff.  *Id.; Jones v. Alcoa, Inc.*, 339 F.3d 359, 362 (5th Cir. 2003).    Nevertheless  conclusory  allegations  and unwarranted factual deductions will not suffice to avoid a motion to dismiss.  *United States ex rel. Willard v. Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 379 (5th Cir. 2003).

Under Fed. R. Civ. P. 10(c), "a copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."  Thus documents attached to a complaint are viewed as part of the plaintiff's pleadings.  *General Electric Capital Corp. v. Posey*, 415 F.3d 391, 398 n.8 (5th Cir. 2005), *citing inter alia* 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure:  Civil 2d* § 1327, at 766 (1990)("[A] plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment.").  Furthermore any documents attached by a defendant to its motion to dismiss that are referred to in the plaintiff's complaint are considered part of the pleadings.  *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

Traditionally,  dismissal  was  not  proper  "unless  it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Lowrey,* 117 F.3d at 247, *citing Conley v. Gibson*, 355 U.S. 41, 45-

46 (1957).  In a recent antitrust case, however, the Supreme Court appears to have modified the *Conley* rule by inserting a new "plausibility standard," *Bell Atlantic Corporation v. Twombley*, 127 S. Ct. 1955 (2007)(7-2), even though the Supreme Court claimed it had not (*id.* at 1973 n.14).  In *Bell Atlantic*, the Supreme Court pronounced that the *Conley* "'no set of facts' language" test "has earned its retirement" and "is best forgotten." *Bell Atlantic*, 127 S. Ct. at 1969, opined that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions and a formulaic recitation of the elements of a cause of action will not do . . . ." 127 S. Ct. at 1964-65.[8]  "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* at 1965, *citing* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, at 235-36 (3d ed. 2004).  The Federal Rules "have not dispensed with the pleading of facts altogether," but "for most types of cases . . . [have] eliminated the cumbersome requirement that a claimant 'set out *in detail* the facts upon which he bases his claim.'"  *Id.* at 1265 n.3, *citing Conley*, 355 U.S. at 47.  Nevertheless "some factual allegation" is necessary to "satisfy the requirement of providing not only 'fair notice'

---

[8] The majority in *Bell Atlantic* opined that the rule in *Conley v. Gibson,* 355 U.S. at 45-46 ("a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief") had been widely misunderstood and "is best forgotten as an incomplete negative gloss on an accepted pleading standard . . . ."

of the nature of the claim, but also 'grounds' on which the claim rests." *Id.*, *citing* 5 Wright & Miller § 1202 at 94, 95 ("Rule 8(a) 'contemplate[s] the statement of circumstances, occurrences, and events in support of the claim presented' and does not authorize a pleader's 'bare averment that he wants relief and is entitled to it"). In reviewing *Conley*, the Supreme Court concluded,

> [O]nce a claim has been stated adequately, it
> may be supported by any set of facts
> consistent with the allegations in the
> complaint. *Conley*, then, described the
> breadth of opportunity to prove what an
> adequate complaint claims, not the minimum
> standard of adequate pleading to govern a
> complaint's survival.

127 S. Ct. at 1969.

## II.  Applicable Substantive Law

**Negligent Misrepresentation**

Under Ohio common law, the elements of a claim for negligent misrepresentation are as follows:  "'One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their *justifiable reliance* upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.'"  *Delman v. City of Cleveland Heights*, 41 Ohio St. 3d 1, 4, 534 N.E. 2d 835, 838 (Ohio 1989), *citing inter alia* 3 Restatement  of Law (Second), Torts § 552(1) at 126-27 (1965).  *See also In re National Century Financial*

*Enterprises, Inc.,* No. 2:03-MD-1565, 2007 WL 1362695, *30 (S.D. Ohio May 6, 2007)("Under Ohio law, a person is liable for negligent misrepresentation when: (1) he supplies false information (2) for the guidance of others in their business transactions, (3) causing pecuniary loss to plaintiff, (4) who justifiably relies upon the information, (5) if he fails to exercise reasonable care or competence in obtaining or communicating the information."); *Hamilton v. SYSCO Food Services of Cleveland, Inc.*, 170 Ohio App. 3d 203, 208, 866 N.E.2d 559, 562-63 (Ohio App. 8 Dist. 2006)("[T]he elements for negligent misrepresentation require (1) a defendant who is in the business of supplying information, and (2) a plaintiff who sought guidance with respect to his business transactions from the defendant.").

Thus an actor that fails to exercise reasonable care or competence in supplying the correct information may be liable for negligent misrepresentation under Ohio tort law. *Ohio Bureau of Workers' Compensation v. MDL Active Duration Fund, Ltd.*, 476 F. Supp.2d 809, 820 (S.D. Ohio 2007), *citing Moffitt v. Auberle*, 167 Ohio App.3d 120, 854 N.E.2d 222 (2006). Thus "[a] misrepresentation made with an honest belief in its truth may still be negligent because of a lack of reasonable care in ascertaining the facts, or in the manner or expression, or absence of skill and competence required by a particular business or profession." *Id., citing Martin v. Ohio State Univ. Foundation*, 139 Ohio App.3d 89, 103-04, 743 N.E.2d 1198 (2000).

A claim for negligent misrepresentation under Ohio law cannot be based on omissions or on a failure to do something; it must be based on affirmative statements or acts. *Isaac v. Albanza Corp.*, No. 05 JE 55, 2007 WL 901596, *7 (Ohio App. 7 Dist. 2007), *citing Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 149, 684 N.E. 2d 1261.  Nor can such a claim be based on representations of future action or conduct unless plaintiff can show that at the time the representation was made, the party had no intention of carrying it out. *Id.*

The statute of limitations for a negligent misrepresentation claim in Ohio is four years.  Ohio Revised Code ("R.C.") 2305.09 (general 4-year limitations period for tort actions not expressly covered by other provisions in the Code).  Because negligent misrepresentation is not listed as one of the causes of action to which the discovery rule applies under R.C. 2305.09, such a claim accrues when the misrepresentation is made.  *Orshoski v. Krieger*, No. OT-01-009, 2001 WL 1388037, *6 (Ohio App. 6 Dist., Nov. 9, 2001)("R.C. 2305.09 has not extended the 'discovery rule' to toll the statute of limitations in negligent misrepresentation cases."); *Chandler v. Schriml*, No. 99AP-1006, 2000 WL 675123 (Ohio App. 10 Dist. May 25, 2000)("R.C. 2305.09 has not extended the 'discovery rule' to toll the statute of limitations in negligent misrepresentation cases."); *Investors*

*REIT One v. Jacobs*, 46 Ohio St.3d 176, 179, 546 N.E.2d 206 (1989).[9]

**Aiding and Abetting Common Law Fraud**

In *In re Enron Sec., Derivative, and "ERISA" Litig.*, 465 F. Supp. 2d 687, 726-28 (S.D. Tex. 2006)(#161 in H-02-4788), in the face of conflicting lower court rulings in Ohio, this Court discussed the uncertainty as to whether the Ohio Supreme Court would recognize a cause of action for aiding and abetting fraud. The Court hereby incorporates that portion of its opinion here. The Court allowed the aiding and abetting common law fraud claim to go forward because "it cannot be said conclusively that Ohio law does not recognize such a claim." *Id.* at 728.[10]

---

[9] As reasoned by the court in *Bell v. Holden Survey, Inc.,* No. 729, 2000 WL 1506494 (Ohio App. 7 Dist. 2000-Ohio-2576 Sept. 29, 2000),

> The General Assembly's failure to include general negligence claims under the discovery rule set out in R.C. 2305.09 argues strongly that it was not the legislature's intent to apply the discovery rule to such claims. See *Kirsheman v. Paulin* (1951), 155 Ohio St.3d 137, 146, 44 O.O. 134, 139, 98 N.E.2d 26, 31 (explaining the statutory significance of the Latin phrase, *espressio unius est exclusio alterius*). The legislature's express inclusion of a discovery rule for certain torts arising under R.C. 2305.09, including fraud and conversion, implies the exclusion of other torts arising under the statute, including negligence.

*Id.* at *5.

[10] *See also In re National Century Financial Enterprises, Inc.*, No. 2:03-md-1565, 2007 WL 1362695, *29 (S.D. Ohio May 2, 2007)(Noting the case law is uncertain whether Ohio recognizes a cause of action for aiding and abetting tortious conduct, the court "declines, on a Rule 12(b)(6) motion, to dismiss the aiding and

This Court relied in part on the fact that the Sixth Circuit Court of Appeals has concluded that the Supreme Court of Ohio would recognize such a claim. In *Aetna Casualty and Surety Co. v. Leahey Construction Co., Inc.*, 219 F.3d 519, 532–33 (6th Cir. 2000), the Sixth Circuit observed that the modern civil cause of action for aiding and abetting is traceable to the Restatement (Second) of Torts § 876(b)(1979)("For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he . . . knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so as to conduct himself . . . ."). "[C]onclud[ing] that the Supreme Court of Ohio would recognize aiding and abetting liability if squarely faced with the issue," the Sixth Circuit identified as the two elements of such a cause of action "(1) knowledge that the primary party's conduct is a breach of duty and (2) substantial assistance or encouragement to the primary party in carrying out the tortious act." *Id.* at 533. Subsequently in *Pavlovich v. National City Bank*, 435 F.3d 560, 570 (6th Cir. 2006), the Sixth Circuit stated, "The first element requires a showing of 'actual knowledge,' or perhaps merely 'general awareness,' of the primary party's wrongdoing."[11] *Id.*,

_____

abetting claims because it cannot be said conclusively that Ohio law does not recognize such a cause of action.")(*citing Pavlovich*).

    [11] As the underlying cause of action for the aiding and abetting claim here, the elements of common law fraud in Ohio are (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at issue, (3) made falsely, with knowledge of its falsity, or with utter disregard and recklessness as to whether it is true or false

*citing Aetna Casualty*, 219 F.3d at 533-34 ("we find that a person may be held as an aider and abettor only if some other party has committed a securities law violation, *if the accused party had general awareness that his role was a part of an overall activity that is improper*, and if the accused aider-abettor knowingly and substantially assisted the violation.[emphasis in original]"). *See also In re National Century Financial Enterprises, Inc.*, No. 2:03-md-1565, 2007 WL 1362695, at *29.

The statute of limitations for fraud in Ohio is four years.  RC 2305.09(C).  The discovery rule applies.  R.C. 2305.09 ("If the action is for fraud, [the cause of action shall not accrue] until the fraud is discovered.").  "The 'discovery rule' generally provides that a cause of action accrues for purposes of the governing statute of limitations at the time when the plaintiff discovers or, in the exercise of reasonable care, should have discovered the complained of injury." *Investors REIT One v. Jacobs*, 46 Ohio St.3d 176, 179, 546 N.E.2d 206 (1989); *Shover v. Cordis Corp.*, 61 Ohio St.3d 213, 574 N.E.2d 457 (1991); *Bossey v. Al Castrucci, Inc.*, 105 Ohio App.3d 666, 669, 664 N.E.2d 1301, 1303 (Ct. App. 2 Dist. 1995).  "It is noteworthy that this standard does not require the victim of the alleged fraud to

---

that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) resulting injury proximately caused by the reliance.  *Cohen v. Lamko, Inc.*, 10 Ohio St.3d 167, 169, 462 N.E.2d 407 (Ohio 1984); *Burr v. Bd. of County Com'rs of Stark County*, 23 Ohio ST.3d 69, 73, 491 N.E. 2d 11-1, 1105 (Ohio 1986).  Outside Directors have not argued that Plaintiffs failed to state a claim for common law fraud against other Defendants.

possess concrete and detailed knowledge, down to the exact penny of damages, of the alleged fraud; rather, the standard requires only facts sufficient to alert a reasonable person of the possibility of fraud." *Palm Beach Co. v. Dun & Bradstreet, Inc.*, 106 Ohio App.3d 167, 665 N.E.2d 718 (Ohio App. 1 Dist. 1995); *Investors REIT One*, 46 Ohio Std.3d at 179, 546 N.E.2d at 209.

**Violation of Section 18 of the Securities Exchange Act of 1934**

Section 18, 15 U.S.C. § 78r, provides an explicit private right of action to investors for damages arising from the purchase or sale of a security in actual reliance upon a false or misleading statement contained in any document or report filed with the SEC in compliance with the Exchange Act:

> Any person who shall make or cause to be made any statement in any application, report, or document filed pursuant to this chapter or any rule or regulation thereunder or any undertaking contained in a registration statement as provided in subsection (d) of section 78o of this title,[12] which statement

---

[12] Section 18 applies only to documents filed pursuant to the Exchange Act; it does not apply to filings made solely under the 1933 Act or any of the other securities laws. *In re Alstom SA*, 406 F. Supp. 2d 433, 479 (S.D.N.Y. 2005), *citing Gross v. Diversified Mortg. Investors*, 438 F. Supp. 190, 196 (S.D.N.Y. 1977)(dismissing section 18 claims that relied on a prospectus filed as part of a registration statement pursuant to the Securities Act, not the Exchange Act; *Hagert v. Glickman, Lurie, Eiger & Co.*, 520 F. Supp. 1028, 1033 (D.C. Minn. 1981)(holding that a claim made under Section 18 must be based on reliance on documents filed pursuant to the Exchange Act and dismissing those claims where plaintiffs conceded that the documents relied upon were the registration statement, prospectus, and annual report filed pursuant to the 1933 Act); and *Forrestal Village, Inc. v. Graham*, No. 74-881, 1976 WL 758 (D.D.C. Jan. 30, 1976)(dismissing section 18 claim based on prospectus not filed pursuant to 1934 Act), *aff'd*, 551 F.2d 441, 179 U.S. App. D.C. 225 (D.C. Cir.1977). The district court further pointed out,

- 21 -

was at the time and in light of the
circumstances under which it was made false
or misleading with respect to any material
fact, shall be liable to any person (not
knowing that such statement was false or
misleading) who, in reliance upon such
statement, shall have purchased or sold a
security at a price which was affected by
such statement, for damages caused by such
reliance, unless the person sued shall prove
that he acted in good faith and had no
knowledge that such statement was false or
misleading. A person seeking to enforce such
liability may sue at law or in equity in any
court of competent jurisdiction, In any such
suit the court may, in its discretion,

---

SEC regulations expressly exempt certain
filings from the provisions of Section 18.
*See, e.g.,* 17 C.F.R. § 240.13a-16(c)(exempting Form
6-K furnished pursuant to Rule 13a-16; 17
C.F.R. § 240.15d-16(c) (exempting Form 6-K
furnished pursuant to Rule 15d-16); 17 C.F.R.
§§ 240.14a-3(c)-(d), 240.14c-3(b)(exempting
annual reports sent to shareholders unless
report is incorporated into proxy solicitation
materials or other filed reports by reference;
subjecting the annual report to Section 18
liability if it is prepared pursuant to Form
10-K and Form 10-KSB and submitted in
satisfaction of the proxy solicitation rules);
17 C.F.R. §§ 240.13a-13(d), 240.15d-
13(e)(exempting financial information on Form
10-Q and Form 10-QSB); 17 C.F.R. § 240.12g3-
2(b)(4)(exempting certain information filed by
foreign private investors); 17 C.F.R. §
240.17h-2T(c)(5)(exempting certain information
filed by brokers or dealers); *see also Heit v.
Weitzen*, 402 F.2d 909, 915-16 (2d Cir.
1968)(holding that an annual report submitted
to the SEC was not a filed document within the
meaning of Section 18 because 17 C.F.R. §
240.14a-3(c) exempted it from Section 18's
provisions, but that Form 10K submitted to the
SEC was a filed document within the meaning of
Section 18 because the exemption provision
applied only to copies of the annual report
that accompanied the 10K report but not the
10K report itself.

*Alstom*, 406 F. Supp. 2d at 479.

> require an undertaking for the payment of the
> costs of such suit, and assess reasonable
> costs, including reasonable attorneys' fees,
> against either party litigant.

Thus to state a claim under § 18, the plaintiff must plead that (1) a document filed pursuant to the Exchange Act, or any rule or regulation promulgated under it, contained a false or misleading statement; (2) the defendant made or caused to be made the false or misleading statement; (3) the plaintiff actually relied on the false statement; and (4) that reliance caused loss to the plaintiff. *In re Stone & Webster, Inc. Sec. Litig.*, 414 F.3d 187, 193 (1st Cir. 2005); *Deephaven Private Placement Trading, Ltd. v. Grant Thornton & Co.*, 454 F.3d 1168, 1171 (10th Cir. 2006). There is no requirement of scienter. The statute imposes liability not only on the issuer or other person filing the document with the SEC, but also on "any person who shall make or cause to be made" any misstatement or omission in "any application, report or document filed"; thus liability many be imposed on the issuer's officers and directors, in particular those who sign the filed documents. *See, e.g., Kramer v. Scientific Control Corp.*, 452 F. Supp. 812, 817 (E.D. Pa. 1978)(denying motion to dismiss § 18 claims against two persons who were directors on the effective date of misleading registration statement);[13] *F.N. Wolf & Co., Inc. v. Estate of James*

---

[13] It has been pointed out that the *Kramer* court incorrectly assumed that § 18 applied to a 1933 Act registration, when it only applies to documents required to be filed with the SEC under the Exchange Act. *See, e.g.,* Edward Brodsky and M Patricia Adamski, Chapter 13. Manipulation and False SEC Filings: Sections 9 and 18 of the Exchange Act," *Law of Corp. Offs. & Dirs.: Rts., Duties*

*W. Neal*, No. 89 Civ. 1223 (CSH), 1991 WL 34186. *8-9 (S.D.N.Y. Feb. 25, 1991)(An inside or outside director who signs a document filed with the SEC "'make[s] or causes to be made' the statements contained therein" and is subject to liability under § 18), *citing and quoting Kramer v. Scientific Control Corp.*, 452 F. Supp. 812, 817 (E.D. Pa. 1978)("By their own affidavits, Weatherford and Ellis admit they were directors of Scientific on October 31, 1968, the effective date of the registration statement.  This fact alone, if proved, would subject each to liability based upon § 18.").

In *Howard v. Everex Systems, Inc.*, 228 F.3d 1057, 1061 (9th Cir. 2000), the Ninth Circuit followed the lead of the SEC, which had filed an *amicus curiae* brief in the case, in concluding that a corporate official . . . who, acting with scienter, signs a SEC filing containing misrepresentations, 'make[s]' a statement so as to be liable as a primary violator under § 10(b)."  Section 18, unlike § 10(b), does not require a showing of scienter.  Furthermore, the rationale of *Howard* supports imposition of

---

*& Liabs.* § 13:4 ("Persons Liable") n.5 (2007).  Brodsky and Adamski observe,

> Presumably . . . the degree of participation of the particular defendant will determine whether he can be said to have made or caused the challenged statement to be made. Directors, simply by virtue of their position as such, should not automatically be deemed to have caused a corporate statement to be made. However, a majority of the board of directors must sign the company's annual report on Form 10-K, and such signing directors may be subject to increased exposure under section 18(a). [footnotes omitted]

liability under § 18 on directors who sign the corporation's Forms
10-K.  The panel, noting that *Central Bank* prohibited § 10(b)
causes of action against aiders and abettors, found that "by
placing responsibility in corporate officers to ensure the
validity of corporate filings, investors are further protected
from misleading information"; it thus opined,

> There is a significant difference, however,
> between mere participation in a scheme to
> misrepresent and those directly attesting to
> the truth of a statement by *making* (in the
> ordinary sense) that very statement.  By
> standing behind a statement, the public
> assumes that they can trust the word of the
> maker of that statement. . . . Key corporate
> officers should not be allowed to make
> important false financial statements
> knowingly or recklessly, yet still shield
> themselves from liability to investors simply
> by failing to be involved in the preparation
> of those statements.

*Id*. at 1061-62.  *See also In re Reliance Securities Litig.*, 135
F. Supp.2d 480, 503 (D. Del. 2001)(following *Howard* and holding
that two directors who "had adequate opportunity to review the
allegedly misleading documents" and who signed SEC-filed documents
for the corporation, "made statements under § 10(b)"); *In re Enron
Corp. Sec., Derivative & "ERISA" Litig.*, 258 F. Supp.2d 576, 587-
88 (S.D. Tex. 2003); *RK Co. v. Harvard Scientific Corp.*, No. 99
C 4261, 2007 WL 924737, *16 (N.D. Ill. Mar. 23, 2007)(citing *F.N.
Wolf*).

While some courts have not decided whether Rule 9(b)
applies to § 18 claims,[14] most Circuit Courts of Appeals have

---

[14] *See, e.g., In re Suprema Specialities, Inc. Sec. Litig.*, 438
F.3d 256, 283 n.13 (3d Cir. 2006).

concluded that the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. section 78u-4(b)(1),[15] does apply to such claims. See, e.g., *Deephaven Private Placement Trading Ltd.*, 454 F.3d 1168, 1172 (10th Cir. 2000); *Stone & Webster*, 414 F.3d at 194; *Teachers' Retirement System of LA v. Hunter*, 477 F.3d 162, 188 (4th Cir. 2007).

The Fifth Circuit not only applies the PSLRA, but has held that "the PSLRA's pleading requirements incorporate Rule 9(b)'s fraud-pleading standard." *Financial Acquisition Partners, L.P. v. Blackwell*, 440 F.3d 278, 287 (5th Cir. 2006), *citing ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 348, 350 (5th Cir. 2002). *In accord Stone & Webster*, 414 F.3d at 195 ("The PSLRA's clarity-and-basis requirement [that a complaint must allege facts that show exactly why the statements or omissions were misleading] is closely related to the requirement of Federal Rule of Civil Procedure 9(b) that in all 'averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.'  We have observed that the PSLRA's pleading

---

[15] Section 78u-4(b)(1) provides,

In any private action arising under this chapter in which the plaintiff alleges that the defendant-
(a) made an untrue statement of a material fact; or
(b) omitted to state a material fact necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading;
the complaint shall specify each statement alleged to have been misleading , the reason or reasons why the statement is misleading, and if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

standard is 'congruent and consistent' with pre-existing Rule 9(b) pleading standards in this Circuit.").

Thus while Section 18 requires a plaintiff to plead that "the defendant made a statement of material fact that was false at the time and in light of the circumstances under which it was made," the PSLRA further requires that the complaint "specify (1) each statement alleged to have been misleading, (2) the reason why the statement is misleading, and (3) if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." *Deephaven Private Placement*, 454 F.3d at 1173, *citing* 78u-4(b)(1) and *Stone & Webster*, 414 F.3d at 194, 214-15 (designating the standards as the "clarity-and-basis requirements"); *Teachers' Retirement System of LA v. Hunter*, 477 F.3d 162, 188 (4th Cir. 2007). Moreover, application of the heightened pleading standards of Rule 9(b) by courts in the Fifth Circuit, at least to averments that sound in fraud, in other causes in which fraud is not a required element, persuades the Court that it would do so here. *Melder*, 27 F.3d at 1100 n.6; *Lone Star*, 238 F.3d at 750-51; *Benchmark*, 343 F.2d at 723; *Nazareth International*, 2005 WL 1704793, *3; *Afshar*, 2005 U.S. Dist. LEXIS 33113, **9-13. *See also In re Suprema*, 438 F.3d at 270 (as with claims under Section 18, in pleading claims under Sections 11 and 12 of the 1933 Act, 15 U.S.C. §§ 77k(b)(3) and 77l(a)(2) respectively, essentially strict liability statutes that do not

require a showing of scienter[16] and can be grounded in fraud or negligence, where the plaintiff grounds them in allegations of fraud the heightened requirements of Rule 9(b) apply; where the claims are not grounded in allegations of fraud, the liberal notice pleading requirements of Rule 8 apply); *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1223 (1st Cir. 1996); *In re Tyco Internat'l, Ltd.*, NDL No. 02-md-1335-PB, Civ. No. 04-cv-1446-PB, 2007 WL 1687775, *7 (D.N.H. July 11, 2007). "Whether a Securities Act claim is subject to Rule 9(b) requires an assessment of the particular claim to determine whether acts of fraud on the part of the defendants form the basis for the claim against them." *In re Suprema*, 438 F.3d at 270.

A plaintiff bringing a claim under section 18 has a significantly lighter burden of proof than a plaintiff suing under § 10(b) of the Securities Exchange Act: in particular, as noted, he does not have to plead facts showing a strong inference of scienter. *Stone & Webster*, 414 F.3d at 193, 202 (the burden of pleading state of mind "is shifted. The defendant may rebut liability by proving that he or she 'acted in good faith and did

---

[16] Under Section 11's affirmative due diligence defense, the defendants can avoid liability for non-expertised portions of the registration statement if they show that after reasonable investigation, they had good reason to believe and did believe that the statements in it were true and not misleading. 15 U.S.C. § 77k(b)(3)(A). As for the expertised portions, which include the financial statements, under an affirmative "reliance" defense defendants are entitled to rely on any portion of the registration statement made on authority of an expert's opinion (e.g., accountants' and auditors') if they show they had no reason to believe and did not believe that the statements were untrue or misleading. 15 U.S.C. § 77k(b)(3)(C).

not directly or indirectly induce the act or acts constituting the violation or cause of action.'")(citing 15 U.S.C. section 78t(a)); *Deephaven Private Placement*, 454 F.3d at 1172 (section 18 involves defendants who violated the securities laws with scienter, but plaintiff is not required to plead scienter; instead state of mind is a defense for the plaintiff to prove that he acted in good faith and did not know that the statement at issue was false or misleading), *citing Musick, Peeler & Garrett v. Employers Ins. of Wausau*, 508 U.S. 286, 296 (1993); *In re Stone & Webster, Inc. Sec. Litig.*, 414 F.3d 187, 193 (1st Cir. 2005); *Magna Investment Corp. v. John Does One Through Two Hundred*, 931 F.32d 38, 39-40 (11th Cir. 1991); *McGann v. Ernst & Young*, 102 F.3d 390, 395 (9th Cir. 1996); *Ross v. A.H. Robins Co., Inc.*, 607 F.2d 545, 555-56 (2d Cir. 1979), *cert. denied*, 446 U.S. 946 (1980).

Nevertheless a plaintiff is required to plead, with particularity, actual reliance, as opposed to constructive or presumed reliance or reliance based on the fraud-on-the-market theory. *See In re Suprema Specialties, Inc. Sec. Litig.*, 38 F.3d 256, 283-84 (3d Cir. 1006), *citing Heit v. Weitzen*, 402 F.2d 909, 916 (2d Cir. 1968); *Howard v. Everex Sys.*, 228 F.3d 1057, 1063 (9th Cir. 2000); *In re Redback Networks, Inc. Sec. Litig.*, No. CO3-5642JF(HRL), 2007 WL 963958, *7 (N.D. Mar. 30, 2007); *Witriol v. Conexant Systems, Inc.*, No. CIV. A 04-6219 SRC, 2006 WL 3511155, *7 (D.N.J. Dec. 4, 2006); *In re Marsh & McLennan Companies, Inc.*, No. MDL 1744, 04 CIV 8144 (SWK), 2006 WL 2057194, *35 (S.D.N.Y. July 20, 2006). The Fourth Circuit has rejected cursory pleading

of the actual reliance element and has required that plaintiffs "plead facts probative of their actual reliance on any specific false statements contained in those filings" and "allege a causal connection between the sale of a security and 'reliance upon a false *statement'* in a report filed with the SEC." *Id.* at 284; *in accord In re Suprema Specialties*, 438 F.3d at 284.

Section 78r(c) contains an express statute of limitations: "No action shall be maintained to enforce any liability created under this section unless brought within one year after the discovery of the facts constituting the cause of action and within three years after such cause of action accrued." Because of this provision and because the statute does not require the pleading and proving of scienter and thus covers negligence and strict liability claims, this Court has held that the extended (2 year/5 year) statute of limitations in section 804 of the Sarbanes-Oxley Act of 2002, 28 U.S. C. § 1658(b), which only "'applies to private rights of action involving claims of fraud, deceit, manipulation or contrivance,'" does not apply to § 18. *In re Enron*, 465 F. Supp. 2d at 711-13 (#161 at 50-51 in H-02-4788).

Moreover, as this Court discussed in #161 at 51-54 (465 F. Supp. 2d at 713-14),

> In federal securities claims, the statute of limitations begins to run when the plaintiff has actual knowledge of the facts giving rise to his claims or has notice of facts that in the exercise of reasonable due diligence should have known of the alleged wrongdoing. *In re Dynegy, Inc. Sec. Litig.*, 339 F. Supp. 2d 804, 845 (S.D. Tex. 2004),

*citing inter alia Jensen v. Snellings*, 841
F.2d 600, 607 (5th Cir. 1988).   "Storm
warnings" is a term used to denote
circumstances which trigger a plaintiff's
duty to inquire because they suggest to an
investor of ordinary intelligence that he has
been injured.   *Id.* at 846; *see also Margolies
v. Deason*, 464 F.3d at 553-54 (""whether the
plaintiff 'by exercise of reasonable
diligence,' should have learned of facts
placing him on notice of his claim . . . is
commonly referred to as inquiry notice."),
*citing Jensen v. Snellings*, 841 F.2d 600, 607
(5th Cir. 1988)(plaintiffs cannot ignore
"storm warnings" that would alert a
reasonable investor to the possibility of
fraudulent statements or omissions in his
securities transaction").   Although there is
disagreement among courts as to exactly what
constitutes a storm warning or inquiry
notice, "'the facts relied upon to support
inquiry notice must rise to a level of more
than mere suspicion; they must instead be
'sufficiently confirmed or substantiated' to
a point at which the victims are incited to
investigate.'"   *Id.*, *quoting Ritchey v.
Horner*, 244 F.3d 635, 640-41 (8th Cir. 2001),
*in turn quoting Fujisawa Pharmaceutical Co.,
Ltd. v. Kapoor*, 115 F.3d 1332, 1335 (7th Cir.
1997).   In addition, the information involved
must "'be such that it relates directly to
the misrepresentations and omissions the
[p]laintiffs later allege in their action
against the defendants." *Id., citing Newman
v. Warnaco Group, Inc.*, 335 F.3d 187, 193 (2d
Cir. 2003).

Because a determination of when a
plaintiff is on inquiry notice depends upon
the facts and because courts may weigh such
matters differently, such a decision is often
inappropriate under Rule 12(b)6) review.
*Dynegy*, 339 F. Supp. 2d at 846, *citing Marks
v. CDW Computer Centers, Inc.*, 122 F.3d 363,
367 (7th Cir. 1997); *see also Margolies v.
Deason*, 464 F.3d at 553-54 ("The fact-
intensive inquiry is typically appropriate
for consideration by a jury.")(applying same
analysis to Texas blue sky law claims as
federal securities law claims), *citing
Ruebeck v. Hunt*, 142 Tex. 167, 176 S.W. 2d
738, 740 (1944)("Unless the evidence is such
that reasonable minds may not differ as to

its effect, the question as to whether a
party has exercised diligence in discovering
fraud is for the jury.").

There are, nevertheless, circumstances
where a plaintiff is on inquiry notice as a
matter of law:

Where . . . the facts needed for
determination of when a reasonable investor
of ordinary intelligence would have been
aware of the existence of [wrongdoing] can be
gleaned from the complaint and papers such as
the prospectuses and disclosure forms that
are integral to the complaint, resolution of
the issue on a motion to dismiss is
appropriate.

*Dynegy*, 339 F. Supp. 2d at 847, *quoting Dodds
v. Cigna Securities, Inc.*, 12 F.3d 346, 352
n.3 (2d Cir. 1993), *cert. denied*, 511 U.S.
1019 (1994).  The *Dynegy* court pointed out
that the Second Circuit has determined the
issue of notice in a large number of cases on
a motion to dismiss.  *Id., citing In re
WorldCom Inc. Sec. Litig.*, 294 F. Supp. 2d
431, 445 (S.D.N.Y. 2003).  It is however a
heavy burden for the plaintiff: "Inquiry
notice exists only when uncontroverted
evidence irrefutably demonstrates when
plaintiff discovered or should have
discovered the fraudulent conduct."  *Id.,
quoting Nivram Corp. v. Harcourt Brace
Jovanovich, Inc.*, 840 F. Supp. 243, 249
(S.D.N.Y. 1993).

**Outside Directors' Motion to Dismiss**

Outside Directors maintain that all three of Plaintiffs'

claims are grounded in fraud because, along with other defendants,

they allegedly "participated in the massive fraudulent scheme that

Enron perpetrated against the Ohio Retirement Systems and other

public investors," as evidenced by the incorporation of numerous

allegations in the complaint into the three causes of action

against the Outside Directors; for example Outside Directors

purportedly drafted, approved, disseminated and/or ratified

materially false and misleading information about Enron

Corporation ("Enron"), including SEC filings, while being aware of or recklessly disregarding the falsity of these materials, knowingly or recklessly caused Enron not to consolidate the results of the LJM partnerships on Enron's financial statements, were aware of the nature and purpose of prepay transactions that were being improperly accounted for to misstate Enron's financial condition, and aided and abetted fraud by Enron. Amended Complaint (#97) at ¶¶ 3, 66, 183, 207, 656. Outside Directors contend that because Plaintiffs have incorporated all of their fraud-based allegations into every count of their complaint ("Plaintiffs repeat and reallege the allegations contained in each of the foregoing paragraphs as if fully set forth herein" in Amended Complaint at ¶ 639 *re* Count V for negligent misrepresentation; at ¶ 654 *re* Count VI for aiding and abetting common fraud; and at ¶ 669 *re* Count IX for section 18 of the Exchange Act), Rule 9(b) applies to all of the complaint. *Melder*, 27 F.3d at 1100 n.6 ("Plaintiffs maintain that their [non-fraud] claims were inappropriately subjected to the Rule 9(b) heightened pleading standard. <u>This argument is untenable in light of the complaint's wholesale adoption of the allegations under the securities fraud claims for purposes of the [non-fraud] claims.</u>")[emphasis added by the Court].

Outside Directors next argue that the complaint fails to plead specific facts to comply with Rule 9(b) because the complaint does not identify what alleged misrepresentations were made and when by the Outside Directors. Group-pleaded allegations

against "Defendants" or "Individual Defendants," generally, are not acceptable. *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 365 (5th Cir. 2004)("Consistent with our rejection of the 'group pleading' doctrine, we do not construe allegations contained in the Complaint against the 'defendants' as a group as properly imputable to any particular individual defendant unless the connection between the individual defendant and the allegedly fraudulent statement is specifically pleaded."). Once the complaint is stripped of such impermissible group-pleaded statements, argue the Outside Directors, at most only Enron's Form 10-K statements signed by the Outside Directors might be attributable to any of them.  Even then, they object that the complaint fails to allege what the signature of each Outside Director on a Form 10-K actually "states," no less addresses the contents of the false representations and what the speaker obtained by it, as required by Rule 9(b). *Benchmark*, 343 F.3d at 724.  Because the pleading of none of the three causes of action satisfies the particularity requirements of Rule 9(b), Outside Directors maintain that all three should be dismissed with prejudice.

Outside Directors contend that Plaintiffs fail to, and cannot, identify a single misrepresentation by an Outside Director, no less to provide the requisite information about who made the statement, what the statement was, when it was made, why it was misleading or how the Outside Director allegedly knew the statement was misleading when made because the representations

were made by Enron's management or by Enron.[17]   Moreover, Enron incorporated into these reports the audit and internal control opinions of Arthur Andersen[18] that also demonstrate that the

_____

[17] Outside Directors state that every Enron filing from 1997 through 2000 included the following statement:

> **Management's Responsibility for Financial Reporting**
>
> The following <u>financial statements of Enron Corp.</u> and subsidiaries (collectively Enron) <u>were prepared by management, which is responsible for their integrity and objectivity</u>.   The statements have been prepared in conformity with generally accepted accounting principles and necessarily include some amounts that are based on <u>the best estimates and judgments of management</u>.

#186 at 9, citing 2000 Enron Annual Report at 29; 1999 Enron Annual Report at 39; 1998 Enron Annual Report at 43; 1997 Enron Annual Report at 51 (relevant pages attached as Ex. 1).

The Court notes that Plaintiffs have alleged numerous violations of GAAP by Enron officials and Andersen, specifically identified and discussed, which raise fact issues not appropriate for review under Rule 12(b)(6).

[18] Arthur Andersen represented,

> **Reports of Independent Public Accountants**
>
> To Shareholders and Board of Directors of Enron Corp.:
>
> We have examined <u>management's assertion</u> that the system of internal control of Enron Corp. (an Oregon corporation) and subsidiaries as of December 31, 2000, 1999 and 1998 was adequate to provide reasonable assurance as to the reliability of financial statements. . . . Management is responsible for maintaining effective internal control over the reliability of financial statements and the protection of assets against unauthorized acquisition, use or disposition.   Our responsibility is to express an opinion on <u>management's assertion</u> based on our examination. . . .

financial statements were the responsibility of Enron's management.[19]

With respect to the aiding and abetting claim, Outside Directors again point out Plaintiffs' failure to identify even one fraudulent statement by the Outside Directors or any other Defendants, no less plead with the specificity required by Rule

---

> In our opinion, <u>management's assertion</u> that the system of internal control of Enron Corp. and its subsidiaries as of December 31, 2000, 1999, and 1998 was adequate to provide reasonable assurance as to the reliability of financial statements . . . based upon current standards of control criteria. . . .
>
> We have audited the accompanying consolidated balance sheet of Enron Corp. (an Oregon corporation) and subsidiaries as of December 31, 2000 and 1999, and the related consolidated statements of income, comprehensive income, cash flows and changes in shareholders' equity for each of the three years in the period ended December 31, 2000. <u>These financial statements are the responsibility of Enron Corp.'s management</u>. Our responsibility is to express an opinion on these financial statements based on our audits.

#186 at 10, citing 2000 Enron Annual Report at 30; 1999 Enron Annual Report at 40; 1998 Enron Annual Report at 44 (Ex. 1).

As will be discussed, this statement does not relieve Outside Directors of liability for signing

[19] Outside Directors assert that this Court previously noted the limited significance of an outside director's signature on an SEC filing in *In re Enron*, 258 F. Supp. 2d 576, 588 (S.D. Tex. 2003)(citing Audit Committee Disclosure (S.E.C. Release No. 41987), 1999 WL 955908 at *29 n.57, *9 (Oct. 7, 1999)): "[T]he SEC has explained that 'by signing documents filed with the Commission, board members implicitly indicate that they believe that the filing is accurate and complete.'"

This Court completely disagrees; in fact its discussion emphasizes exactly the opposite, i.e., that "[t]he SEC has attempted to make signatures on corporate documents that are filed with the SEC carry significant weight." *See id.*, 258 F. Supp. at 587-88 & nn.6-7.

9(b).  Nor have they alleged actual knowledge by any Outside
Director of any false or misleading speaker's role in the fraud.
Restatement § 876(b); *Aetna Casualty & Surety Co. v. Leahey Const.
Co.*, 219 F.3d at 536.

        Outside Directors maintain that this Court has already
ruled that Plaintiffs are not entitled to an opportunity to amend
to cure defects in their pleadings:  "Because cases establishing
pleading standards for Plaintiffs' various causes of action were
issued long before they filed their motion for leave to amend and
proposed amended complaint, and because this Court has issued
numerous orders in *Newby* and the coordinated and consolidated
cases addressing pleading requirements, the Court sees no reason
to permit Plaintiffs to amend again."  *In re Enron*, 465 F. Supp.
2d at 732 (instrument #161 in H-02-4788).  Furthermore they argue
that the pleading is deficient not for lack of resources or
information, but because there is no basis for Plaintiffs' claims.
*Rosenzweig v. Asurix Corp.*, 332 F.3d 854, 865 (5th Cir.
2003)(affirming denial of leave to amend where "Plaintiffs concede
they have not raised any facts which were not available previous
to the district court's opinion.").

        Outside Directors also contend that at least some of the
claims are time-barred.  The § 18 claims are subject to a one-year
limitations period and a three-year period of repose.  15 U.S.C.
§ 78r(c)("No action shall be maintained to enforce any liability
created under this section unless brought within one year after
the discovery of the facts constituting the cause of action and

within three years after such cause of action accrued."). This Court has opined, "In federal securities claims, the statute of limitations begins to run when the plaintiff has actual knowledge of the facts giving rise to his claims or has notice of facts that in the exercise of reasonable due diligence should have known of the alleged wrongdoing." #161 at 51-52. With respect to such "storm warnings," "[w]here . . . the facts needed for determination of when a reasonable investor of ordinary intelligence would have been aware of the existence of [wrongdoing] can be gleaned from the complaint and papers such as prospectuses and disclosure forms that are integral to the complaint, resolution of the issue on a motion to dismiss is appropriate." *Id.* at 53. Outside Directors observe that it is impossible to identify from the complaint what alleged misrepresentations were made and when by them. *Id.* at 91. They insist that any breach of duty would have to have been based on Enron's restated financial results,[20] so the facts in the complaint

---

[20] According to the Amended Complaint at ¶¶ 152 and 153,

> On November 8, 2001, Enron stunned the market by announcing its intention to restate its financial statements for 1997, 1998, 1999, and 2000 and the first two quarters of 2001 to reduce previously-reported net income by an aggregate of $591 million. Enron attributed the restatement to transactions involving three entities: Chewco Investments, L.P. ("Chewco"), a limited partnership run by Kopper; Joint Energy Development Investments Limited Partnership ("JEDI"), an investment partnership between Chewco and Enron; and LJM1, an investment partnership that had two institutional investors as limited partners and whose general partner was a limited

establish that Plaintiffs were on inquiry notice of that
restatement no later than November 8, 2001.  Amended Complaint at
¶ 417 ("Enron shocked the market when it filed with the SEC a Form
8-K . . . revealing that the Company was restating its reported
financial results for 1997, 1998, 1999, 2000, and the first two
quarters of 2001.").  They highlight Plaintiffs' allegation that
the announced restatements "constitute admission that the
representations made in the original financial statements and
other financial information contained in the Company's SEC filings
. . . were materially false and misleading when made."  *Id.* at ¶
418.  Thus by Plaintiffs' own allegations in H-02-4788, they were
on inquiry notice by November 8, 2001, and the statute of
limitations for the § 18 claims expired no later than November 8,
2002, well before July 11, 2003, the date which this Court found
in its July 11, 2003 order (#1561 in *Newby*), as amended on July
11, 2006 (#4848 in *Newby*), was the earliest any tolling began to

---

partnership wholly owned by Fastow.  The
Company also disclosed that Fastow had earned
$30 million in fees for managing limited
partnerships that Enron used to move poor-
performing assets and debt off of its books.
        The restatement reduced Enron's reported
net income by $96 million in 1997, $113
million in 1998, $250 million in 1999, and
$132 million in 2000.  The impact of the
restatement on shareholders' equity was even
more dramatic, reducing such equity by $313
million in 1997, $448 million in 1999, and an
incredible $1.164 billion in 2000.  In
addition, Enron's reported debt increased by
$711 million in 1997, $561 million in 1998,
$685 million in 1999, and $628 million in
2000.

apply.[21]   #165 at 80-81.[22]   Thus, conclude Outside Directors,
Plaintiffs' § 18 claims against Outside Directors are time-barred
by the one-year statute of limitations as a matter of law.

Outside Directors additionally claim that the state law
claims (negligent misrepresentation and aiding and abetting common
law fraud), based on alleged purchases or representations before
July 11, 1999, are also time barred if tolling began with the
Court's July 11, 2003 order on that date.   See #161 at 91.
Moreover, negligent misrepresentation claims of newly added
Plaintiffs OTTA and Cincinnati should be dismissed where they are
based on alleged representations made more than four years before
their constructive filing date.  Because these two Plaintiffs were

_____

[21] Outside Directors urge that even if the Court found that
Plaintiffs were not on notice of their claims against the Outside
Directors until April 8, 2002, when the First Amended Consolidated
Complaint in *Newby* was filed, the statute of limitations would
still have run by April 2004.

[22] The Court has explained (#161 in H-02-4788; 465 F. Supp.2d
at 725-26) that its scheduling orders (#1561 and #4848 in *Newby)*
were issued to stay the consolidated and coordinated cases and to
toll the statute of limitations (on claims that had been timely
asserted) until after classes were certified in *Newby* and *Tittle*
and the deadline by which opting-out plaintiffs were required to
file motions for leave to amend if they chose to supersede their
earlier pleadings.  Those amended complaints that were allowed to
be filed after the class certifications were deemed constructively
filed as of July 11, 2003 (the date of the scheduling order).
        Original Plaintiffs and Cincinnati and OTTA filed their
motion for leave to file amended complaint and for Cincinnati and
OTTA to join in that amended complaint (#54), adding federal
securities claims and the Outside Directors as Defendants, on
September 15, 2005, during the period of tolling and nearly ten
months before the *Newby* class was certified on July 5, 2006 and the
scheduling order was issued on July 11, 2006.  The Court finds that
Cincinnati and Otta's claims, like those complaints allowed to be
amended in accordance with that scheduling order (including that in
the action *sub judice*), should be construed as constructively filed
on July 11, 2003.

not subject to the July 11, 2003 order, their claims cannot be deemed filed until they filed their motion to join this action on September 15, 2005; therefore all of OTTA's and Cincinnati's negligent misrepresentation claims based on purchases or representations prior to September 15, 2001 should be dismissed as time-barred.

Should the Court not dismiss all of Plaintiffs' claims against Outside Directors, Outside Directors request the Court to reopen discovery since they have been unable to take any discovery against Plaintiffs.

### Plaintiffs' Response

Plaintiffs object to Outside Directors' attempt to insert Rule 9(b)'s heightened pleading standard to claims Plaintiffs insist are not covered by it, specifically negligent misrepresentation and violation of § 18. They rely on *American Realty*, 115 Fed. Appx. 662 (see discussion *supra*), and maintain that they have pled independent claims of fraud and negligent misrepresentation.

Even if Rule 9(b) is applicable, Plaintiffs claim that they have satisfied its standard because they have identified each of the Outside Directors who signed specified annual reports filed with the SEC between 1998 and 2001, and have identified which statements were false and misleading, when they were made, and why they were false and misleading. Moreover, Enron's November 8, 2001 announcement that it would restate its financial statements

for 1997, 1998, 1999, 2000, and the first two quarters of 2001[23] constitutes an admission that the financial figures in these reports were false.   ¶¶ 417-18, 421.   The Court will not repeat all the allegations summarized by Plaintiffs #264 at 6-12, with citations to paragraphs in the complaint, but refers the parties to these documents.

Plaintiffs assert that it is well established that directors, both inside and outside, are liable for false statements made in SEC filings that they sign.  *See, e.g., F.N. Wolf & Co., Inc. v. Estate of Neal*, No. 89 Civ. 1223, 1991 WL 34186, at *9 (S.D.N.Y. Feb. 25, 1991)(a director who signed a document containing misrepresentations or omissions and filed with the SEC is deemed to have made or caused to be made such representations for purposes of liability under § 18).  Plaintiffs allege that Outside Directors repeatedly signed Enron's 10-K filings that contained materially misleading representations.

Regarding their claim for aiding and abetting, Plaintiffs insist they have adequately pled the first element, knowledge that the primary violator-party's conduct is a breach of duty, because an allegation of actual knowledge is not required, only that the aider and abettor have a general awareness of its role in the other's tortious conduct.  *Javitch v. First*

---

[23] Enron revealed that it was restating its financial statements to include the financial activities of Chewco, JEDI, and LJM1 that should have been, but were not, reported on Enron's consolidated financial statements in prior periods and include adjustments and reclassifications that had been proposed by Arthur Andersen in prior years by Enron's officers.

*Montauk Financial Corp.*, 279 F. Supp. 2d 931, 946 (N.D. Ohio 2003); *Aetna Cas. & Sur. Co.*, 219 F.3d at 536 ("An alleged aider and abettor . . . need not know all the details of the primary party's scheme for liability to attach."). Plaintiffs point out that Rule 9(b) permits knowledge to be averred generally. Furthermore, a federal district court in Ohio has held that a plaintiff asserting an Ohio state common law claim for aiding and abetting may use group pleading.[24]  *In re National Century Financial Enterprises, Inc., Investment Litig.*, No. 2:03-MD-1565, 2006 WL 469468, *9 (S.D. Ohio Feb, 27, 2006)("[T]he disagreement [in federal courts about whether the group pleading doctrine may be used] has arisen within the context of federal claims under § 10(b) . . . .  The Court finds no barrier to Plaintiffs['] relying on group pleading to state a common law claim.  Indeed, an aiding and abetting claim rests on the existence of multiple tortfeasors.").[25]

---

[24] Nevertheless, under *In re Korean Air Lines Disaster*, 829 F.2d 1171, 1176 (D.C. Cir. 1987), *aff'd sub nom Chan v. Korean Air lines, Ltd.*, 490 U.S. 122 (1986) the law of the Fifth Circuit, as transferee court for MDL 1446, controls the issue here.  *In accord, In re national Century Financial Enterprises, Inc. Inv. Litig.*, 323 F. Supp.2d 861, 867 (S.D. Ohio 2004)("The rule in multidistrict litigation is that the transferee court, in interpreting federal law, should apply the law of its own circuit rather than the law of the transferor court's circuit.")(*citing Korean Air Lines Disaster*).

[25] In *National Century* the court observed that the group pleading doctrine is "'premised on the assumption that '[i]n cases of corporate fraud where the false or misleading information is conveyed in prospectuses, registration statements, annual reports, press releases, or other 'group published information,' it is reasonable to presume that these are the collective actions of the officers.'"  2006 WL 469468, *8 [citations omitted].  It further

Plaintiffs insist that the Amended Complaint satisfies Rule 9(b) because it names each Outside Director that signed each of Enron's false and misleading annual reports during the relevant time period, the dates these annual reports were issued, each statement alleged to be false and misleading, and why each statement was false. See paragraphs 295-302, 320-28, 341-52, 371-76.

As for objections of untimeliness, Plaintiffs rely on the rule that a motion to dismiss based on statute of limitations

---

noted, "'Under such circumstances, a plaintiff fulfills the particularity requirement of Rule 9(b) by pleading the misrepresentations with particularity and where possible the roles of the individual defendants in the misrepresentations.'" *Id.* In response to the defendants' objection that the complaint failed to connect individual defendants to the misrepresentations in the action before it, the court disagreed:

> The complaints spell out exactly which positions Poulson, Ayers, and Parrett held with National Century, NPF VI, and NPF XII. Each complaint either directly alleges or supports an inference that Poulson, Ayers, and Parrett reviewed and approved the Offering Materials, despite knowing that the Offering Material contained misrepresentations and material omissions. And the complaints allege that the [defendants] actively concealed their wrong doing from Plaintiffs after the note purchases were made. In sum the Court finds that Plaintiffs have satisfied the pleading requirements of Rule 9(b).

*Id.* at *9. With regard to a group-pleading challenge to the aiding and abetting claim before it, the court found that the plaintiffs "have stated a claim for aiding and abetting because their complaints specify what positions the [defendants] held and alleged that [they] knowingly organized and assisted each other in executing the fraudulent scheme." *Id.* at *12. Thus it appears that the court required more than a conclusory statement that the defendants were officers and directors of a corporation that issued misleading statements.

should be granted only when the complaint conclusively shows on its facts that the claim is time-barred. *Autry Petroleum Co. v. BP Products North America, Inc.*, No. 4:05-CV-113, 2006 WL 1174443, at *3 (M.D. Ga. May 1, 2006). They argue that as of November 2002 they lacked sufficient information to constitute inquiry notice, no less to plead essential elements of their section 18 claim; they also argue that Defendants have not shown from the face of the Amended Complaint alone that Plaintiffs' Section 18 claim was time-barred.

Last, Plaintiffs contend that the Outside Directors' argument that OTTA and Cincinnati were not subject to the July 11, 2003 scheduling order that tolled the applicable statute of limitations and are therefore precluded from asserting negligent misrepresentation claims based on conduct that occurred before September 1, 2001 (four years prior to the date they filed their motion to join this suit),[26] is a narrow construction of that order and ignores the rule that an entity may not file an independent action to avoid the constraints of a scheduling order in an action. *Chinn v. Giant Good, Inc.*, 100 F. Supp. 2d 331, 334 (D. Md. 2000). They cite *United States v. Parker*, 165 F. Supp. 2d 431, 439 (W.D.N.Y. 2001) for the rule that "[s]cheduling orders

---

[26] This Court previously held that the discovery rule did not apply to negligent misrepresentation claims and that the original Plaintiffs could not assert negligent misrepresentations claims based on conduct before July 11, 1999. December 8, 2006 (#161) at 87 (also available at *In re Enron*, 465 F. Supp. 2d 687 (S.D. 2006)).

are not mere formalities that can be disregarded or treated cavalierly").[27]

Plaintiffs object to Outside Directors' conditional motion to reopen discovery as conclusory and contend that it does not show good cause with particularity.

Because they had a reasonable basis for concluding that Rule 9(b) did not apply to their claims and relied on significant case law that they could satisfy the first element of their aiding and abetting claim by showing a general awareness by the aiding and abetting tortfeasor of its role in the fraud, they request the Court to grant them leave to amend.

### Outside Directors' Reply

Reiterating that Plaintiffs have incorporated into their claims against Outside Directors pages of factual allegations of fraud that cannot be disentangled from any "non-fraud" allegations, regarding the "massive fraudulent scheme" perpetrated by Enron's Board of Directors, *inter alia*, Outside Directors insist that Rule 9(b) applies to all the claims against them under

---

[27] The Court finds these cases, on their facts, do not support the proposition for which Plaintiffs here cite them.  In *Chinn*, grounded in Title VII and the ADEA, the court ruled that the Plaintiff employees could not file a new class action in order to avoid "constraints" established by scheduling orders in earlier filed class actions and that the law of the case doctrine barred employees from joining a different class action.  In *Parker*, defendants at the eleventh hour filed what was a third motion for extension of time.  Because two extensions had already been allowed and because defendants did not cite any reason why additional time was needed, the court denied the motion.

a long line of Fifth Circuit cases.[28]  *See* Amended Complaint, ¶¶ 3, 66, 183, 207, 450, 451, 459, 656.  They maintain that Plaintiffs have not urged any separate focus on their negligent misrepresentation and Section 18 claims; instead the claims are based on the same set of facts.  Moreover, in the wake of *American Realty*, the majority of district court decisions have reconciled it with *Benchmark* and pre-existing authority.  *See SMI-Owen Steel Co., Inc. v. St. Paul Fire & Marine Ins. Co.*, Nos. Civ. A. G 00 149, G 01 CV 627, 2006 WL 581266, *1 (S.D. Tex. Mar. 7, 2006)("In the opinion of this Court, there has been no intervening change in controlling law.  In *Benchmark* . . . , the Fifth Circuit held that when 'fraud and negligent misrepresentation claims are based on the same set of alleged facts' the claims have the same focus and the heightened pleading requirements of Rule 9(b) apply. . . . In *American Realty* . . . , this Circuit was careful to point out that the 'plaintiffs properly distinguished between their fraud and negligent misrepresentation claims and correctly argued that the Rule 9(b) requirement of particularized pleadings of fraud by its terms does not apply to negligent misrepresentation claims.'"); *Nazareth International, Inc. v. J.C. Penney Corp., Inc.*, No. Civ. A. 304CV1265M, 2005 WL 1704793, **3-4 (N.D. Tex. July 19, 2005)(Citing *Benchmark, Williams v. WMX Techs.*, *Shushany*, *American Realty*, *et al.,* the court concluded that the prevailing rule is that "Plaintiff's claim must be dismissed if 'the

---

[28] *Benchmark*, 343 F.3d at 723; *Lone Star Ladies Inv. Club*, 238 F.3d at 368; *Melder*, 27 F.3d at 1100 n.6.

inadequate fraud averment is so intertwined with the negligent misrepresentation claim that it is not possible to describe a simple redaction that removes the inadequate fraud averment while leaving behind a viable negligent misrepresentation claim" ); *Kougl v. Xspedius Management Co. of Dallas/Fort Worth, L.L.C.*, No. Civ. A. 3:04CV2518-D, 2005 WL 1421446, **5-6 (N.D. Tex. June 1, 2005)(same; "[T]he Fifth Circuit does not reject the requirement that parties alleging negligent misrepresentation claims comply with Rule 9(b).   Instead, it distinguishes between negligent misrepresentation claims made apart from, and those intertwined with, fraud-based claims."); *Afshar v. Norwood*, No. 3:05-CV-1625-G, ECF, 2005 U.S. Dist. LEXIS 33113, **9-13 (N.D. Tex. Dec. 14, 2005)(same).   Thus complaints like Plaintiffs' that are wholly and indiscriminately grounded in fraud are not exempted from the application of Rule 9(b).

Next Outside Directors argue that they are not deemed to have "made" all of the statements contained in SEC filings that they have signed[29]; rather their signatures merely "'indicate that

---

[29] Outside Directors insist Plaintiffs have misconstrued *Howard v. Everex Systems, Inc.*, 228 F.3d at 1061 (a corporate official, acting with scienter, who signs a document filed with the SEC that contains material misrepresentations, such as a Form 10-K, even if he did no participate in drafting the document, "makes" a statement and may be liable under § 10(b)), in relying on it for the proposition that a director's signature on a Form 10-K means the director has "made" every representation in that document.   The claims that *Howard* deals with an inside officer, the CEO, and addresses the question whether he, acting with scienter, signs an SEC-filed document containing misrepresentations, "makes" a statement for purposes of liability as a primary violator under § 10(b) and Rule 10b-5.   The panel assumed scienter was adequately pled.   *Id.*   The panel distinguished the situation before it from that before this Court:   "[I]n all of the cases relied upon by

they <u>believe</u> that the filing is accurate and complete.'" #291 at 5, *quoting In re Enron Corp.*, 258 F. Supp. 2d 576, 588 (S.D. Tex. 2003)(citing "Audit Committee Disclosure" (S.E.C. Release No. 41987), 1999 WL 955908 at *29 n.57, *9 (Oct. 7, 1999)). They contend that Plaintiffs have failed to allege any fact suggesting at any time that any Outside Director that signed a Form 10-K did not actually believe that the statements in it were true or that the filing was accurate and complete. The statements in the 10-K were attributed to parties other than the Outside Directors and Plaintiffs fail to identify, with particularity or otherwise, a single false statement by any Outside Director. Moreover the complaint is too vague to determine what alleged misrepresentations were made and by whom.

Outside Directors further insist that Plaintiffs have not adequately pled aiding and abetting common law fraud against them because they have not alleged that the Outside Directors had actual knowledge of the underlying fraud. *Aetna Casualty*, 219 F.3d at 536 ("We stress that the requirement is *actual* knowledge (which again may be proven by circumstantial evidence) and therefore evidence establishing negligence, i.e., that a [defendant] 'should have known,' will not suffice."); *In re Enron*

---

defendants for the claim that a mere signature is not sufficient for § 10(b) liability, there was no showing of scienter or the defendant was an *outside* director." *Id*. at 1062 (emphasis in original). Outside Directors assert that "*Howard* does not even consider, much less hold, that an <u>outside director's signature</u> on an SEC filing is in itself sufficient to state a claim under Section 18, or any common law misrepresentation claim to which Rule 9(b) applies." #291 at 7.

*Corp.*, 465 F. Supp.2d 687, 727 & n.49 (S.D. Tex. 2006)(in accord and noting that the *Aetna Casualty* panel "saw 'no conflict between the position that an aider and abettor must have actual knowledge of the primary party's wrongdoing and the statement that it is enough for the aider and abettor to have a general awareness of its role in the other's tortious conduct for liability to attach."), *citing Aetna Casualty*, 219 F.3d at 534.

Moreover, with respect to group pleading, urge the Outside Directors, this Court as the transferee court in an MDL proceeding, "[w]hen analyzing questions of federal law, . . . should apply the law of the law of the circuit in which it is located. *In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563, 644 n.128 (S.D. Tex. 2005), *citing In re Korean Air Lines Disaster*, 829 F.2d 1171, 1176 (D.C. Cir. 1987), *aff'd sub nom Chan v. Korean Air lines, Ltd.*, 490 U.S. 122 (1986). Thus the law of Ohio is not relevant to determining the sufficiency of the complaint under the Federal Rules. *Southland*, 365 F.3d at 365 (the Fifth Circuit "has never adopted the 'group pleading' doctrine, even before the PSLRA"); *Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986)(rejecting group leading in common law intentional misrepresentation claim). The Fifth Circuit prohibits group pleading in claims under the PSLRA and common law. They maintain the complaint is too vague to state a claim for which relief may be granted.

In addition, given Section 18's one-year statute of limitations and three-year statute of repose, Outside Directors

reiterate that the complaint, itself, conclusively establishes
that Plaintiffs were on inquiry notice of their Section 18 claims
against Outside Directors in November 2001-or any time more than
one year before tolling began under the Court's July 11, 203
scheduling order.   In the Amended Complaint at ¶¶ 671, 673, and
671 ("When the truth was finally revealed in November 2001"),[30]
Plaintiffs pled that in November 2001 they identified as false or
misleading the financial statements on which the Section 18 claims
are based,  i.e., had actual notice from the restatement; thus
their Section 18 claims were time-barred one year later.   They

---

[30]    671.   As set forth above, the Section 18
Defendants made or caused to be made
statements which were, at the time and in
light of the circumstances under which they
were made, false or misleading with respect to
material facts, in documents filed with the
SEC.   Specifically, the Company's Forms 8-K
from 1998 through November 2001 were filed
with the SEC, and audited financial statements
for the years 1997, 1998, 1999, and 2000 were
included in the Company's Forms 10-K that were
filed with the SEC.   Those financial
statements have been withdrawn and were
restated, which restatement of financial
figures by way of definition (see Accounting
Principles Board Opinion No. 20) makes such
statements false and misleading. . . . .
673.   Except for Andersen, each of the Section
18 Defendants signed the Company's 1997, 1998,
1999 and 2000 Forms 10-K, and Andersen
certified the financial statements contained
therein. . . .
675.   When the truth was finally revealed in
November 2001 about the false and misleading
statements in the Company's documents and
reports filed with the SEC, including the
existence of accounting irregularities,
Plaintiffs were significantly damaged by the
resulting drop in the value of the Company's
securities.

note that this Court's previous opinions, which found later dates
for inquiry notice of claims, related to claims against secondary
actors, i.e., bank defendants whose roles in the alleged scheme
would have been far less obvious to a reasonable investor of
ordinary intelligence.   Moreover, Plaintiffs also conclusorily
asserted that they "relied on each of the Forms 10-K and the
financial statements contained therein . . . between 1997 and
November 2001," a wide "reliance" net that includes information
that the public learned was inaccurate in November 2001.   The
alternative inquiry notice date, April 8, 2002, when Lead
Plaintiff filed the Fist Consolidated Complaint in *Newby*, in light
of Plaintiffs' express reliance here on previously filed lawsuits
and the similarity in substantive allegations between this suit
and *Newby*, bars Plaintiffs from claiming in good faith that
limitations expired any later than April 8, 2003, before any
tolling began under the Court's July 11, 2003 order.

Moreover, contend Outside Directors, some of Plaintiffs'
negligent misrepresentations claims against the Outside Directors
are also time-barred.   There is no dispute that such claims based
on representations purportedly made before July 11, 1999 are time-
barred.   As noted, the four-year statute of limitations bars "new"
plaintiffs OTTA and Cincinnati, who were not subject to the July
11, 1003 "tolling" order, from asserting such claims based on
representations before September 15, 2001, four years before OTTA
and Cincinnati filed their motion to join this action.

### Court's Determination

**Pleading Standard**

As a threshold matter, the Court agrees with Outside Defendants that Plaintiffs have incorporated, indiscriminately, all their  allegations of fraud into the claims in Counts V, VI, and IX against Outside Directors, and thus Rule 9(b) establishes the pleading standard for all of them.  The Court finds that Plaintiffs have relied on the same factual representations for their negligent misrepresentation and fraud claims, and they have made no attempt here to distinguish the two causes of action so as to warrant application of Rule 8's notice pleading requirements to the negligent misrepresentation claim.  *Benchmark*, 343 F.3d at 723; *Williams*, 112 F.3d at 177.  The only comment the Court can find that relates to distinguishing the fraud and negligence claims for pleading purposes is a vague statement in ¶ 642 in Count V, the negligent misrepresentation claim against  all Defendants except Arthur Andersen Worldwide:  "If not intentional or reckless, defendants' misrepresentations and their complete disregard of accounting practices were clearly negligent in derogation of the duty they owed to make accurate representations to Company shareholders and investors."  There are no explicit disclaimers (e.g., this claim is not based on and does not sound in fraud) nor do they expressly plead negligence specifically with respect to Outside Directors, not to mention numerous other Defendants.  With regard to Count IX, Violation of Section 18, there is no express allegation of negligence.

Moreover the PSLRA does apply to § 18 of the Exchange Act, and the Fifth Circuit has held that the PSLRA incorporates the standard of Rule 9(b). *Financial Acquisition Partners, L.P. v. Blackwell*, 440 F.3d at 287. Nevertheless, because scienter is not an element of a § 18 claim, that part of the PSLRA is not applicable.

**Allegations Against Outside Directors**

According to the Amended Complaint, all the named Defendants "engaged in a complex scheme to falsify [Enron's] financial results and overstate Enron's income by at least $591 million and understate debt by more than $2.5 billion." ¶ 131. It goes into substantial detail about the various ways the fraud was allegedly effected, including improper accounting, off-balance-sheet SPEs (including Chewco, LJM partnerships, and the four Raptors) and transactions (Rhythms NetConnections, Inc. stock purchase; unwinding Swap Sub and creation of Southampton, L.P.; "sales" of "assets" to LJM partnerships; prepay transactions; minority interest transactions including Nahanni and Rawhide; Nigerian barge purchase; Broadband transactions including Braveheart and dark fiber capacity swaps; FAS 140 transactions; improper tax transactions; Forest Products transactions including Fishtail, Bacchus, Sundance, and Slap Shot; the Share Trust transactions including the Marlin transaction and Whitewing transaction; the Cash 6 transaction; and the SO2 transaction) that violated GAAP, hedging, and Fastow's conflicting roles as Enron's CFO and managing partner of the LJM partnerships. It was

the combination of these fraudulent vehicles, each described in detail, that permitted the misrepresentations of Enron's financial condition contained within the SEC-filed documents signed by Outside Directors.  Moreover, the Amended Complaint addresses each of the Form 10-Ks, explaining, with reference to the vehicles identified above, how and why it misrepresents Enron's financial condition.  In *In re Cabletron Systems*, 311 F.3d at 35, the First Circuit, while acknowledging that "[m]erely stating in conclusory fashion that a company's books are out of compliance with GAAP would not in itself demonstrate liability under section 10(b) or Rule 10b-5," found similar kinds of details sufficient to state a claim:

> In this case, however, Mesko alleges that Cabletron's revenue was fraudulently inflated by tens of millions of dollars per quarter. Given that Cabletron's quarterly revenue ranged from $371 million to $381 million during the class period, reasonable investors unquestionably might consider a difference of such magnitude material.  Accurate earnings figures are total aspects of the "total mix of information" which investors would consult when evaluating Cabletron's stock. Furthermore, the nature of much of the alleged inaccuracy in earnings derives from the systematic fraud, described in detail, that extends to completely fictitious sales. This distinguishes it from cases where the alleged GAAP violation consisted merely of questionable bookkeeping practices. . . . Mesko has adequately pled that the fraudulent revenue recognition rendered Cabletron's SEC filings materially misleading.

*Id.*[31]  This Court does the same here.

---

[31] Similarly in § 10(b) claim cases, courts have found that pleading particular facts about specific and significant GAAP violations can give rise to a strong inference of scienter.  *In re*

Regarding the individual Outside Directors, Plaintiffs have alleged that Belfer, Blake, Baxter, Chan, Duncan, Gramm, Jaedicke, LeMaistre, Foy, Mendelsohn, Meyer, Ferraz Pereira, Urquhart, Wakeham, Walker, and Savage were members of Enron's board of directors, identifies the times when each served on the board, and states which SEC-filed documents, specifically Form 10-Ks, each Outside Director signed.[32]   It further asserts that Belfer, Blake, Baxter, Chan, Duncan, Gramm, Jaedicke, LeMaistre, and Foy were "in possession and aware of materially adverse undisclosed information" when they engaged in insider trading, identifies the amount of stock each director sold, and indicates

---

*Cylink Sec. Litig.*, 178 F. Supp.2d 1077, 1082-83 (N.D. Cal. 2001), *citing and quoting McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp.2d 1248, 1273 (N.D. Cal. 2000)("[W]hen significant GAAP violations are described with particularity in the complaint, they may provide powerful indirect evidence of scienter.  After all, books do not cook themselves."), and *Greebel v. FTP Software, Inc.*, 194 F.3d 184, 204 (1st Cir. 1999)(suggesting that to sufficiently state a claim of misrepresentation to give rise to an inference of scienter, a complaint might "include such basic details as the approximate amount by which revenues and earnings were overstated, . . . the products involved in the contingent transactions, . . . the dates of any of the transactions; or the identities of any of the customers or . . . employees involved in these transactions.").
        In the instant case, this Court notes that Plaintiffs have alleged all these kinds of detailed facts.

        [32] The complaint states that the 1997 10-K was signed by Outside Directors Belfer, Blake, Chan, Duncan, Foy, Gramm, Jaedicke, LeMaistre, Meyer, Urquhart, Wakeham, Walker and Winokur. The 1998 10-K was signed by Belfer, Blake, Chan, Duncan, Foy, Gramm, Jaedicke, LeMaistre, Meyer, Urquhart, Wakeham ,and Winokur. The 1999 10-K was signed by Belfer, Blake, Chan, Duncan, Foy, Gramm, Jaedicke, LeMaistre, Mendelsohn, Meyer, Pereira, Savage, Urquhart, Wakeham, Walker, and Winokur.  The 2000 10-K was signed by Belfer, Blake, Chan, Duncan, Gramm, Harrison, Jaedicke, LeMaistre, Mendelsohn, Meyer, Pereira, Savage, Urquhart, Wakeham, and Winokur.  ¶¶ 295 (1997),  320 (1998), 342 (1999), 371 (2000).

the total amount he or she received in illegal insider trading profits.

The complaint further states that Enron's board of directors approved the LJM partnerships, approved Fastow's role as managing partner of the LJM partnerships, and, after the scheme began to unravel and the press coverage was increasingly critical, on October 24, 2001 placed Fastow on administrative leave. Plaintiffs also assert that the *Wall Street Journal* reported that Board member Charles LeMaistre revealed that the LJM2 partnerships were utilized to retain Fastow at Enron.   ¶ 145.   Moreover, "the Board members failed to implement any procedures to effectively manage or oversee the CFO's unusual dual responsibilities."

**Section 18**

Outside Directors have cited *Southland*, 365 F.3d 353, to argue that group pleading has been rejected by the Fifth Circuit not only for purposes of Plaintiffs' § 18 claim, but also for their negligent misrepresentation claim under Ohio law.  This Court observes that the Fifth Circuit in *Southland*, 365 F.3d at 364-65, noted that even before passage of the PSLRA it had never adopted the group pleading doctrine, which "permits an inference of wrongdoing not based on defendant's conduct, but based solely on defendant's status as an officer or director of a corporation." Moreover it held that the PSLRA abolished the group pleading doctrine in securities fraud suits brought under the federal securities statutes.  *Id.*

Nevertheless *Southland* also carved out an important exception, which, for purposes of the claim under § 18 against the Outside Directors, based on their signing of Enron's Forms 10-K, is at issue here:

> However, corporate documents that have no stated author or statements within documents not attributed to any individual may be charged to one or more corporate officers provided special factual allegations link the individual to the statement at issue. Such specific facts tying a corporate officer to a statement would include a signature on the document or particular factual allegations explaining the individual's involvement in the formulation of either the entire document, or that specific portion of the document containing the statement.

*Id.* at 365; *see also Financial Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 287 (5th Cir. 2006)(citing *Southland*)("Corporate statements can be tied to officers if plaintiffs allege they signed the documents on which the statements were made or allege adequately their involvement in creating the documents."); *In re Fleming Companies, Inc. Securities & Derivative Litig.*, No. CIVA503MD1530TJW, MDL 1530, 2004 WL 5278716, *13 (E.D. Tex. June 16, 2004)(Although *Southland* clearly rejected the group pleadings doctrine, "corporate documents that have no stated author or statements within the documents not attributed to any individual may be charged to one or more corporate officers provided specific factual allegations link the individual to the statement at issue. Such specific facts tying a corporate officer to a statement would include a signature on the document or particular factual allegations

explaining the individual's involvement in the formulation of
either the entire document, or that specific portion of the
document containing the statement."). *See also, e.g., In re
Cabletron Systems, Inc.*, 311 F.3d 11, 41 (1st Cir. 2002)(each
outside director that signed Form 10-K accepted responsibility for
its contents for § 10(b) claim; relying on *Howard v. Everex
Systems, Inc.*); *F.N. Wolf & Co., Inc. v. Estate of Neal*, No. 89
Civ. 1223(CSH), 1991 WL 34186, *8 (S.D.N.Y. 1991)(holding that a
"director signing a document filed with the SEC . . . 'makes or
causes to be made' the statements contained therein" under § 18);
*RK Co. v. Harvard Scientific Corp.*, No. 4261, 2007 WL 924737, *16
(N.D. Ill. Mar. 23, 2007)(relying on *F.N. Wolf*); *In re Independent
Energy Holdings, PLC Sec. Litig.*, 154 F. Supp.2d 741 (S.D.N.Y.
2001)(under § 10, officer's signature makes him liable for
misrepresentations in the prospectus, but does not establish
scienter); *In re Reliance Sec. Litig.*, 135 F. Supp.2d 480, 503 (D.
Del. 2000); *In re Hayes Lemmerz Intern., Inc.*, 271 F. Supp.2d
1007, 1025-26 (E.D. Mich. 2003)(outside directors who signed Form
10-Ks are responsible for the statements contained in them;
relying on *Howard v. Everex Systems, Inc.*). *See also In re Enron
Corp Sec., Derivative & "ERISA" Litigation*," 258 F. Supp.2d 576,
587-88 (S.D. Tex. 2003).  Because scienter is not an element of
a § 18 claim, this Court concludes that outside directors who
signed SEC-filed documents that contain misrepresentations may be
liable under the statute.

Actual reliance is an element of a § 18 claim.  Although the Amended Complaint states at one point that the market for Enron bonds was "an efficient market that promptly digested current information with respect to Enron from all publicly-available sources and reflected such information in . . . price" and that Plaintiffs "relied on the integrity of the market price" of the securities (e.g., ¶ 134), i.e., pleading fraud on the market), there are only five conclusory allegations of actual reliance[33] on the SEC-filed documents signed by Outside Directors. Two of the five relate to the § 18 claim.  One is in ¶ 673, "Plaintiffs read and relied upon each of the Forms 10-K and the financial statements contained therein, and Forms 8-K issued by

_____

[33] The first three conclusory statements are expressly related to Plaintiffs' negligent misrepresentation claim, but are not limited to the SEC-filed documents signed by Outside Directors: in ¶ 643 ("Plaintiffs, justifiably relying on the integrity of the market and/or on the statements and reports of Enron, the Individual Defendants, the Financial Institution Defendants and Andersen[,] purchased Enron securities at artificially-inflated prices."); in ¶ 649 ("Plaintiffs reasonably relied upon the false representations of the Company's financial condition in the annual reports disseminated by the Individual Defendants and the unqualified opinions issued in relation thereto by Andersen. Plaintiffs also relied upon the material misrepresentations in the Company's quarterly reports, press releases and Registration Statements, and upon analyst reports, prospectuses and Offering Memoranda issued by Enron or the Financial Institution Defendants, including the Yosemite Notes Offering Memorandum."); and in ¶ 651 ("With no knowledge of the false and misleading nature of the representations [and omissions by defendants . . . made in the course of defendants' business, profession and/or employment for their financial benefit and for the guidance of Plaintiffs in their investment decisions], Plaintiffs justifiably relied upon the false and misleading information in purchasing Enron stock and bonds and the Yosemite Notes.").

Enron, between 1997 and November 2001, not knowing that they were false and misleading." The second, in ¶ 674, states,

> In connection with the purchase of the 7.125% Enron Bonds, the Yosemite Notes and Enron's stock, Plaintiffs and their agents specifically read and relied on the false and misleading statements of the Company's financial condition in the Forms 8-K for 1998 through November 2001 and Forms 10-K filed with the SEC for fiscal 1997 through 2000. Plaintiffs' reliance was reasonable, particularly given the clear opinion from the Company's auditor Andersen, and the repeated glowing earnings reports and other press releases that the Individual Defendants caused Enron to issue.

Such conclusory, general statements are not sufficient to satisfy Rule 9(b)'s particularity requirement. Plaintiffs need to make specific factual allegations describing each Plaintiff's reliance on the statements in these documents and allege a causal connection between the statements and that Plaintiff's purchase of Enron securities. *See In re Suprema*, 438 F.3d at 284 ("Plaintiffs alleged cursorily that they 'received, reviewed, actually read, and relied upon' various 10-Q filings and the 2000 and 2001 Form 10-K filings . . . . Plaintiffs failed, however to plead facts probative of their actual reliance on any specific false statements contained in those filings. Given the lack of allegations to show the requisite causal nexus between their purchase of securities and specific statements contained in the SEC filings, we will affirm the District Court's dismissal of . . . Plaintiffs' section 18 claims."). Because this Court has not addressed § 18 before and because there is little case law dealing

with the statute, the Court will allow Plaintiffs thirty days to supplement their pleadings if they can meet these requirements.

As for the one year/three year statute of limitations and repose for § 18 claims, emphasizing Plaintiffs' assertion that Enron's announcement on November 8, 2001 that it would restate its financial statements (including the 10-Ks signed by the Outside Directors) for 1997, 1998, 1999, and 2000 "constitute[s] an admission that the representations made in the original financial statements . . . . were materially false and misleading when made," Outside Directors insist that Outside Directors had notice of the claims against them by that date and should reasonably have questioned the content of the financial statements which they had approved by signing.

This Court disagrees. A restatement does not necessarily equate to fraud. In previous rulings regarding storm warnings about the alleged fraud at Enron, the Court has emphasized the extreme complexity and sophistication of the accounting, improper use of non-consolidated off-shore SPEs, hedging, and manipulated transactions and concealed loans that allegedly led to the collapse of Enron and found that while triggering a duty to investigate, neither the restatements nor Enron's bankruptcy would as a matter of law provided investors of ordinary intelligence in the exercise of reasonable diligence with sufficient facts to unravel enough of the alleged vast and complicated scheme to realize how they had been injured by it and file suit within a year. To constitute storm warnings, "'the

facts relied upon to support inquiry notice must rise to a level
of more than mere suspicion; they must instead be 'sufficiently
confirmed or substantiated' to a point at which the victims are
incited to investigate.'"  *In re Dynegy*, 339 F. Supp.2d at 846,
*quoting Ritchey v. Horner*, 244 F.3d 635, 640-41 (8th Cir. 2001),
*in turn quoting Fujisawa Pharmaceutical Co., Ltd. v. Kapoor*, 115
F.3d 1332, 1335 (7th Cir. 1997).   In addition, the information
involved must "'be such that it relates directly to the
misrepresentations and omissions the [p]laintiffs later allege in
their action against the defendants." *Id., citing Newman v.
Warnaco Group, Inc.*, 335 F.3d 187, 193 (2d Cir. 2003).  Indeed,
the initial *Newby* complaint, filed nearly a year later on October
22, 2002, named only Enron, Fastow, Ken Lay, and Jeffrey Skilling
as Defendants, sued only under § 10(b), Rule 10b-5, and § 20 of
the Exchange Act, and in very vague terms addressed the formation
and transactions of only LJM and LJM2 and their conflict of
interest with Enron given Fastow's dual roles; it did not address
the misrepresentations in the Form 10-Ks nor disclose sufficient
details about the transactions, accounting, etc. to place Ohio
Retirement Systems Plaintiffs on notice.[34]   *See Margolies v.
Deason*, 464 F.3d 547,554 (5th Cir. 2006)(reversing summary judgment
and finding a fact issue existed as to whether shareholders had

---

[34] In the Consolidated Complaint (#441, filed April 8, 2002,
the *Newby* Plaintiffs *inter alia* alleged a vast *Ponzi* scheme that
included specific reasons why Enron's financial statements,
registration statements, prospectuses, etc. were false and
misleading has similarities to the claims of the Ohio Retirement
Systems Plaintiffs make against the Outside Directors, but were
brought under different statutes and different state law.

inquiry notice that buyer of company in which they were the largest shareholders was about to file for bankruptcy). Under the circumstances the Court finds that what was reasonable diligence and when and how much disclosure was necessary to constitute inquiry notice are fact-intensive questions for the jury. The three-year statute of repose would not have expired until three years after the restatement announcement, i.e., in November 2004, and by that time the Court's July 2003 scheduling order would have tolled claims in the consolidated and coordinated cases in MDL-1446.

**Negligent Misrepresentation**

As noted, this Court finds that under the *Southland* exception to the group pleading doctrine, Plaintiffs have adequately alleged affirmative misrepresentations contained within the SEC-filed Forms 10-K signed by the Outside Directors, and therefore "made" by them, in the course of their business or profession for the guidance of shareholders and investors. Moreover, even if *Southland* exception does not apply to state common-law claims, the Court has found Plaintiffs have alleged numerous reasons why the reported financial status of Enron in the Forms 10-K was false and misleading.

Plaintiffs have not, however, adequately pled facts demonstrating their exercise of reasonable care in obtaining or communicating the information in the 10-Ks nor sustaining a claim of justifiable reliance by Plaintiffs to satisfy the particularity requirement of Rule 9(b).

Nor, since Rule 9(b) applies to the negligent misrepresentation claim here, have Plaintiffs adequately plead fraudulent intent.  Although the Rule states that scienter may be "averred generally," case law in the Fifth Circuit requires more:

> a plaintiff must set forth specific facts that support an inference of fraud.  *See Greenstone v. Cambex Corp.*, 975 F.2d 22, 25 (1st Cir. 1992)("The courts have uniformly held inadequate a complaint's general averment of the defendant's 'knowledge' of material falsity, unless the complaint *also* sets forth specific facts that makes it reasonable to believe that defendant knew that a statement was materially false or misleading.")(emphasis in original).

*Tuchman v. DSC Communications Corp.*,14 F.3d 1061, 1068 (5th Cir. 1994).  Moreover, noted the Fifth Circuit,

> The factual background adequate for an inference of fraudulent intent can be satisfied by alleging facts that show a defendant's motive to commit securities fraud.  Where a defendant's motive is not apparent, a plaintiff may adequately plead scienter by identifying circumstances that indicate conscious behavior on the part of the defendant though the strength of the circumstantial allegations must correspondingly greater.

*Id.*

Here, the only allegation, which is conclusory and relates to all the defendants, and the content of which indicates in part does not even apply to Outside Directors, is in ¶ 642: "If not intentional or reckless, the defendants' misrepresentations and their complete disregard of accounting practices, were clearly negligent in derogation of the duty they

owed to make accurate representations to Company shareholders and investors."

Because Ohio Retirement System Plaintiffs were relying on Rule 8(b)'s notice pleading,[35] the Court will grant them leave to supplement their complaint if they can plead these elements with the specificity required by Rule 9(b).  Nevertheless, the Court admonishes that it found the allegations against the Outside Directors in the *Newby* complaint, which were far more developed, insufficient to meet scienter requirements.  *In re Enron Corp. Sec., Derivative and "ERISA" Litig.,* 258 F. Supp. 2d 576, 627-38 (S.D. Tex. 2003).  Thus Plaintiffs must plead more specifically than Lead Plaintiff in *Newby*.

Furthermore, the four-year statute of limitations for the negligent misrepresentation claims, which was tolled as of the date of the scheduling order, July 11, 2003, also the date on which the Ohio Retirement Systems' Amended Complaint is deemed constructively filed, Plaintiffs can only reach claims based on misrepresentations made on July 11, 1999 or later.  Since the only allegations against the Outside Directors for negligent misrepresentation appear to be their signing of the Form 10-Ks and therefore responsibility for misrepresentations in those documents, and because the Amended Complaint states that the 1997 10-K was filed with the SEC on March 31, 1998 (¶ 295) and the 1998

---

[35] For a discussion of the division of courts regarding the application of Rule 9(b) to negligent misrepresentations claims in Ohio and around the country, see *In re National Century Financial Enterprises, Inc.,* No. 2:03-MD-1565, 2007 WL 1362695, **30-32 (S.D. Ohio May 6, 2007).

10-K was filed on March 31, 1999 (¶ 320), claims based on these two Forms 10-K are time-barred.

**Aiding and Abetting Common Law Fraud**

Aside from signing the Forms 10-K, the only allegations against the Outside Directors are conclusory statements that some of them engaged in insider trading while in possession of adverse information about Enron, that the Board approved the LJM partnerships and Fastow's conflicting roles as their managing partner while acting as Enron's CFO, and their failure to effectively monitor Fastow's activities, none of which satisfies Rule 9(b).

As for the elements of aiding and abetting, Plaintiffs have alleged no specific facts giving rise to an inference that the Outside Directors had a general awareness of their role in the complex scheme to defraud investors, no less that they had "actual knowledge" and that they knowingly and substantially assisted the wrongdoing by primary violators.

Because there is no issue about the well established application of Rule 9(b) to such a claim, the Court finds no reason to permit amendment of the pleadings regarding it and grants the motion to dismiss it as asserted against the Outside Directors.

Accordingly, the Court

ORDERS that Outside Directors' motion to dismiss is GRANTED IN PART as to Plaintiffs' aiding and abetting common law fraud against them and DENIED as to the § 18 and negligent

misrepresentation claims.  Plaintiffs shall file with 30 days of entry of this opinion and order a supplement to their § 18 and their negligent misrepresentation claims that satisfies Rule 9(b) or they shall inform the Court that they no longer wish to pursue the causes of action against Outside Directors.  If Plaintiffs file a supplement, Outside Directors may timely challenge sufficiency of the new pleading.  If the Court finds that Plaintiffs state a claim for which relief can be granted, it will address the discovery requests of Outside Directors.

**SIGNED** at Houston, Texas, this 24th   day of August, 2007.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE