IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In Re Enron Corporation Securities, Derivative & "ERISA" Litigation | § § § § | MDL-1446 |
| MARK NEWBY, ET AL., | § § | |
| Plaintiffs | § § | |
| VS. | § § | CIVIL ACTION NO. H-01-3624 CONSOLIDATED CASES |
| ENRON CORPORATION, ET AL., | § § | |
| Defendants | § | |
| PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF OHIO, et al., | § § § | |
| | § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. H-02-4788 (COORDINATED) |
| ANDREW S. FASTOW, et al., | § § | |
| Defendants. | § | |

**OPINION AND ORDER**

Pending before the Court in the above referenced cause ("the *PERS* Action"), transferred to this Court from the Southern District of Ohio by the Judicial Panel on Multidistrict Litigation for coordinated or consolidated pretrial proceedings in MDL 1446, are *inter alia* the following motions:  (1) an agreed motion to dismiss without prejudice and for entry of partial final judgment (#394), filed by Plaintiffs Public Employees' Retirement System of Ohio, State Teachers' Retirement System of Ohio, School Employees Retirement System of Ohio, Ohio State Highway Patrol Retirement System, Ohio Tuition Trust Authority, and Cincinnati Retirement System (collectively, the "Ohio Retirement Systems"),

and the following groups of "Settling Defendants": Barclays PLC, Barclays Bank PLC, and Barclays Capital Inc. (collectively, "Barclays Parties"); Credit Suisse Securities (USA) LLC (f/k/a Credit Suisse First Boston (USA), LLC), Credit Suisse (USA), Inc. (f/k/a Credit Suisse First Boston (USA), Inc.), and Pershing LLC (f/k/a Donaldson Lufkin & Jenrette Securities Corp.)(collectively, the "CSFB Parties"); Deutsche Bank AG, Deutsche Bank Securities, Inc., and Deutsche Bank Trust Company Americas (f/k/a Bankers Trust Company)(collectively, "Deutsche Bank Parties");  Merrill Lynch & Co., Inc. and Merrill Lynch, Pierce Fenner & Smith, Incorporated (collectively, "Merrill Lynch Parties"); Royal Bank of Canada ("the RBC Party"); and The Royal Bank of Scotland plc and National Westminster Bank Plc (collectively, "the RBS Parties"), with the motion opposed by non-settling Toronto Dominion Bank Defendants[1]; and (2) Toronto Dominion Bank Defendants' motion for leave to file a surreply (#400).

The controlling Amended Complaint (#97) alleges against the six Settling Financial Institution Defendants and against Toronto Dominion Defendants violations of Section 10(b) and 20(a) of the Securities Act of 1934 and Ohio State common-law claims for fraud and deceit, conspiracy to commit fraud, negligent misrepresentation, and aiding and abetting fraud.

---

[1] The Toronto Dominion Bank Defendants are Toronto Dominion Bank, Toronto Dominion Holdings (U.S.A.), Inc., TD Securities, Inc., TD Securities (USA), Inc., Toronto Dominion Investments, Inc., Toronto Securities Ltd., and Toronto Dominion (Texas), Inc., (collectively, "Toronto Dominion" or "Toronto Dominion Bank Defendants").

## I.  Motion for Leave to File Surreply

Although Toronto Dominion Bank Defendants' motion for leave is not yet ripe, because the underlying motion is for the court to decide and it can determine the relevance of the surreply's contents, and in order not to delay further a ruling on the motion to dismiss and for entry of partial final judgment, the Court grants Toronto Bank Defendants' motion for leave to file surreply.

## II.  Agreed Motion to Dismiss and for Entry of Partial Final Judgment

### A.  Toronto Dominion's Opposition

Asserting the only opposition, Toronto Bank Defendants voice two objections.

First they urge that paragraph 3's bar order/setoff provision in the proposed Order of Final Judgment and Dismissal[2]

---

[2] The challenged bar-order/setoff-provision portion of the proposed "Order of Final Judgment and Dismissal" (#394, Ex. 2 at 5,¶ 3) reads,

> All Persons, including but not limited to the Non-Settling Defendants, are permanently barred, enjoined, and restrained from instituting, commencing, prosecuting, or asserting any claim for indemnity or contribution, however denominated (including but not limited to any claim for breach of contract or misrepresentation), against the Releasees (or any other claim against the Releasees where the alleged injury to such Person is such Person's actual or threatened liability to any of the Releasors, the cost of defending against claims asserted by any of the Releasors, or the settlement of such claims), arising out of or related to the claims or allegations asserted by the Ohio

approving the partial final judgment, should be stricken or altered because of its failure to specify (1) the method for calculating the offset, (2) the method for determining which laws apply, and (3) when the determination might be made.

Toronto Dominion's second objection is to paragraph 9 of the Settlement Agreement[3] (Exhibit 1 at 7 to #394), a most

---

Parties in this action, whether arising under state, federal or foreign law as claims, cross-claims, counterclaims, or third-party claims, and whether asserted in this action, in this Court, in any federal or state court, or any other court, arbitration proceeding, administrative agency, or other forum in the United States or elsewhere, and all such claims shall be deemed extinguished, discharged, satisfied, and unenforceable. Any person so enjoined, barred, or restrained shall be entitled to appropriate judgment reduction, In addition, this Judgment bars all claims by the Settling Defendants against all Persons, including but not limited to the Non-Settling Defendants, for indemnity or contribution, however denominated, seeking the recovery of all or any part of the settlement amounts paid to the Ohio Parties or the cost of defending this action.

[3] The six Settling Financial Institution Defendants settled for a total of 3.9 million; divided by six, each Defendant would pay $650,000.

Paragraph 9 of the Settlement Agreement (Ex. 1 to #394), entitled "Subsequent Settlement," provides,

(a) If the Ohio parties enter into a settlement of the Action or any related action with Toronto Dominion Bank or any of its affiliates (collectively "TD") for a sum of less than $650,000, then the Ohio Parties shall pay, within ten (10) business days of the effective date of such settlement, $3,900.00 minus the product of the settlement amount paid by TD multiplied by six to the law firm of Shearman & Sterling LLP, which shall within two (2) business days distribute such

favored nations clause ("MFN" clause),[4] for improperly imposing

amounts to the Settling Defendants in their respective shares.

(b) If the Ohio Parties enter into a settlement of the *PERS* Action or any related action with TD on terms and/or conditions otherwise more favorable than those provided to the Settling Defendants herein (determined for purposes herein on the equal division of the $3,900,000.00 settlement by the six affiliated groups of Settling Defendants), then the Ohio Parties shall offer to the Settling Defendants the same terms and/or conditions being offered to TD as an alternative to the terms and/or conditions provided to the Settling Defendants herein, or, if impossible, pay the economic difference between the settlements to the law firm of Shearman & Sterling LLP, which shall within two (2) business days distribute such amounts to the Settling Defendants in their respective shares.

(c) If the Ohio Parties voluntarily dismiss, nonsuit, abandon, default on, or otherwise do not prosecute the claims asserted against TD in the *PERS* Action or any related action, such conduct shall be deemed a settlement with TD for $0.00, and the Ohio Parties shall pay $3,900,000.00 within ten (10) business days of such occurrence to the law firm of Shearman & Sterling LLP, which shall within two (2) business days distribute such amounts to the Settling Defendants in their respective shares.

(d) For avoidance of doubt, if all of the Ohio Parties' claims against TD in the *PERS* action (i) are dismissed over the opposition of the Ohio Parties, or (ii) are otherwise adjudicated in favor of TD and over the objection of the Ohio Parties (together, a "Contested Dismissal or Adjudication"), such occurrence shall not trigger any obligation on the part of the Ohio Parties to make a payment to the Settling Defendants. Nor shall the failure of the Ohio Parties to seek further review or appeal of a Contested Dismissal or Adjudication trigger any obligation on the part of the Ohio Parties to make a payment to the Settling Defendants.

unconditional and unlimited restrictions on Toronto Dominion's rights to negotiate and settle its own case, thus violating public policy.

"[W]here a settlement agreement requires a bar order which affects the right of parties to the litigation who are not also parties to the settlement, the court must determine whether

---

[4] The *Manual For Complex Litigation (Fourth)*, § 13.23 at 179 (Federal Judicial Center 2004), address MFN clauses as follows:

> Settlement agreements proposed early in the litigation often contain a "most-favored nation" clause to encourage early settlement by protecting all parties against being prejudiced by later, more favorable settlements with others. Such clauses typically obligate a signatory plaintiff to give signatory defendants a proportionate refund if the former settles with other defendants for less, or a signatory defendant to make additional payments to signatory plaintiffs if the former settles with other plaintiffs for more.
>
> Such clauses have several drawbacks: (1) the potential liability under them is indeterminate, making them risky; (2) the additional recovery they may produce for some plaintiffs without any effort by their attorneys makes it difficult to fix fees; and (3) the factors that induce parties to settle with different parties for different amounts, such as the time of settlement and the relative strength of claims, are nullified. Such clauses can provide an incentive for early settlement as well as an obstacle to later settlements. To limit their prejudicial impact, such clauses should terminate after a specified length of time (to prevent one or more holdouts from delaying final implementation), impose ceilings on payments and allow flexibility to deal with changed circumstances or with parties financially unable to contribute proportionately. The judge may have to consider voiding or limiting them if enforcement becomes inequitable. . . .

the settlement agreement is fair to those affected nonsettling parties." *TBG, Inc. v. Bendis*, 811 F. Supp. 596, 600 (D. Kan. 1992), *citing In re Masters Mates & Pilot Pension Plan and IRAP Litig.*, 957 F.2d 1020, 1026 (2d Cir. 1992).  "'[N]on-settling defendants in a partial settlement have no standing to object to the fairness or adequacy of the settlement, but they may object to any terms which preclude them from seeking indemnification from the settling defendants.'" *In re Beef Industry Antitrust Litig.*, 607 F.2d 167, 172 (5th Cir. 1979), *quoting* 3 *Newberg on Class Actions* § 5660b at 564-65 (1977).

Specifically, with regard to the proposed bar order here, prohibiting non-settling Defendants from asserting any rights of contribution or indemnification against the Settling Parties, Toronto Dominion Bank Defendants challenge only the absence of a specific judgment credit provision as a setoff for their loss of the right to assert indemnification and contribution claims; they complain that the order fails to specify how much non-settling Defendants will be credited, omits any reference to when such credit will be determined and by whom, and, most importantly, fails to establish a particular methodology for calculating the credit.[5] *Denney v. Deutsche Bank AG*, 443 F.3d

---

[5]     Although Toronto Dominion Bank Defendants concede that the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, applies in part here because one of the claims against Toronto Dominion is a violation of Section 10(b) of the Securities Exchange Act of 1934, they object that the bar order/setoff provision does not specify that the PSLRA formula or any other formula for determining the amount of the offset will be used.  Toronto Dominion Bank Defendants insist that the bar order

is not saved or corrected by its inclusion of the phrase, "appropriate judgment reduction," because there are several accepted ways to calculate credits, all of which may be "appropriate."

The Court notes that the three standard methods for reducing judgment against non-settling defendants after a partial settlement are *pro rata* (court divides the amount of the total judgment by the number of settling and non-settling defendants, regardless of each defendant's culpability), proportionate fault (after a partial settlement and trial of the nonsettling defendants, the jury determines the relative culpability of all the defendants and the non-settling defendant pays a commensurate percentage of the total judgment), and *pro tanto* (the court reduces the non-settling defendant's liability for the judgment against him by the amount previously paid by the settling defendants, without regard to proportionate fault). *See generally In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 228 F.R.D. 541, 558-63 (S.D. Tex. 2005).

Before passage of the PSLRA, the United States Supreme Court held there was an implied cause of action for contribution under § 10(b) and Rule 10b-5. *Musick, Peeler & Garrett v. Employers Ins.*, 508 U.S. 286, 297 (1993). Moreover defendants found liable were jointly and severally liable. Once the PSLRA was enacted, in cases that partially settle before trial, Section 21D(f)(7) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(f) established proportionate liability for unknowing violators. Section 78u-4((f)2)(A) and (B), stated the following about liability for damages:

> (A) Joint and several liability
>
> Any covered person against whom a final judgment is entered in a private action shall be liable for damages jointly and severally only if the trier of fact specifically determines that such covered person knowingly committed a violation of the securities laws.
>
> (B) Proportionate liability
>
> (i) In general
>
>
> Except as provided in subparagraph (A), a covered person against whom a final judgment is entered in a private action shall be liable solely for the portion of the judgment that corresponds to the percentage of that covered person, as determined under paragraph (3).

253, 274 (2d Cir. 2006)(invalidating a credit to be determined in

the future "under applicable law" because the non-settlers "are

---

Section 78u-4(f)(7)(A) and (B) provided for a mandatory bar order
and a reduction credit for settling defendants:

> A.  In general
>
>  A covered person who settles any private
> action at any time before final verdict or
> judgment shall be discharged from all claims
> for contribution brought by other persons.
> Upon entry of the settlement by the court, the
> court shall enter a bar order constituting the
> final discharge of all obligations to the
> plaintiff of the settling covered person
> arising out of the action.  The order shall
> bar all future claims for contribution arising
> out of the action-
>
> (i) by any person against the settling covered
> person; and
>
> (ii) the settling covered person against any
> person, other than a person whose liability
> has been extinguished by the settlement of the
> settling covered person.
>
> B. Reduction
>
> If a covered person enters into a settlement
> with the plaintiff prior to final verdict or
> judgment, the verdict or judgment shall be
> reduced by the greater of-
>
> (i) an amount that corresponds to the
> percentage of responsibility of that covered
> person; or
>
> (ii) the amount paid to the plaintiff by that
> covered person.

Section 78u-4(f)(10)(C) defines a "covered person" as "(I) a
defendant in any private action arising under this chapter; or (ii)
a defendant in any private action arising under section 77k of this
title, who is an outside director or issuer fo the securities that
are the subject of the action."  Thus the statute endorses either
the proportionate fault method or the *pro tanto* method of
apportioning the judgment in the bar order.

unfairly prejudiced by the failure to specify how . . . compensation will be calculated."); *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 161 (4th Cir. 1991)("failure to designate a setoff method exposes [the objector] to the risk of inadequate credit for the contribution bar imposed upon it"); *In re Granada Partnership Sec. Litig.*, 803 F. Supp. 1236, 1238-39 (S.D. Tex. 1992)("'If the right to contribution is extinguished by a bar order, the credit offset must adequately compensate the non-settling defendant for the barring of its contribution claim.' . . . Failure to designate a setoff method [in the bar order] exposes the Non-Settling Defendants to the risk of receiving inadequate credit for the contribution bar imposed on it.").[6]  Toronto Dominion Defendants insist, "The Proposed Order is *prima facie* deficient and thus creates a risk of confusion and additional litigation that

---

[6] Settling Financial Institution Defendants, in response to Toronto Dominion, effectively distinguish *Denney*, *Jiffy Lube*, and *Granada* from the instant case.  *Jiffy Lube* and *Granada* were pre-PSLRA cases, and that statute now has its own judgment reduction formula, 15 U.S.C. § 78-4(f)(7)(B), that controls any proportionate liability under § 10(b), bar order and credit reduction pursuant to a subsequent judgment against a non-settling defendant.  In *Jiffy Lube* the Fourth Circuit noted, "There is no case law in this Circuit which addresses the problem of which of the three most commonly used setoff methods should be adopted for federal law claims."  927 F.2d at 160-61.  In *Denney*, the Second Circuit determined that calculating the amount of any judgment reduction under "applicable law" was too uncertain because in that action the claims filed against the non-settling defendants were based on multiple federal and state law theories in state and federal courts throughout the country.  443 F.3d at 272-73.
        Here, on the contrary, as will be discussed, the applicable law is clear: an Ohio statute controls set-offs for the Ohio state-law claims, while the PSLRA controls the § 10(b) claims against Toronto Dominion Defendants.  *See infra*.

prejudices Toronto Dominion and may cause it to receive insufficient judgment credit." #396 at 11.

Second, challenging Paragraph 9 of the Settlement Agreement (Ex. 1 to #394), Toronto Dominion objects to this "Subsequent Settlement," an MFN provision, which requires Plaintiffs to settle with Toronto Dominion for at least the same amount as paid by the Settling Defendants or Plaintiffs must pay back the difference to Settling Defendants. Of even greater concern to Toronto Dominion, Paragraph 9 also requires Plaintiffs, in the absence of a settlement, to litigate this case and their claims against Toronto Dominion to dismissal or to an adverse adjudication, or Plaintiffs must return the entire settlement payment to the Settling Defendants. Toronto Dominion argues that the provision will cause "plain legal prejudice" to Toronto Dominion and it violates public policy encouraging settlement of cases. Paragraph 9 lacks any flexibility, instead imposing unconditional and unlimited restrictions on Toronto Dominion's settlement rights, since it is without time limits and it does not permit consideration of any change in circumstances, such as evidence from discovery demonstrating lack of a, or a weaker, claim against Toronto Dominion than against Settling Defendants that might otherwise justify termination of, or a lower settlement of, this suit. Indeed, insists Toronto Dominion, the MFN clause interferes with Defendants' right to freely negotiate and settle the case. *In re Chicken Antitrust Litig.*, 560 F. Supp. 943, 46 (N.D. Ga. 1979)("'[T]he complications and even inequities which

'most favored nations' clauses almost always generate make their
use undesirable 'and that 'absent extraordinary and very special
circumstances, [they] should be avoided.")`, quoting 1977 Manual
for Complex Litig. § 1.46 at 62-64.[7]  Furthermore Toronto Dominion

---

[7] See footnote 4 for the change in the most recent (4th)
edition of the Manual for Complex Litigation, which this Court
finds is a far more balanced view and suggests incorporating
restrictions rather than avoidance of such clauses.  Moreover,
Toronto Dominion takes the statement out of context, omitting the
district court's comment, "Despite the admonition of the editors of
the Manual for Complex Litigation . . ., certain settling
defendants note that most-favored-nations clauses similar to those
in question in the case sub judice have been upheld or approved by
implication in a variety of circumstances, including labor
contracts, patent-licensing agreements, and even other antitrust
settlement agreements." Chicken Antitrust, 560 F. Supp. at 946.
Moreover, as the Settling Financial Institution Defendants here
point out, in that antitrust case, the circumstances were very
different from those in PERS:

> [S]everal of the settling defendants settled
> individually for less than the most favored
> nations formula amount and the settling
> defendants knew that smaller market share,
> non-settling defendants could neither afford
> to settle at the most favored nations formula,
> nor bear the costs of defending the action. .
> . .  The Court concluded that the settling
> parties' insistence on a most favored nations
> provision suggested an attempt to drive their
> smaller competitors out of business, and thus
> struck the most favored nations provisions as
> anti-competitive, predatory, and contrary to
> public policy.  By contrast there is no
> suggestion here of anti-competitive conduct or
> collusion to drive a weaker competitor out of
> business. [footnotes omitted]

#398 at 13-14.
     Furthermore, this Court would point out that the Manual
for Complex Litigation, in all four editions, is not law; it is
advice for judges presiding over such cases.  As stated in the
Introduction to the Fourth Edition, "It 'contains neither a
simplified outline for the easy disposition of complex litigation
nor an inflexible formula or mold into which all trial or pretrial
procedure must be cast.' . . . [I]t is not, and should not be cited

notes that MFN provisions are often used in cases with multiple parties and/or claims to protect initial settlers from the possibility that later settlers will obtain more favorable treatment; they do so by requiring the original payee to return all or some of the payment it received if it settles for less than they paid.  While MFN provisions can encourage settlements, these provision can also impede settlements by harming the ability of non-settling defendants to resolve their own claims later.  *Manual for Complex Litigation* at § 13.21, § 13.23.

Toronto Dominion asserts that because of the PSLRA stay provision, 15 U.S.C. § 78u-4(b)(3)(B),[8] little discovery has been taken in this suit and there have been no legal rulings on any of its defenses.  Moreover, it maintains that its role in Enron's business was much smaller than the roles of the Settling Defendants and cites Andrew Fastow's testimony in support.  Therefore, it contends, it has substantial timing and merits arguments that otherwise would be available to it in normal arm's length settlement negotiations, but which are eliminated by the MFN provision.  Thus the MFN provision, by nullifying arguments

---

as, authoritative legal or administrative policy. . . . The *Manual*'s recommendations and suggestions are merely that.  As always, the management of any matter is within the discretion of the trial judge."

[8] Section 78u-4(b)(3)(B) provides, "In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any  motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve or to prevent undue prejudice to that party."

that Toronto Dominion could make, fixes Toronto Dominion's
potential liabilities at a higher sum than it might otherwise
negotiate.  Toronto Dominion also cites a couple of cases in which
more flexible MFN provisions allowed for change in circumstances
as the case developed, unlike the provision here.  *Fisher Bros.
v. Phelps Dodge Indus., Inc.*, 614 F. Supp. 377, 380 n.5, 386-87
(E.D. Pa. 1985)(included clause, "unless present circumstances
materially change so that plaintiffs reasonably conclude that the
prospect or amount of ultimate recovery from any similarly
situated defendant is substantially lessened or reduced . . . ."),
*aff'd*, 791 F.2d 917 and 920 (3d Cir. 1986); *Cintech Indus.
Coatings, Inc. v. Bennett Indus., Inc.*, 85 F.3d 1198, 1200, 1201
(6th Cir. 1996)(included clause, "unless present circumstances
materially change so that plaintiffs reasonably conclude that the
prospect or amount of ultimate recovery from any similarly
situated defendant in these cases is substantially lessened or
reduced").[9]  They point to the ruling in *Chicken Antitrust*, 560 F.
Supp. at 944, 946, in which the court struck down two
unconditional MFN provisions that violated public policy because
they "unduly restrict the plaintiffs' freedom of action in

---

[9] In response, Settling Financial Defendants emphasize that
neither of these cases held that without the change of
circumstances provision the MFN clause would be unenforceable.
Moreover, noting that MFN clauses have not been enforced by some
courts because in complex litigation with multiple defendants they
can be disruptive and inhibit compromise and settlement, resulting
in the striking of the clauses in *Chicken Antitrust*, in dicta the
Sixth Circuit in *Cintech* expressly stated that it did not adopt
the striking approach in the case before it.  83 F.3d at 1203.

subsequent bargaining" and "strait-jacketed" plaintiffs, who had "lost freedom to act in their own self-interests in accordance with changing bargaining situations."[10]  Toronto Dominion asks the Court to strike the unconditional MFN provision in ¶ 9 of the Settlement Agreement or, alternatively, instruct the Settling Defendants to reform their agreements in consultation with Toronto Dominion, and to reject the Proposed Order until the changes are made.

**B.  Reply to the Opposition**

Settling Financial Institution Defendants, in their Reply[11] (#398), first argue that Toronto Dominion has no standing to challenge the MFN provision in the Settlement Agreement.  The general rule is that a non-settling defendant lacks standing to object to a partial settlement.  *In re Beef Indus. Litig.*, 607 F.2d 167, 172 (5th Cir. 1979), *cert. denied*, 452 U.S. 905 (1981); *In re Nissan Motor Corp. Litig.*, 552 F. 2d 1088, 1193 n.17 (5th Cir. 1977); *Waller v. Financial Corp. of America*, 828 F.2d 579, 582 (9th Cir. 1987); *Agretti v. ANR Freight System, Inc.*, 828 F.2d 242, 246 (7th Cir. 1992).  That rule furthers the public policy of encouraging early, voluntary settlement of suits and avoiding

---

[10] This Court notes that the situation *Chicken Antitrust* is distinguishable from that here.  In *Chicken Antitrust*, the court struck down the MFN provisions because it found that the **plaintiffs** were **restricted by their own** MFN agreement from negotiating a settlement after changed circumstances rendered the remaining defendants economically weaker and unable to meet the terms of the earlier partial settlement.

[11] Joined by the Ohio Retirement Systems, #399.

the expense in time and money of litigation. *Bass v. Phoenix Seadrill/78 Ltd.*, 749 F.2d 1154, 1164 (5th Cir. 1985); *Waller*, 828 F.2d at 583.

A recognized, limited exception to this rule is where a party can demonstrate that it will suffer "plain legal prejudice" as a result of the settlement. *See, e.g., Bass*, 749 F.2d at 1164-65 ("the proper balance between the policy consideration of encouraging voluntary resolutions of litigation and the court's duty to protect the rights of the parties before it" is achieved by allowing a non-settling party to object to a settlement only when the party can demonstrate plain legal prejudice as a result of the settlement), *citing Quad/Graphics, Inc. v. Fass*, 724 F.2d 1230, 1233 (7th Cir. 1983). "Plain legal prejudice" is narrowly construed and occurs only when a partial settlement deprives a non-settling party of a substantive right. *In re Beef Indus. Litig.*, 608 F.2d at 172 (non-settlor may object to settlement that purports to deprive him of indemnification rights); *Dunn v. Sears, Roebuck & Co.*, 639 F.2d 1171, 1173-74 (5th Cir.)(non-settlor may object to settlement that attempts to deprive it of his right to present evidence at trial), *modified*, 645 F.2d 511 (5th Cir. 1981); *Mayfield v. Barr*, 985 F.2d 1090, 1093 (D.C. Cir. 1993)(plain legal prejudice occurs when "the settlement strips the party of a legal claim or cause of action"), *citing Agretti*, 982 F.2d at 247; *In re Integra Realty Res., Inc.*, 262 F.3d F.2d 1089, 1102 (7th Cir. 1992)("plain legal prejudice," as a narrow exception to the rule that non-settling defendants

generally have no standing to complain about a settlement, means the settlement strips the nonsettling defendant of a legal claim or cause of action; if the provision merely decreases a plaintiff's incentive to settle with a nonsettling defendant subsequently, it is "merely the loss of some practical and strategic advantage in litigating . . . rather than an 'plain legal prejudice'"); 4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11:55 (4th ed. 2002)("[N]on-settling defendants in a multiple defendant litigation context have no standing to object to the fairness or adequacy of the settlement by other defendants, but they may object to any terms that preclude them from seeking indemnification from the settling defendants . . . [or] if they can show some formal legal prejudice to them, apart from loss of contribution or indemnity rights."). This Court agrees with this is a correct statement of the law.

Settling Financial Institution Defendants further maintain that it is well established that allegations of tactical disadvantage, like Toronto Dominion's here, i.e., that the MFN clause hinders its ability to defend itself and to freely negotiate a settlement, but not that its substantive or procedural rights are impaired, do not rise to the level of plain legal prejudice. *See, e.g., In re Vitamins Antitrust Class Action*, 215 F.3d 26, 31 (D.C. Cir. 2000)(no plain legal prejudice where non-settling parties fully preserve their right to litigate their claims independently); *Integra Realty Res., Inc. v. Fidelity Capital Appreciation Fund*, 262 F.3d 1089, 1103 (10th Cir. 2001)(no

legal prejudice to non-settling defendants who allege "at most" that the settlement "placed them at a tactical disadvantage" in the litigation; plain legal prejudice occurs if there is interference with a party's contract rights or a party's ability to seek contribution or indemnification of if the settlement strips the party of a legal claim or cause of action)[12]; *Mayfield v. Barr*, 985 F.2d 1090, 1093 (D.C. Cir. 1993)(plain legal prejudice occurs when "the settlement strips the party of a legal claim or cause of action"); *Agretti*,, 982 F.2d at 247 (7th Cir. 1992)("Mere allegations of injury in fact or tactical disadvantage as a result of a settlement do not rise to the level of plain legal prejudice."). Furthermore, the Fifth Circuit has commented, "We fail to see . . . why a plaintiff should be foreclosed from voluntarily settling with one defendant on mutually agreeable terms simply because those terms remove plaintiff's economic incentive to settle with other defendants. That, it seems to us, is a consequence that may well flow from *any* settlement with less than all defendants." *Bass*, 749 F.2d at 1165.

Moreover, even if Toronto Dominion could establish standing to challenge the partial settlement, Settling Financial Institution Defendants argue that there is no basis to strike the MLN clause as it promotes the public policy of encouraging settlement because many defendants would not have entered a

---

[12] The Tenth Circuit Court of Appeals recently reaffirmed its holding in *Integra* in *New England Health Care Employees Pension Fund v. Woodruff*, 512 F.3d 1283, 1289 & n.3 (10th Cir. 2008).

settlement without some assurance of equitable treatment among similarly situated non-settling defendants.   They contend that Toronto Dominion cannot identify any case in which a court has struck down such a provision in remotely similar circumstances.

Thus, Settling Financial Institution Defendants urge, while the MLN clause may hinder Toronto Dominion's ability to negotiate an individual settlement with Plaintiffs on more favorable terms for Toronto Dominion than those agreed to by Settling Financial Institution Defendants, these cases make clear that such a tactical disadvantage does not constitute the level of plain legal prejudice necessary to create standing for a non-settling defendant to challenge a settlement.   Settling Defendants explain that the parties to the current settlement view Toronto Dominion as similarly situated to them and therefore they have narrowly tailored the MFN clause, i.e., ¶ 9 in the Settlement Agreement, expressly to refer to Toronto Dominion.   Settling Defendants insist that the clause places no restriction on either Plaintiffs' ability to settle with Toronto Dominion or on Toronto Dominion's ability to negotiate a settlement.   Instead it simply provides that if Plaintiffs agree to settle with Toronto Dominion for more favorable terms or conditions than they did with the Settling Defendants, Plaintiffs will offer the same terms to the earlier Settling Defendants.   ¶ 9 (a) and (b).   Furthermore ¶ 9(d)[13] clearly states that if the Court grants Toronto Dominion's

---

[13] Paragraph 9(d) states in relevant part,

pending motion to dismiss (#221, 226), or if Toronto Dominion
otherwise prevails against Plaintiffs, Plaintiffs have no
obligations under the MFN clause.  #398 at 6-7. The Court agrees.

With regard to standing, Settling Financial Institution
Defendants recognize that Toronto Dominion does have a right to
object to the bar order if it deprives Toronto Dominion of its
rights to indemnity and contribution by failing to provide for an
adequate judgment reduction.  4 *Newberg on Class Actions* § 11:55
("[N]onsettling defendants in a multiple defendant litigation
context have no standing to object to the fairness or adequacy of
the settlement by other defendants, but they may object to any
terms that preclude them from seeking indemnification from the
settling defendants . . . [or] if they can show some formal legal
prejudice to them, apart from loss of contribution or indemnity
rights."). Nevertheless, Financial Institution Defendants argue,
such is not the case here.

Settling Defendants further emphasize that the judgment
reduction provision in the proposed bar order[14] tracks the same

_____

> For avoidance of doubt, if all of the Ohio
> Parties' claims against TD in the PERS action
> (i) are dismissed over the opposition of the
> Ohio Parties, or (ii) are otherwise
> adjudicated in favor of TD and over the
> objection of the Ohio Parties (together, a
> "Contested Dismissal or Adjudication"), such
> occurrence shall not trigger any obligation on
> the part of the Ohio Parties to make a payment
> to the Settling Defendants. . . .

[14] The proposed bar order provides that third parties,
including non-settling defendants, are barred from pursuing any
claims for indemnity or contribution against Settling Defendants,

language (any barred party shall be "entitled to appropriate judgment reduction") in bar orders entered by this Court in three prior settlements in this action,[15] as well as being similar to the language in numerous bar orders entered in the Enron consolidated actions[16] over the past thirty months.  They insist that because Toronto Dominion Defendants did not object to any of those orders, they have waived any objection here.  *Bott v. J.F. Shea Co.*, 388 F.3d 530, 533 (5th Cir. 2004)(under Texas law a party will waive a known right as a result of its intentional conduct inconsistent with claiming that right).  "Silence or inaction, for so long a period as to show an intention to yield a known right, is also enough to prove waiver."  *Id.*  Although waiver is usually a fact issue turning on the question of intent under Texas law, it becomes a matter of law where material facts and circumstances are undisputed or clearly established and there is no room for argument or inference.  *First Interstate Bank of Arizona, N.A. v. Interfund Corp.*, 924 F.2d 588, 595 (5th Cir. 1991).

## C. Toronto Dominion's Surreply

In its surreply (#401), *inter alia* Toronto Dominion argues that it has not waived its right to object here because

---

and it bars and enjoins the Settling Financial Institution Defendants from seeking indemnity or contribution from any third party, including non-settling defendants.

[15] These prior settlements were with Citigroup, JP Morgan Chase, and CIBC (#197 ¶4); with Vinson & Elkins (#262, Ex. 2 ¶ 4, #268, #402 ¶ 4); and Enron Outside Directors (#392, ¶¶ 4 and 6).

[16] *See* #398 at 17-18 (and orders listed therein).

none of the prior settlement agreements contained MFN provisions affecting only Toronto Dominion's rights.

This Court does not reach a determination about waiver here, given potential factual issues, because it is not necessary to its decision on the agreed motion to dismiss with prejudice and for entry of partial final judgment.

Even if Toronto Dominion did not waive its objection, Settling Defendants insist that the language at issue, "entitled to appropriate judgment reduction," adequately protects non-settling Defendants because the PSLRA and the Ohio settlement bar statute establish, as a matter of law, the methods by which judgment reduction is calculated for the relevant claims. The claims against Settling Defendants and Toronto Dominion arise under Ohio common law and under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. To the degree a judgment is entered against a non-settling defendant based on the § 10(b), the PSLRA states that any ultimate judgment shall be reduced by the greater of "(i) an amount that corresponds to the percentage of responsibility of [the settling party]; or (ii) the amount paid to the plaintiff by that [settling party]." 15 U.S.C. § 78u-4(f)(7)(B). If a judgment is entered against a non-settling defendant based on the state-law claims, the Ohio settlement bar statute provides that the non-settling party is entitled to judgment reduction in an amount equal to "the greater of any amount stipulated by the release or the covenant or the amount of the consideration paid for it." Oh. Rev. Code Ann. §

2307.28(A)(West 2008).   Thus there is no need to specify in the Settlement Agreement a method of calculating that judgment reduction.

Toronto Dominion disagrees and insists the law requires the inclusion of a specific methodology and, relying on the *Manual for Complex Litigation*, a scrutinizing judicial review of the entire settlement, including the MFN clause, to ensure it is fair and adequate.   It emphasizes that the settlement agreement here is "plainly part of, and inextricably linked to, the Proposed Order. . . Indeed, the language of the Settlement Agreement itself conditions the settlement upon execution of the Bar Order."   #401 at 8.

As for the unconditional language (with no time limits or exceptions for changed circumstances) in the unfair MFN provision, restricting its ability to freely negotiate a settlement, Toronto Dominion insists the law requires "a delicate balancing calculation in weighing the propriety of competing interests in MFN provisions; here the harsh conditions "tilt the balance against Paragraph 9." #401 at 3.   It also claims that the clause violates public policy by targeting only Toronto Dominion for unfair treatment. *TBG, Inc. v. Bendis*, 811 F. Supp. at 601. It conclusorily asserts that it has different valid defenses and negotiating positions with regard to the same claims asserted against it and the settling defendants.

Toronto Dominion also argues that the MFN clause forces it to a contested decision if there is no settlement, i.e., forces

it to defend a case that otherwise should be dismissed or settled at a much lower figure.  It insists this is not merely a tactical disadvantage.

"In summary, Toronto Dominion opposes *this* unconditional MFN provision because it violates public policy by unfairly singling out Toronto Dominion, restricting its ability to properly negotiate a settlement, and potentially forcing it to defend against unnecessary, non-meritorious litigation.  The strict, unconditional nature of Paragraph 9 also interferes with settlements and thus violates the public policy encouraging settlements."  #401 at 15-16.

**D.  Court's Decision**

*1.  Standard of Review*

Usually, in the typical civil suit in which a plaintiff seeks money damages from a defendant, settlement of that dispute lies entirely in the parties' control and the court plays no role. Fed. R. Civ. P. 41(a)(allowing court to dismiss any suit by consent of all parties except a class action, shareholder derivative or bankruptcy action).[17]  *See also In re Masters Mates & Pilots Pension Plan*, 957 F.2d 1020, 1025 (2d Cir. 1992)("Typically, settlement rests solely in the discretion of the parties, and the judicial system plays no role."); *Agway, Inc.*

---

[17] In most federal district courts a voluntary dismissal by stipulation of all parties is effective immediately and does not require court approval. 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2363 at 160 (1971).  Nevertheless in this district, the district court's signature is required by custom.

*Employees' 401(k) Thrift Investment Plan*, 409 F. Supp. 2d 136, 141 (N.D.N.Y. 2005). "In such an instance, the parties are generally left to their own designs, and their abilities to weigh the relevant factors including the potential for recovery or exposure, the expense of litigation and other factors which inform the fairness of a settlement, and arrive at an independent judgment as to whether those factors militate in favor of the negotiated resolution, is presumed." *Agway*, 409 F. Supp. 2d at 141.

A major exception to the absence of court involvement is a class action settlement, which must be approved by the court as a fair, reasonable and adequate settlement to all affected parties, including third parties, under Fed. R. Civ. P. 23. *Masters Mates*, 957 F.2d at 1025. This complex, multi-defendant suit, however, is not a class action. Nevertheless, a condition of this settlement is entry of the proposed bar order by the Court, for which the settling parties have expressly requested court approval and which might affect the substantive rights of not only Toronto Dominion Defendants, but all third parties, seeking to assert claims for indemnification and contribution arising out the action which the parties have settled. *See Masters Mates*, 957 F.2d at 1026 ("[W]here the rights of one who is not a party to a settlement are at stake, the fairness of the settlement to the settling parties is not enough to earn the judicial stamp of approval."). Since there is no class, the approval is left to the Court's discretion, and the court's main

focus should be on the effect of the settlement on the nonsettling defendants.  *Agway*, 409 F. Supp. 2d at 142.

*2.  General Matters*

In barring the non-settling defendants' claims for indemnity or contribution for matters arising out of the circumstances from which Plaintiffs' claims come into existence, the order in return would protect non-settling defendants with a judgment credit reduction that is at least equal to the settling defendants' proven share of liability.  The entry of bar orders in partial settlements is "neither unusual nor presumptively inappropriate."  *Agway*, 409 F. Supp. 2d at 142, *citing In re WorldCom, Inc. ERISA Litig.*, 339 F. Supp. 2d 561 (S.D.N.Y. 2004).  Indeed bar orders "provide a powerful incentive for a party . . . to enter into a settlement."  *Id.*  "Because of the importance of settlement to our litigation system, and because an unlimited right to seek contribution would 'surely diminish the incentive to settle,' . . . . courts may approve provisions in settlement agreements that bar contribution and indemnification claims between the settling defendants and non-settling defendants so long as there is a provision that gives nonsettling defendants an appropriate right of set-off from any judgment imposed on them."  *In re WorldCom, Inc. ERISA Litig.*, 339 F. Supp. 2d at 568.

Toronto Dominion Bank Defendants argue that the failure to specify a method of judgment credit in the bar order constitutes plain legal prejudice to their substantive right to contribution and indemnification.

The Court fully agrees with Settling Defendants that as a matter of law, Toronto Dominion Bank Defendants have standing to contest the bar order and the settlement agreement only if they can demonstrate that these documents cause plain legal prejudice by stripping Toronto Dominion Bank Defendants of their right to contribution and indemnification. *In re Beef Indus. Litig.*, 608 F.2d at 172; *Dunn v. Sears, Roebuck & Co.*, 639 F.2d at 1173-74; *Mayfield v. Barr*, 985 F.2d at 1093 (D.C. Cir. 1993); *Agretti*, 982 F.2d at 247.  The Court examines separately the effect of the bar order on the federal claim under the PSLRA and the Ohio State common-law claims under relevant the Ohio statute.

"'The purpose of the judgment credit is to *fully* compensate non-settling defendants for the loss of their contribution claims.'" *Denney v. Deutsche Bank AG*, 443 F.3d 253, 274 (2d Cir. 2006). "Ordinarily, the potential harshness of a bar order is mitigated by a judgment credit provision that protects a nonsettling party from paying damages exceeding its own liability." *Id.* "If the non-settling defendant loses his right to contributions, provisions . . . in the . . . agreement become necessary in order to ensure that the non-settling defendant pays no more than his share of any future judgment that may be entered against him in favor of the plaintiffs." *Jiffy Lube*, 927 F.2d at 160.

As for the absence of a specific judgment credit reduction, such a deficiency could cause prejudice to a non-settling defendant. As noted by the Fourth Circuit and agreed to

by the Second Circuit, failure to specify a methodology can threaten prejudice to both the plaintiff and the non-settling defendant. *Jiffy Lube*, 927 F.2d at 161; *Denney*, 443 F.3d at 274-75. As the Fourth Circuit explained,

> As to plaintiffs, it is clear that the method of setoff chosen affects the desirability of a proposed partial settlement. For example, plaintiffs bear the risk of a "bad' settlement under the "proportionate" rule, while under the "pro tanto" rule the risk passes to the nonsettling defendants and plaintiffs gain more certainty from the earlier resolution of the setoff figure. Morever, the "proportionate" method entails a delay in ascertaining the final amount of setoff . . . . As to non-setting defendants . . ., the choice of setoff method determines to a large extent the manner in which a defense should be made at trial. The extent of wrongdoing of the settling defendants in relation to [the non-settling defendant] is either highly relevant (under the "proportionate" rule), minimally important (under the "pro rata" rule), or not important at all (under the "pro tanto" rule. [The non-settling defendant] is entitled to know what the law of the case is in advance of trial, not on the eve, after discovery is concluded and witnesses have been prepared. . . .Moreover, the court's failure to designate the set-off method exposes [the non-settling defendant] to the risk of receiving inadequate credit for the contribution bar imposed on it. . . . [C]hoosing a method at least allows the parties to know what the nature of that risk is. The court assured [the non-settling defendant] that it would use its "inherent equitable power" to see that [the non-settling defendant] receives an appropriate credit. Yet the court never explained how such powers would work to resolve the potential difficulties [the non-settling defendant] fears without also prejudicing either the plaintiffs or the settling defendants.

*Id.*

Here, however, because the bar order is silent, the controlling federal and state statues provide necessary information to the parties.

Furthermore, while non-settling defendants are entitled to know the method of calculating the judgment reduction credit, they are not entitled to know to a certainty what that amount may be. *Gerber v. MTC Electronic Technologies Co.*, 329 F.3d 297, 304-05 (2d Cir. 2003)("We find no error in the district court's decision to leave the determination of the actual amount of the judgment credit for calculation at trial because the non-settling defendants will get at least the full settlement amount as a credit . . . ."); *In re Initial Public Offering Sec. Litig.*, 226 F.R.D. 186, 192, 203-04 (S.D.N.Y. 2005)("the [non-settling defendants'] argument is predicated on the baseless notion that, under the PSLRA, a partial settlement must predict the future-- i.e., it must tell any non-settling defendants precisely the value of a credit against their future liability, well before anybody knows the extent of that liability.").

3. *Section 10(b) Claims*

Federal law determines whether a non-settling defendant in a federal securities action is entitled to a credit on a judgment against it for an earlier settlement by one or more other defendants. *Singer v. Olympia Brewing Co.*, 878 F.2d 596, 600 (2d Cir. 1992).

Under the PSLRA, 15 U.S.C. § 78u-4(f)(7)(B), the provision for a judgment reduction credit  governs the § 10(b)

claim as a matter of law and requires a mandatory bar order expressly giving to any non-settling defendant, subsequently determined to be liable, a credit against that judgment for the amount representing the greater of (1) the settling defendant's percentage of responsibility or (2) the amount paid to the plaintiff by that settling defendant. *See* footnote 5. "Where a judgment credit is given to a non-settling defendant in an amount equal to its proportionate share of liability, its rights 'are protected even without a determination of the fairness of the settlement.'" *In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ 3288 (DLC), 2005 WL 613107, *5 (S.D.N.Y. 2005), *quoting Gerber*, 329 F.3d at 303.  Under the PSLRA formula, with its greater of proportionate fault/pro tanto reduction, non-settling defendant subsequently found liable will, at the very least, be paying no more than his proportionate share of the wrongdoing, and may even get a greater credit if settling defendants have settled for more than their proportionate share.  Moreover the bar order is mutual in that settling and non-settling defendants are prohibited from asserting claims for contribution against each other.

While the PSLRA does address a mandatory bar for contribution rights among defendants that are jointly and severally liable, neither it nor the Securities Acts of 1933 and 1934 address indemnification.  *Stowell v. Ted S. Finkel Inv. Serv.*, 641 F.2d 323, 325 (5th Cir. 1981)("The 1933 and 1934 Securities Acts 'do not provided anywhere for indemnification under any circumstances'"); *In re Olympia Brewing Co. Sec. Litig.*,

674 F. Supp. 597, 608 (N.D. Ill. 1987); *Neuberger v. Shapiro*, 110 F. Supp. 2d 373, 381-83 (E.D. Pa. 2000). Moreover the vast majority of courts have refused to imply indemnity rights into either statute or based on federal common law. *See, e.g., Heizer Corp. v. Ross*, 601 F.2d 330, 334 (7th Cir. 1979)(allowing indemnification "would tend to frustrate and defeat" the underlying deterrent purpose of the securities laws' "[i]n order to be found liable under Rule 10b-5, one must be found to have scienter or intent to defraud and such person should not get off scot-free through indemnification"); *In re Olympia Brewing Co. Sec. Litig.*, 674 F. Supp. 579, 613 (N.D. Ill, 1987)(Congress promulgated federal securities acts "to prevent future fraudulent activity" and "providing a right to indemnity would undermine the deterrent purpose"; also "reject[ing] the notion that a right to indemnity could arise under the securities laws as a part of the federal common law"); *Baker, Watts & Co. v. Miles & Stockbridge*, 876 F.2d 1101, 1108 (4th Cir. 1989)(no express or implied indemnification under the Securities Act of 1933 or based on the federal common law because there is no federal interest here); *In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 495 (11th Cir. 1992); *Eichenholtz v. Brennan*, 52 F.3d 478, 483-84 (3d Cir. 1995)(holding there is no express or implied right to indemnification because such claims run counter to the policies underlying the federal securities acts; "underlying goal of the securities legislation is encouraging diligence and discouraging negligence in securities transactions," which is served by not allowing indemnification

where the defendant is merely negligent), *reaffirmed in In re Cendant Corp. Litig.*, 264 F.3d 286, 301 (3d Cir. 2001). Thus the bar order's provision against indemnification for the § 10(b) is in accord with the law.

### 4.  *Ohio State Common-Law Claims*

Although, in the absence of an express method of judgment reduction credit, the Settling Defendants assume that the current Ohio bar statute, § 2307.28, automatically applies to the Ohio State common-law claims and provides a judgment reduction credit for the loss of claims of contribution and indemnification, that statute did not become effective until April 9, 2003, when its predecessor, Ohio Rev. Code § 2307.32(F) was repealed. Section 2307.32(F) applies to claims that accrued before that date, as is the case here. Baldwin's Oh. Prac. Tort L. § 8:147 (2007).[18]

---

[18] An Ohio appellate court summarizes the history of the statute:

> As a preliminary matter, we note R.C. 2307.32(F) was amended and renumbered R.C. 2307.33(F) by Am. Sub. H.B. 350, effective January 27, 1997. However, the Ohio Supreme Court found Am. Sub. H.B. 350 unconstitutional in toto in *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 715 N.E.2d 1062, which was announced after Fidelholtz [discussed *infra*]. A decision by the Ohio Supreme Court declaring a statute unconstitutional is generally given retrospective application.. . . . We will therefore refer herein to R.C. 2307.32(F) in its earlier form.

*Fultz v. Ring*, No. 2001 AP 05 0046, 2002 WL 253782 (Ohio App. 5 Dist. 2002).  Section 2307.25 became effective on April 9, 2003 when § 2307.32 was repealed by Senate Bill 12.  *Kane v. O'Day*, No.

Former section 2307.32(F) provided,

When a release or a covenant not to sue or
not to enforce judgment is given in good
faith to one or two or more persons liable in
tort for the same injury or loss to person or
property or the same wrongful death, the
following apply: (1) The release or covenant
does not discharge any of the other
tortfeasors from liability for the injury,
loss, or wrongful death unless its terms
otherwise provide,[19] but it reduces the claim
against the other tortfeasors to the extent
of any amount stipulated by the release or
the covenant, or in the amount of the
consideration paid for it, whichever is
greater; (2) The release or covenant
discharges the tortfeasor to whom it is given
from all liability for contribution to any
other tortfeasor.

*Quoted in Fidelholtz v. Peller*, 81 Ohio St.3d 197, 200, 690 N.E.2d

502, 504-05 (Ohio 1998).[20]

As noted by an Ohio appellate court, "it appears fairly

clear . . . that . . . under R.C. 2307.33(F)(2) a [settling]

defendant should escape from a lawsuit altogether as long as he

---

23225, 2007 WL 518376, *2 n.1 (Ohio App. 9 Dist. Feb. 21, 2007).
Section 2307.32(F) and *Fidelholtz* still apply to causes of action
that accrue before April 9, 2003.  Baldwin's Oh. Prac. Tort L. §
8:147 (2007).

[19] The phrase in § 2307.33(F)(1), "unless its terms provide
otherwise," has been construed by the Supreme Court of Ohio to
require that a release "expressly designate by name or otherwise
specifically describe or identify any tortfeasor to be discharged."
*Beck v. Cianchetti*, 1 Ohio St.3d 231, 439 N.E.2d 417 (1982).

[20] Under common law, "contribution, *i.e.*, the right of one who
has discharged a common liability to recover from another the
portion that the other should have paid was not allowed between
concurrent or joint tortfeasors."  *Fidelholtz*, 81 Ohio St.3d at
202, 690 N.E.2d at 506.  Section 2307.32 was passed to "alleviate
this inequity" and to "permit a defendant who is found jointly and
severally liable to recover from other tortfeasor(s) a portion of
monies paid to the plaintiff."  *Id.*

settles with the plaintiff in good faith." *In re Miamisburg Train Derailment Litig.*, 132 Ohio App.3d 571, 586, 725 N.E.2d 738, 748 (Ohio App. 2 Dist. 1999).

Interpreting that statute further in another case, the Supreme Court of Ohio observed,

> A person is "liable in tort" when he or she acted tortiously and thereby caused damages. This determination may be a jury finding, a judicial adjudication, stipulations of the parties, or the release language itself.

*Fidelholtz v. Peller*, 81 Ohio St.3d 197, 198, 690 N.E.2d 502 (Ohio 1998). "[S]ome finding of liability is required before a setoff is permitted." *Id.*, 81 Ohio St.3d at 202, 690 N.E.2d at 506. Thus under *Fidelholtz* definition, a party only becomes a "tortfeasor," and thus liable for contribution, after some legal determination that he is at least partly liable for injuring the plaintiff, at which point § 2307.33(F)(2) provides that a "release or covenant discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor." *Fidelholtz* reasoned that such a determination was necessary because "where only one of several defendants was responsible for the injury, that defendant would have been obligated to pay the entire damage amount if the settling defendant had not settled. Thus, the former should not reap the benefit of a settlement by the latter." *Id.,* 81 Ohio St.3d at 201, 690 N.E.2d at 505-06.

Furthermore, the Supreme Court emphasized, "A settlement is not tantamount to an admission of liability. Defendants settle for many reasons, such as the avoidance of bad publicity and

litigation costs, the possibility of an adverse verdict, and the maintenance of favorable commercial relationships." *Id.,* 81 Ohio St.3d at 201, 690 N.E.2d at 505.  Indeed, the Settlement Agreement in the instant case, as is common, expressly states that there is no admission of liability by Settling Defendants.  Ex. 1, ¶¶ 6, 7, to #394.  *See also* Baldwin's Oh. Prac. Tort L. § 8:64 (2007)("Because settling defendants rarely if ever agree that they were liable in tort in the release or otherwise (and in fact usually deny any liability in the release), the *Fidelholtz* decision provides a powerful tool for the plaintiff in preventing a set-off for non-settling defendants subsequently found to be responsible at trial.").  Moreover, to meet its burden under the statute of showing that Settling Defendants were liable, non-settling Toronto Dominion may not rely merely on the fact that Plaintiffs alleged in their complaint that the settling Defendants were liable in tort.  *Kane v, O'Day*, No. 23225, 2007 WL 518376, *2 (Ohio App. 9 Dist. Feb. 21, 2007).

In practical terms, therefore, the burden on a non-settling defendant to obtain a set-off (or judgment credit) under § 2307.33(F)(2) is very heavy.  Because "it is unlikely that settlement agreements will prove to be a fruitful source for determinations of partial responsibility that would permit a set-off under" § 2307.33(F) and because stipulations to that effect are also not probable, the non-settling defendant is largely forced to go to trial unless he chooses to settle at what is likely for him to be a high price:  "the more promising route is

for the non-settling defendants to request that a special interrogatory be submitted to the jury asking if the settling party was responsible for any fraction of the plaintiff's damages. . . . This approach does leave the non-settling defendant in the difficult position of proving the partial liability of a non-party at trial.  If one defendant settles early, this may deprive the remaining defendants of traditional discovery mechanisms that would have been available against a party." *Miamisburg*, 132 Ohio App. 3d at 586-87, 725 N.E.2d at 749.

In sum, § 2307.32(F) "entitles a defendant to a set off from a judgment funds received by a plaintiff pursuant to a settlement agreement with a co-defendant where there is a determination [by a jury, a judicial adjudication, stipulation of the parties, or the release language itself] that the settling co-defendant is a person 'liable in tort.'" *Fidelholtz,* 81 Ohio St.3d at 203, 690 N.E.2d at 507.   Thus Toronto Dominion Defendants, if adjudicated liable or if they settle with Plaintiffs, in order to obtain a set-off for the loss of their right to claim indemnification and/or contribution, under § 2307.32(F), cannot rely on the existence of the partial settlement, but must obtain a determination that the settling Defendants were liable in tort.  *Kane v, O'Day*, No. 23225, 2007 WL 518376, *2 (Ohio App. 9 Dist. Feb. 21, 2007).[21]

---

[21] In *Fidelholtz*, the Supreme Court of Ohio stated "that two policy objectives for these statutes were to encourage settlement and to prevent double recovery"; but "the broader and more important goal was to ensure that where multiple tortfeasors were at fault in bring about the injury to the innocent party, each

*5. Conclusion*

        While the Court is troubled by the heavy burden Toronto
Dominion will bear to obtain a credit or setoff under the Ohio
statute, nevertheless the law does not strip Toronto Dominion of
its right to a judgment credit if it is found liable for part of
the wrongdoing.  In sum, the Court concludes that Toronto Dominion
lacks standing to challenge the Settlement Agreement because it
has not shown that it would suffer "plain legal prejudice" because
of the instant partial settlement.  Not only may Toronto Dominion
still pursue its claims and defenses independently in this
litigation, but as a matter of law Section 78u-4(f)(7) of the
PSLRA and Ohio Rev. Code Ann. § 2307.32(F) govern the bar order
and fill in the terms that Toronto Dominion complains it is
lacking.  Toronto Dominion has not argued that the bar order does
not adequately compensate it for precluding any claims it might
have for indemnification and contribution, but only that it was
deficient in failing to specify (give notice of) particular terms,
which, as stated, are implied by the federal and state law
governing the claims against Toronto Dominion.  Toronto Dominion
has not shown, nor has the Court observed any evidence of
collusion or extraordinary circumstances that would justify
striking the bar order and nullifying the Settlement Agreement
here.  Moreover, the Court finds that public policy favoring
settlement and the avoidance of substantial  expensive litigation

---

tortfeasor would share the burden of making the injured party whole
again."   81 Ohio St.3d at 202-03, 690 N.E.2d at 506.

is clearly served by the settlement with six large financial institutions.   Despite Toronto Dominion's insistence that the Court must ensure that the entire settlement is fair and adequate, that process demands balancing all the factors and not just focusing on Toronto Dominion's objections.  The Court has reviewed the agreement carefully and the circumstances in this case and believes it has met that obligation, as it did in the prior settlements in this action to which Toronto Dominion voiced no objections.

Accordingly, for the reasons indicated above, the Court ORDERS that Toronto Dominion Defendants' motion for leave to file surreply is GRANTED.  It further

ORDERS that  the agreed motion to dismiss with prejudice and for entry of partial final judgment is GRANTED by separate orders.

**SIGNED** at Houston, Texas, this 24th day of June, 2008.


_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE